1  MATTHEW D. ROSS, ESQ. (SB# 084703)
   mross@leonardcarder.com
2  JENNIFER L. MARSTON, ESQ. (SB# 250018)
   jmarston@leonardcarder.com
3  LEONARD CARDER, LLP
   1330 Broadway, Suite 1450
4  Oakland, CA 94612
   Telephone: (510) 272-0169
5  Facsimile: (510) 272-0174

6  Attorneys for Defendant
   UNITE HERE! Local 2
7
   KATHERINE C. HUIBONHOA (SB# 207648)
8  katherinehuibonhoa@paulhastings.com
   JOHN C. POST (SB# 233236)
9  johnpost@paulhastings.com
   PAUL, HASTINGS, JANOFSKY & WALKER LLP
10 55 Second Street
   Twenty-Fourth Floor
11 San Francisco, CA  94105-3441
   Telephone:  (415) 856-7000
12 Facsimile:  (415) 856-7100

13 Attorneys for Defendant
   Bay Area Restaurant Group
14
                    UNITED STATES DISTRICT COURT
15
                  NORTHERN DISTRICT OF CALIFORNIA
16

17 LINDA ROVAI-PICKETT,                    CASE NO. C08-01625 MMC ADR

18            Plaintiff,                   [Superior Court of the State of California for the
                                           County of San Francisco, Case No. CGC 07
19      vs.                                469683]

20 HMS HOST, INC., HOTEL EMPLOYEES
   & RESTAURANT EMPLOYEES LOCAL          **DECLARATION OF MATTHEW D. ROSS
21 #2, DOES 1 THRU 50,                   IN SUPPORT OF NOTICE OF REMOVAL
                                         OF CIVIL ACTION TO FEDERAL COURT**
22
23            Defendants.

24          I, MATTHEW D. ROSS, declare and state as follows:

25          1.      I am a partner with the law firm of Leonard Carder, LLP, the attorneys of

26 record for Defendant UNITE HERE! Local 2 ("Defendant") in this action, and am admitted to

27 practice before this Court. I file this Declaration in support of Defendant's Removal of this action

28 from the Superior Court of the State California for the County of San Francisco, Case No. CGC

                                           DECLARATION OF MATTHEW D. ROSS
                                           RE: NOTICE OF REMOVAL OF CIVIL
                                           ACTION TO FEDERAL COURT

LEGAL_US_W # 58462787.1

1  07 469683, to the United States District Court for the Northern District of California. Except as
2  otherwise indicated, I have personal knowledge of the facts set forth in this Declaration and, if
3  called upon to do so, could and would testify competently thereto.

4      2.    I attach true and correct copies of the following documents, which
5  comprise all documents from the state-court file which Defendant has received, which Defendant
6  has served, or which Defendant is about to serve:

7      3.    Plaintiff's "Complaint (First Amended)," designated as Case No. CGC 07
8  469683, filed-stamped February 4, 2008. (Exhibit A, hereto.)

9      4.    Summons attached to amended Complaint mailed to Defendants. (Exhibits
10 B and C, hereto.)

11     5.    Defendant's Notice to Adverse Party of Removal of Civil Action to the
12 United States District Court. (Exhibit D, hereto.)

13     6.    Defendant's Notice to Superior Court of Removal of Civil Action to the
14 United States District Court. (Exhibit E, hereto.)

15     7.    Proof of service of the Notice to Superior Court Clerk of Removal of Civil
16 Action to United States District Court and of the Notice to Adverse Party of Removal to Of Civil
17 Action to United States District Court will be filed with this Court immediately after the Superior
18 Court filing is accomplished.

19     8.    Exhibits A – E constitute all process, pleadings and orders served or in the
20 process of being served on or by Defendant in this action.

21     9.    Plaintiff never properly served any of the Defendants named in the initial
22 Complaint with the Summons or Complaint: Plaintiff mailed the amended Complaint and
23 Summons to Defendants via U.S. Mail. Defendant Local 2 received the amended Complaint on
24 or about February 25, 2008. Defendant Bay Area Restaurant Group received the amended
25 Complaint on or about February 28, 2008.

26     10.    Defendants Does 1 through 50 are unnamed and unknown, and, therefore,
27 have not been served with the Summons or amended Complaint. As Plaintiff never served the
28 defendants named in the initial Complaint with the Summons and Complaint, the First Amended

1    Complaint is the initial pleading purportedly setting forth the claims for relief upon which this

2    action is based and may be removed. Plaintiff has yet to serve either, or any, Defendant properly

3    with the amended Complaint. Accordingly, this Notice of Removal is timely filed pursuant to 28

4    U.S.C. § 1446(b).

5            I declare under penalty of perjury under the laws of the State of California and the

6    United States that the foregoing is true and correct, executed this 26th day of March, 2008, in

7    Oakland, California.

8

9                                                    MATTHEW D. ROSS

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEGAL_US_W # 58462787.1

ROSS DECLARATION
RE: NOTICE OF REMOVAL

# EXHIBIT A

Linda Rovai-Pickett
17 Queen Anne Court
Millbrae, California
Tel: 650-873-2188

Plaintiff in Propria Persona

ENDORSED
FILED
Superior Court of California
County of San Francisco

FEB - 4 2008

GORDON PARK-LI, Clerk
BY: _____ MARIA SANCHEZ
                      Deputy Clerk

# IN THE SUPERIOR COURT OF CALIFORNIA
# IN AND FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| Linda Rovai-Pickett, | ) |
| | ) |
| | ) Case No. CGC07 469683 |
| Plaintiff | ) |
| | ) **Complaint** |
| | ) **(First Amended)** |
| | ) |
| vs | ) Wrongful termination; |
| | ) |
| HMS Host Inc., | ) Negligent Infliction |
| | ) |
| Hotel Employees & | ) of Emotional Distress; |
| Restaurant Employees Local #2, | ) |
| | ) Unfair Labor Practice; |
| | ) |
| | ) Breach of Contract; |
| | ) |
| | ) Failure to perform |
| | ) |
| | ) duty of fair |

Complaint for damages page 1 of 42

|                          |   |                      |
|--------------------------|---|----------------------|
|                          | ) | representation;      |
|                          | ) |                      |
|                          | ) | Defamation of        |
|                          | ) |                      |
|                          | ) | character;           |
| Does 1 thru 50           | ) |                      |
|                          | ) | **Jury Trial Demanded** |
|              Defendants  | ) |                      |
|                          | ) |                      |

**COMES NOW** Plaintiff Linda Rovai-Pickett in her own proper person sui juris as lawful de jure Citizen of California (**Article II, Section 1 of the California Constitution (1849)**)) to complain of Defendants, and each of them as follows:

That Plaintiff is informed and believes that **HMS Host Inc.** (**Host**) is a corporation doing business in California and subject to the jurisdiction thereof. That **Hotel Employees & Restaurant Employees Local # 2** (**HERE Local #2**) is a Union ostensibly representing workers interests, including plaintiff, with Defendant Host at the San Francisco International Airport pursuant to a Collective Bargaining Agreement (**CBA**) negotiated by Defendants Host and HERE Local 2 and in effect at all times relevant hereto.

That information on Doe defendants 1 through 50 will be provided via amended complaint when the same have been identified and their roles in damaging Plaintiff become known.

Complaint for damages page 2 of 42

## JURISDICTION AND VENUE

Jurisdiction and venue is invoked pursuant to *__Article VI, Section 1 of the California Constitution (1849)__* that establishes the superior court as a common law court of general jurisdiction which has cognizance over claims of breach of contract and tort. Also invoked is the right to sue established by the decisions of the California Supreme Court for violation of the covenant of good faith and fair dealing and/or wrongful termination (see e.g. *__Foley v Interactive Data 47 Cal 3rd 654, Scott v PG&E 11 Cal 4th 454__* and *__Tameny v Atlantic Richfield 27 Cal 3rd 167__* and those of lower courts -- see e.g. *__Pugh v See's Candies 116 Cal App. 3rd 311__*).

In addition, Plaintiff cites *__Section 301 of the Federal Labor Relations Act, 20 USCA Section 185(a)__* pursuant to an action against a Union for a violation of its duty of fair representation and subsequent action against an Employer for wrongful discharge (see e.g. *__Vaca v Sipes 386 US 171__*) and cites, in support of *concurrent* jurisdiction of this court in such actions, *__Section 11 of the Judiciary Act of 1789 (see also Dowd Box Co. v Courtney 368 US 502), 28 USC 1331__*.

In addition, Plaintiff notes that not only is there no language in the Collective Bargaining Agreement (*CBA*) which could be construed to estop her from seeking a judicial remedy, and doing so in the first instance, there *IS* explicit language in *Section 36(l)* thereof recognizing an aggrieved party's

Complaint for damages page 3 of 42

right to seek such judicial relief, to wit:

> "The sole remedy available to any employee for any alleged breach of this agreement shall be pursuant to the grievance procedure. Provided, however, that *nothing herein shall prevent an employee from electing to pursue a legal or statutory remedy* providing such election will bar any further or subsequent proceeding for relied under the grievance procedure."

This seems strikingly analogous to the 'savings to suitors" clause found in statutes conferring admiralty & maritime jurisdiction on the United States District Courts in recognition of the fact that "the common law of England and the inestimable privilege of the trial their peers of the vicinage according to the course of that law" (see e.g. **_Declaration of Rights 1774: Resolve 5_**) was **the fundamental premise** giving rise to the founding of the Nation & Republic and the ordaining and establishment of the **_Constitution for the united States {1787-1791}_**

Additionally, with not one, but several, substantive questions of labor law arising in the context of the instant case, Plaintiff cites the opinion of the supreme Court of the united States in the case of **_Textile Workers v Lincoln Mills 353 US 448_** wherein it was held that **Section 301 of the FLRA** authorized "... courts to fashion a body of federal law for the enforcement of these collective bargaining agreements." Plaintiff is likewise prepared, upon request, to brief the '**_Jones&Laughlin-Parrish-Nebbia-Wickard_**' issue as an alternative theory of jurisdiction in the instant case.

Complaint for damages page 4 of 42

# FIRST CAUSE OF ACTION

## Wrongful Termination

1. That Defendant HMS Host did unlawfully and in violation of *known* applicable law(s), wrongfully terminate Plaintiff Linda Rovai-Pickett from her job of *twenty four years* on the basis of an allegation of a single, unsupported, untimely, and unproven "violation of company cash handling procedure".

2. That Defendant wrongfully terminated Plaintiff without ever affording her the opportunity to defend against this spurious charge, with there being no effective notice of hearing, no opportunity for Plaintiff to exercise her "*Weingarten*" right of counsel and, with a stale charge allegedly occurring fully *thirty days prior* to the date of the "hearing", there being no way whatsoever for Plaintiff to have any recall of the *four dollar* transaction giving rise to her termination and present a defense to the allegation.

3. That Defendant wrongfully terminated Plaintiff in that the decision to terminate her was made *before* the "hearing" even took place, which is the plainest violation of well settled (industrial) due process imaginable.

4. That Defendant wrongfully terminated Plaintiff in plain violation of the covenant of good faith and fair dealing and in complete absence of any semblance of "*just cause*" as specifically mandated in Section 35(c) of the *CBA* in effect at *all relevant times material hereto*.

5. That Defendant wrongfully terminated Plaintiff using, for all intents and purposes, a pretextual allegation while at the same time permitting other workers to continue to work, even without any known discipline, let alone suspension or discharge, for *repeatedly* engaging in conduct in clear violation of Defendant HMS Host's stated *zero tolerance* policy for the use of drugs or alcohol while at work, of

which a *single* occurrence of such activity *would* amount to just cause for *summary* termination of the type inflicted upon Plaintiff in the instant case. Accordingly, Plaintiff suffered disparate treatment by Defendant HMS Host when she was (wrongfully) terminated.

6. That Defendant wrongfully terminated Plaintiff using, for all intents and purposes, a pretextual allegation, knowing full well that Plaintiff presented, from the skewed perspective of Defendant HMS Host, a *clear and present danger* of becoming a whistle blower or worse, with Plaintiff having potentially damaging knowledge of Defendant's lax enforcement of its zero tolerance policy, as aforestated and thus being in a position to cause people in supervisorial capacities, and co-workers as well, to be severely disciplined, if not terminated for their violations of such policy.

## SECOND CAUSE OF ACTION

### Negligent Infliction of Emotional distress

That Defendant HMS Host, aided and abetted by the failure of Defendant HERE Local # 2 to perform its *duty of fair representation*, did negligently inflict emotional distress upon Plaintiff and cause her great mental anguish at the loss of her long time job *for no reason* and, for all intents and purposes, especially combined with Defendant HMS Host's defaming of Plaintiff, render Plaintiff Linda Rovai-Pickett unable to obtain any work by reason of being unable to satisfactorily account for twenty plus years in her work history on any job application without the circumstances of her wrongful termination becoming known and the stigma of such wrongful discharge weighing heavily against her chances of being able to secure comparable, if any, work at all.

Complaint for damages page 6 of 42

### THIRD CAUSE OF ACTION

Unfair Labor Practices

That Defendant HMS Host did wrongfully terminate Plaintiff Linda Rovai-Pickett by the use of *unfair labor practices* such as, but not limited to, the following:

1. Giving her *no notice* of the "hearing" at which Plaintiff was terminated or any notice of the agenda of such hearing;

2. By violating Plaintiff's rights of assistance of Union representation (Cal. Govt Code Sec. 3525 et seq), if not assistance of counsel, to aid in her preparation of a defense to whatever (*unknown*) charges were to be alleged;

3. By not producing any evidence in support of its single allegation of wrongdoing despite the *timely* demand of Plaintiff (and *not*, notably, Defendant HERE Local # 2) and despite having the burden of proof by at least clear and convincing evidence to sustain its allegation;

4. By failing to produce, again as against the *timely* demand of **PLAINTIFF**, *not* Defendant HERE, the *best evidence* of the transactional report of Plaintiff's shift activity, which report, if offered in evidence, would almost certainly have provided affirmative defenses for Plaintiff as against even this untimely and unsupported accusation.

5. By *not* invoking the progressive discipline scheme *clearly* and unambiguously set forth in Section 35 of the CBA -- and this makes the *mammoth* assumption that the charge could have been proven -- and disciplined Plaintiff accordingly (perhaps a

Complaint for damages page 7 of 42

written warning *MIGHT* have been in order in such a case);

6. By proceeding upon the *untimely* and *unsupported* complaint of a accuser likely had a *conflict of interest* of sufficient magnitude to have discredited his complaint and testimony altogether, with Plaintiff having reason, upon information and belief, to think that the accusing party had a relationship with the owner of the Buena Vista concession at SFO;

Needless to say that without any notice or time to prepare a defense Plaintiff was rendered wholly unable to follow up on this promising avenue of defense.

7. That Plaintiff was terminated in a manner completely and utterly in violation of the provisions of the CBA and upon a pretextual context which, if allowed to go unchallenged, could be used repeatedly by Defendant HMS Host and *all others like situated*, to *absolutely defeat the public policy of California* and many, if not all, of the rights and statutory protections of workers set forth in such laws as *Fair Employment & Housing Act*, the *Unruh Civil Rights Act*, and other such enactments by the simple expedient of termination "for just cause" on any imaginable pretext whatsoever.

## FOURTH CAUSE OF ACTION

### Breach of Contract

That Defendant HMS Host breached the contract with not only Plaintiff Linda Rovai-Pickett, but *all like situated workers* covered by the terms and conditions of the CBA, by terminating Plaintiff without any semblance of (industrial) due process on a single unsupported, untimely

Complaint for damages page 8 of 42

accusation without either evidence, witness(es) or any effective notice and opportunity to defend against such charge(s) when Defendant HMS Host *knew or should have known* of each and every legal duty it had pursuant to the strictures of due process and/or the *CBA*.

## FIFTH CAUSE OF ACTION
Failure to perform duty of fair representation

That Plaintiff's wrongful termination was significantly aided by Defendant HERE Local # 2's *complete and utter* failure to perform the duty of fair representation it had to Plaintiff, and *all like situated* constituent Union members, by each of the following acts (not an exhaustive list !):

1. By failing to object to the proceedings at which Plaintiff was wrongfully terminated by Defendant HMS Host at the "hearing" of December 5th, 2006, most particularly their failure, by and through their agent, Richard Kuan, to object to the manifest untimeliness of the single charge against Plaintiff, which staleness prevented all possibility of Plaintiff recalling details of the disputed transaction for the purposes of defense thereto;

2. By failing to object to the absence of any supporting evidence of the allegation against Plaintiff at the same hearing, when Defendants *knew, or should have known*, of Defendant HMS Host's having the burden of proof by at least *clear and convincing* evidence to sustain its allegation for the purposes of disciplinary action, let alone discharge of an employee;

Complaint for damages page 9 of 42

3.   By failing to grieve any of the issues set forth by Plaintiff, and
     with substantive legal authorities, which are *serious* violations
     of the CBA and/or (industrial) due process, to wit:

     A.   The unmitigated untimeliness of the single accusation
          against Plaintiff and her concomitant inability to mount
          an effective defense to such untimely (and unknown)
          charge;

     B.   The absolute absence of supporting evidence of the
          allegation against Plaintiff (indeed, in the grievance that
          Defendant HERE did file, it agreed that, for the purposes
          of arbitral review, that Defendant HMS Host *had*
          sustained its burden of proof and that the burden of proof
          had now *shifted* to Plaintiff to show the violation of due
          process and/or provisions of the CBA. When questioned
          about the supporting legal authorities to sustain this
          reversal of fortune, the silence of Defendant HERE Local
          # 2 has been striking).

     C.   The violation of Plaintiff's right of Union assistance, if
          not assistance of counsel, due to the lack of notice of the
          proceedings against Plaintiff to terminate her;

     D.   Manifest absence of the progressive discipline procedures
          as set forth in the CBA negotiated by Defendant HERE
          Local # 2 and Defendant HMS Host and lack of objection
          by Defendant HERE;

     E.   Absence of objection to the *unilateral* determination of
          the existence of "just cause" for the termination of
          Plaintiff by Defendant HMS Host when the facts of the
          case, even construed most favorably for Defendant HMS
          Host, did *not* disclose any *exigent* circumstances which
          *might* have warranted the *summary* termination inflicted

Complaint for damages page 10 of 42

upon Plaintiff in the instant case;

F.   Perfunctory and dilatory handling of Plaintiff's perceived grievance by Defendant HERE Local #2 and the manifest lack of due diligence in prosecuting the same, to the point where arbitration will not occur until after *fourteen months after* Plaintiff's wrongful termination, if then, as Defendant HMS Host could, and probably will if past record be any indication, request a delay for whatever 'reason' it can concoct for however long it can get away with to delay, if not deny justice to Plaintiff for its wrongful termination of her.

## SIXTH CAUSE OF ACTION
### Defamation of Character

That Plaintiff Linda Rovai-Pickett has been defamed by Defendant HMS Host pursuant to its *false* and *fraudulent* claims against Plaintiff for allegedly engaging in *criminal* activity, which claims were asserted in the hearing on her restoration of status to claim unemployment insurance benefits, which spurious claims form an integral part of Plaintiff's otherwise stellar work record with Defendant HMS Host, and which claims and wrongful termination have rendered Plaintiff essentially unable to secure other comparable, if any, work due to the inability to account for her many years of work for Defendant HMS Host without the *inevitable* discovery (or presumption) of Defendant HMS Host's assertion of Plaintiff engaging in allegedly *criminal* activity which led to her being terminated for "just cause".

Complaint for damages page 11 of 42

And even if Plaintiff could use HMS Host as a job and/or character reference, there would be no way to know if her good name was further defamed by any negative comments of agents of Defendant HMS Host when questioned about Plaintiff's work history and/or the reason for her separation from a job of such long standing. Thus the specter of *prospective* defamation hangs forebodingly over Plaintiff until such time as her good name has been cleared and her character vindicated.

Plaintiff has been further defamed by the actions of Defendant HMS Host in that its wrongful termination of Plaintiff and the concomitant loss of the stream of income, has left her unable to regularly discharge the obligations of her credit card debt (despite the *minimal* use of such credit since the wrongful termination) and thus the accrual of *negative* entries on Plaintiff's credit records and the corresponding reduction in her *apparent* "creditworthiness" to all concerned parties.

## STATEMENT OF THE CASE

That on or about December 5th, 2006 Plaintiff Linda Pickett was wrongfully and egregiously terminated from her job of *twenty four years* as a server for Defendant Host Inc. over an alleged discrepancy of *four* dollars in a transaction which was alleged to have occurred *fully a month earlier* on November 5th, 2006.

Complaint for damages page 12 of 42

That Plaintiff had so little notice of the meeting of December 5th, 2006 -- and assumed, given past experiences that she might be receiving some or another award for her *good* work for Defendant Host, that her Union rights -- effectively the right to assistance of counsel -- recognized in California (***Robinson v State Personnel Bd. 97 C.A. 3rd 994***) *were denied* as there was *no effective notice* that any adverse actions were afoot on Dec. 5, 2006 and thus no opportunity to prepare a defense.

That despite Plaintiff's *timely* demand of Defendant Host Inc. to produce any and all evidence and witnesses in support of the allegations against her at a meeting on Dec. 5th, 2006, no such evidence was ever produced and thus there was *no legal basis* to discharge Plaintiff Linda Pickett from her job, as would be required by at least the "*just cause*" and/or "*willful misconduct*" provisions, not to mention the *progressive discipline* scheme, of *Section 35c of the CBA*, notwithstanding any claimed or asserted 'employment at will' defense by Defendant Host Inc., due to the many violations of applicable laws and public policy considerations, as hereinafter fully set forth, which operate to supersede any such right to discharge *with or without cause* (!) as Defendant Host Inc. might have been able to claim.

That Defendant *HERE* Local 2, by its agent Richard Kuan, sat submissively by and *did not actively participate nor in any way discharge Defendant HERE Local #2's duties of fair representation* of Plaintiff Linda

Complaint for damages page 13 of 42

Pickett at the meeting of December 5th, 2006, which existed pursuant to the Collective Bargaining Agreement and/or applicable State and Federal laws.

Defendant **HERE** Local #2 did not object to any of the proceedings, nor raise any issues about the *summary* termination of such an outstanding worker of *long standing*, most especially in the instant case without *any shred* of supporting evidence that would have sustained, in whole or in part, the right of Defendant Host Inc. to have taken such drastic action against Plaintiff, most particularly where, as here, the discharge was based on a *single* instance of an alleged discrepancy that could not and should not have risen to the level of *"gross misconduct"* that might have then furnished grounds for Plaintiff's *summary termination*.

That Defendant **HERE** Local #2 did not raise the objection of the *untimeliness* of the allegation against Plaintiff, with *fully one month having passed since the date of the alleged wrongdoing* and this in a job of food server which position routinely entails 50 or more transactions per shift, a fact *well known* to Defendants and each of them, that at least *twenty workdays, not to mention thirty calendar days,* had elapsed since the alleged date of occurrence.

Thus Plaintiff had handled over *1000* transactions since that time and thus *could have no way* whatsoever, even if what would otherwise have been a due process *pre-termination* hearing had occurred -- *and there was no*

Complaint for damages page 14 of 42

*such hearing -- to have had any recall* of the particulars of a single transaction, especially over an amount of *four* dollars, so as to be able to *effectively* defend against the allegation even if there had been introduced evidence and/or witnesses as to the existence of "*just cause*" and/or "*willful misconduct*", even using the standard of "preponderance of evidence", let alone stricter standards.

Further, had the opportunity to present a defense existed, *which, again, it did not,* affirmative defenses could and would have been made regarding the manifest defects in Defendant Host Inc.'s operating and accounting procedures that almost certainly would have exonerated Plaintiff from any responsibility for the wrongdoing alleged, *whatever it was*, facts that would likely have operated, had the instant events arisen in a criminal venue, *to the easy establishment of reasonable doubt,* thus providing the legal basis for the acquittal of such a *criminal* defendant.

Plaintiff, at the risk of being repetitive, asserts the simple truth that prior to the meeting of December 5th, 2006, of which she had but 3 days notice and *__no notice__ as to the agenda, the decision to terminate her had already been made* and that the sole function of this meeting was to notify her that she had been terminated.

Complaint for damages page 15 of 42

There was not, **nor was there intended to be**, any opportunity for Plaintiff to present her case, even if Defendant Host Inc. had established their prima facie case; the decision to terminate was a *fait accompli* and Defendant **HERE** Local #2 did its part to ensure **the appearance of fairness and impartiality,** of which there was none in evidence, by standing mute throughout the proceedings.

As a direct result of these circumstances, Plaintiff, upon timely filing for unemployment benefits was **summarily** denied by the California Employment Development Department (EDD) on the apparent basis of a letter from Defendant Host Inc., as required by **_Section 1327 of the California Unemployment Code,_** that set forth the "factual" basis for the termination of Plaintiff **which basis did not and does not exist.**

That as best as Plaintiff can understand it, the action taken by the EDD in denying her these benefits must have been based on some or another **_fiction of law_** that she had in fact been given a meaningful and substantive **_pre-termination_** hearing as required by law, thus shifting the burden of proof of her eligibility for benefits **onto Plaintiff and away from Defendant Host Inc.** based on the **_false and fraudulent_** document submitted by them as aforestated. Plaintiff was thus denied due process of law as to these unemployment benefits.

Complaint for damages page 16 of 42

Important to note here that the events of December 5th, 2006 culminating with the (*wrongful*) termination of Plaintiff began in earnest over a year earlier when on or about November 20th, 2005 Plaintiff had occasion to physically observe Michelle Zimmerman, the General Manager for Defendant Host at the San Francisco International Airport, literally lying on the ground and in a clearly intoxicated condition (totally consistent with her known habit of drinking while on the job) and Zimmerman's *contemporaneous* recognition that Plaintiff had seen her in such *compromising* position and was thus a threat to her job security (and Host's own perceived self interests in the bargain).

Plaintiff was, and is, as are many others, aware of Michelle Zimmerman's drinking on the job which testimonial and/or documentary evidence which will demonstrate clearly occurred and was, indeed, a regular, if not daily feature, on the scene at Host facilities with the both of them often drinking together in a variety of situations.

Thus began a long train of abuse and harassment against Plaintiff, who in addition to the knowledge of such drinking, was in possession of personal and *damaging* knowledge of GM Zimmerman's culpability of violating Defendant Hosts "*zero tolerance*" policy of drug and alcohol abuse, with the idea in mind to effect her (wrongful) termination and end the threat.

Complaint for damages page 17 of 42

Duly noted is that many people aware of the drinking situations above are of foreign ancestry and whose behavior, most especially those recently emigrated, is in general passive and submissive consistent with such background, and who could, from the point of view of the miscreants, by the use of the superior legal position of at least GM Zimmerman, be kept quiet by cowing them and threatening their job security, even their legal status as "green card" holders, unlike Plaintiff who, not only having the character to stand up for herself, had the perceived, if not actual, knowledge of the legal system and access to those with a knowledge of the law, to fend off any such crude attempts to intimidate her or threaten her job security.

And as this complaint is filed, both Zimmerman and others like situated, remain on their jobs when *they* could have been subjected to the sort of *summary* termination foisted off on Plaintiff by Defendant Host in a *retaliatory, pretextual,* and *illegal* manner, for in those instances Defendant Host would indeed have had the "just cause" for termination (subject to grievance procedures) so sorely lacking in the instant case.

In addition, Plaintiff had as much, if not more knowledge of the micro system than did even senior management, who felt intimidated by her knowledge. Thus Plaintiff was terminated on the basis of very disparate treatment, to say the least.

Complaint for damages page 18 of 42

That on Thursday January 11th, 2007 Plaintiff and her trusted friend
and advisor William Henshall had a *three hour* meeting with *HERE* agent
Richard Kuan at the local headquarters of Defendant *HERE* Local #2 in
Burlingame, California to discuss the upcoming mediation hearing of January
22nd, 2007 at which time all of the objections to the process used in
terminating Plaintiff were raised and supported by lawful authorities
presented by William Henshall *in writing* to Agent Kuan, which he chose,
*without any supporting legal authorities*, to ignore and dismiss.

Particular attention was drawn by William Henshall to the issues of the
lack of a *pre-termination* hearing and *opportunity for Plaintiff to be heard*
and the fact that even if Defendant HMS Host Inc. had proven its allegations,
even in a *full adversarial substantive due process hearing*, that the *single
charge of a four dollar* error would not have satisfied the "*just cause*"
and/or "*gross misconduct*" requirements in *Section 35c of the CBA* to
terminate plaintiff and would not have been judicially so construed to do so
in the instant case consistent with *known* existing case law.

Plaintiff, and *all like situated* -- and this applies almost *universally*
throughout the field of labor relations insofar as it applies to workers covered
by Collective Bargaining Agreements -- relies upon the security of *seemingly
substantive* procedures and *fundamental fairness* inherent in any
disciplinary process, let alone one for termination of a *long term* worker, to
protect them from the arbitrary and capricious, not to mention *retaliatory*,

Complaint for damages page 19 of 42

actions of Defendant HMS Host Inc. to use any *pretextual* excuse without, as in the instant case, producing any witnesses or evidence, not holding a pre-termination hearing or, at the very least, holding a meeting *so far after the occurrence of the alleged wrongdoing* that no reasonable person could have any recall of alleged events *such as to be able to put on an effective defense* even with a timely, noticed, pre-termination hearing.

Plaintiff simply cannot believe that this sort of result, whereby she has been summarily terminated from her job of *twenty four* years on a *single, naked, unsupported* allegation can be consistent with the spirit and letter of so many reforms in labor law wrought during the last several decades, nor can it be compatible with public policy, most especially when the result also affects, potentially substantially, the rights of her *dependent* children to not only the *essentials of life* but other deprivations as well, most immediately the threat of preclusion of a college education, even a modest one, for Plaintiff's daughter, Brittany Pickett, due to the lack of ability to be able to afford the costs of the same, and the loss of the case of her son, Ryan Pickett, against the San Mateo Unified School District for the egregious denial of his right to a meaningful and substantive education due to the loss of privity because of to Plaintiff's inability to pay attorney fees.

Returning to the meeting of January 11th, 2007. it became clear that Defendants HERE Local #2 and Agent Kuan were going to approach the mediation hearing of January 22nd taking the position that Defendant HMS

Host Inc. had **proven** its allegations against Plaintiff and that Plaintiff now **had the burden of proof** to demonstrate she was not guilty of any wrongdoing !

Subsequent to this meeting, Plaintiff faxed, on Friday, January 12, 2007, objections to this stated approach (see **Exhibit "A"**) to Defendant HERE Local #2 by and through its agent, Agent Richard Kuan so as to make it clear **exactly what the issues were** and set forth the position that Plaintiff wanted advanced at the mediation hearing of January 22nd, 2007.

No direct, substantive response to this fax was ever received. Accordingly, on or about Thursday January 18th, 2007, Plaintiff faxed the same document to HERE Agent Mike Casey at the headquarters of Defendant HERE Local #2 in San Francisco, California and an accompanying document setting forth more particulars about Plaintiff's position (see **Exhibit "B")** and asking, in effect, that the decision of Agent Richard Kuan, pursuant to the hereinabove mentioned plan to approach the mediation hearing, be reversed and Plaintiff's agenda be used.

This was likewise not done and thus at the mediation meeting Plaintiff attempted to file a document disclaiming the position of Defendants HERE Local #2 and its agents Kuan and Casey and setting forth **each and every defect in the proceedings to date** as hereinabove mentioned (see **Exhibit "C"**), but Plaintiff was **threatened and intimidated** with the abandonment of

Complaint for damages page 21  of 42

the mediation by Agent Kuan and, by extension, Defendant HERE Local #2 and its Agent Casey, if the document was filed or otherwise recorded.

Thus the mediation "hearing", such as it was, proceeded with Defendant HMS Host Inc. adding even more *unsupported and untimely* allegations of similar "wrongdoing" by Plaintiff, some for as little as a *few cents*, in ostensible support of their establishing a "pattern & practice" of such wrongdoing, none of which were, had been, or could be raised in any disciplinary action against Plaintiff, most especially not in support of the challenged wrongful termination here at issue, in what can only be described as a lame and desperate attempt to somehow establish the *"just cause"* and/or *"willful misconduct"* elements for the discharge of Plaintiff.

Once again, *no objections were raised*, at least by Defendant HERE Local #2 and most especially by its Agent Kuan, to any of Defendant HMS Host Inc.'s new allegations, thus continuing the Defendants' shameful record of failing to provide any of the *"fair representation"* to which Plaintiff, and *all like situated*, are entitled.

Plaintiff on Tuesday January 23rd, 2007 Defendant HERE Local #2 to its agent Mike Casey, a position paper prepared by William Henshall (see *Exhibit "D"*) setting forth with specificity many of the legal authorities relied upon to sustain Plaintiff's position on the issues, many being decisional case law of the courts as set forth therein, but *no response* was received to this.

Complaint for damages page 22 of 42

Plaintiff and William Henshall had, on Friday February 2nd, 2007, a further meeting with Kevin Connor, another agent of Defendant *HERE*, at the offices of *HERE* in Burlingame, California, for over an hour which meeting also failed to produce the desired results, most especially the denial of Defendant *HERE* to prosecute the instant lawsuit against Defendant Host which Plaintiff believes such action to be an integral part of the duty of Defendant *HERE* to provide *fair representation* to all its constituent members when they are the victims of unlawful and unfair labor practices by employers.

Instead, Defendant *HERE* seems committed to handling any further administrative proceedings on the basis that Plaintiff has in fact had the burden of proof shifted to her to rebut the allegations of Defendant Host and thus Plaintiff is in great fear of having viable, substantive objections "waived" that would result in her immediate re-instatement to her job and put an end to this case.

That on or about February 12th, 2007 Plaintiff learned that there was scheduled a mediation hearing on March 14th, 2007. Plaintiff strenuously objected to such a lengthy continuance, again especially *without any income stream for support*, but was told by Agent Kuan that this was the earliest available date for such hearing. The delay for an arbitration hearing can only

Complaint for damages page 23  of 42

be imagined and such delays would totally destroy Plaintiff's existing living arrangements and wreak havoc on ever facet of not only her life but her *dependent* children as well.

That on Friday March 2nd, 2007 Plaintiff sent Defendant HERE Local #2 via its Agents Casey and Kuan, a demand letter (see *Exhibit "E"*) seeking for them to abandon the upcoming mediation and/or arbitration, based on the fact that judicial relief was in order in the first instance due to the manifest wrongful discharge of Plaintiff and that Declaratory & Injunctive relief should thus be available to right the wrongs committed against Plaintiff and that Defendant HERE Local #2 had the status and standing, *as well as the responsibility*, as an integral part of its duty of fair representation to Plaintiff.

That on or about March 6th, 2007 Plaintiff was notified by Defendant HERE and Agent Kuan that there would be a further delay in the mediation, with the date moved up to March 27th, 2007 because Defendant Host, the party with all the legal talent and expertise (!) needed more time to prepare their case. Plaintiff again objected to this continuance, now realizing that due to the poorly drafted *Section 37(f)(2)* of the *CBA* that continuances in the grievance/administrative process could continue *ad infinitem* without, apparently, being in violation of any law. Indeed, the date of March 27th presented a conflict for Plaintiff, who was scheduled to have emergency foot surgery *before* her insurance coverage expires in order to salvage some of her physical mobility.

Complaint for damages page 24 of 42

That Plaintiff was notified by Defendant *HERE* that there would be a further delay of mediation to the first week of April again, apparently, due to a continuance requested by Defendant HMS Host Inc. Due objection was made to such continuance.

That on March 29th, 2007 Plaintiff faxed to Defendant *HERE* Local #2 and agents Richard Kuan and Mike Casey a letter seeking answers to crucial questions regarding the status of her health care insurance for herself and her children, after having made several unsuccessful oral inquiries because being already cut off from her stream of income, it would be impossible for her to cover any costs of every day medical needs, let alone any emergencies that might arise. (see *Exhibit "G"*). Plaintiff also renewed her strenuous objection to the lengthy delays in the administrative process, most especially for a matter that is a manifestly clear breach of contract and wrongful termination by Defendant HMS Host and indicated the unlikely prospect of her attending the scheduled mediation hearing on April 10th, 2007 (*four months* after her wrongful termination it should be noted), due to her being compelled to have foot surgery before the end of March in order to assure that the costs of this surgery would be covered by insurance, and put Defendant *HERE* Local #2 on *clear and unambiguous* notice, if in the event they somehow were unclear on the concept, that they were processing the *WRONG* grievance.

Complaint for damages page 25  of 42

That on April 5th, 2007 Plaintiff was advised by Defendant **HERE** of yet another delay in the "mediation" hearing, again ostensibly at the behest of Defendant HMS Host for another two to three weeks, with **no reason** given or, evidently, needed pursuant to **Section 36(f)(2) of the CBA** if this section is construed to apply to mediation as well as arbitration.

Plaintiff duly objected to this further delay of justice, without apparent effect as Defendants, and each of them, seem to believe that they possess, at least between them, **total and complete discretion** on every issue arising pursuant to the CBA, most especially the dilatory practices complained of herein.

Thus yet another issue arises for **judicial** determination, along with, among others, Plaintiff's right to a timely, noticed, pre-termination hearing, the effective **time limits** for an employer to bring charges against a worker covered by a CBA, and the evidentiary burden necessary to establish the existence of "just cause" and/or "gross misconduct" in the first instance.

That on April 16th, 2007 Plaintiff received a non-responsive, meritless, and generally self-serving letter (see **Exhibit "H"**) from Kim Wirshing, an attorney for Defendant **HERE** ostensibly replying to her letter of inquiry of March 29th, 2007 (see **Exhibit "G"**) into several issues of relevant law and/or legal principles underlying the entirety of Plaintiff's wrongful discharge.

Complaint for damages page 26  of 42

Among the startling revelations in this letter, which do nothing but highlight the lack of knowledge of Defendant *HERE* and thus its *fundamental inability* to perform its duty of fair representation, are the following statements (each of which is *conspicuously absent any supporting legal authorities*):

> "You mention the "presumption of innocence" standard regarding the disciplinary action against you. Unfortunately, your analysis is wrong under the law (what law -- ed ??). Under labor and employment law, an employer may take disciplinary action immediately and then, through the grievance procedure, they must provide evidence of "just cause". Further, this only applies to employees who are unionized and have a "just cause" clause in their CBA. *If you work for a non-union employer, the employer may discipline for any reason or no reason at all and you have no recourse or remedy*.

> "Contrary to your assertions regarding the correct process of discipline, the CBA contains *no provisions that would require a "pre-termination" hearing to establish "just cause" or "gross misconduct"*.

> "I am unable to respond to your philosophical or historical arguments regarding the Wagner Act or the CBA. *These issues do not have any immediate impact upon your case*."

> "You have asked for "accompanying legal authorities", to explain the above issues. *You should consult independent legal counsel* ... related to any of these issues."

Plaintiff responded to this letter with yet another reply questioning and/or rebutting *with expanded legal reasoning* (see *Exhibit "T"*) every assertion made by Wirshing in his letter, most especially regarding non-union

employees having no recourse against employers for wrongful discharge (*flatly wrong statement of law*), but without any hope or confidence, which was in serious doubt before the receipt of this letter, that Defendant *HERE* could or would fairly represent not only Plaintiff's interests in the instant case, but that of other members who should find themselves similarly positioned in the future due, in large part to the subservience of the Union to employers and its unawareness and/or inability or unwillingness to use existing legal authorities, to fight for the rights of its constituency when the occasion arises.

Plaintiff also finds the suggestion to "consult independent counsel" offensive and in utter derogation of the Union's obligation to discharge its duty of fair representation, which we can infer from this letter to mean that the Union thinks it has *no obligation*, as the legal agent *of its membership*, to respond to substantive inquiries about applicable law and that any member having issues of this sort *should have to bear the time and expense* to see an outside attorney (if one can be found) to provide such assistance.

This goes to the heart of the matter, as there is no reason whatsoever that the Union should not have *competent, trained,* counsel in the area of labor law who could provide meaningful legal assistance when necessary.

That the 'mediation' hearing finally occurred, albeit anticlimactically,

on May 2nd, 2007 with neither any justice for Plaintiff nor any administrative

relief in sight; Plaintiff was advised by Agent Kuan, who attended this

hearing without doing anything to advance the interests of Plaintiff, that

arbitration could easily take up to *two more years* -- a clearly inappropriate

and unacceptable situation, most especially where Plaintiff *HAS YET* to be

heard in her own defense and the *wrong* grievance is being processed by

Defendant *HERE* Local #2.

Plaintiff personally delivered to Defendants and mediator  a document

entitled "Declination to address the "merits" of wrongful termination" (see

*Exhibit "J"*) which was personally delivered to defendant HMS Host and the

mediator, David Weinberg, which set forth her position as, at one and the

same time, having a fervent desire to address the alleged merits of not only

the single charge against her which resulted in her wrongful termination on

December 5th, 2006, but a variety of similar allegations made by Defendant

HMS Host long after their wrongful termination of Plaintiff, none of which

were even presented and made known to Plaintiff on December 5th, 2006 or

which were relied upon in any way to effect her summary termination at the

hands of Defendant HMS Host in order to vindicate herself, and Plaintiff's

realization that by addressing the "merits" she was running an *unknown* and

*unacceptable* risk of *waiving rights secured by the Constitution* and/or

rights and privileges otherwise established by law, most especially as it

related to seeking the judicial redress of grievance to which she is entitled as

Complaint for damages page 29  of 42

a matter of right (see e.g. *Cohens v Virginia 6 Wheat 264*) and Plaintiff
stood her ground pursuant to the "*Ashwander* Doctrine" (*Ashwander v TVA
297 US 288,341* et seq.) objections stated in this document and the
supporting legal authorities therein and other authority within the knowledge
of William Henshall on this subject matter.

Some "highlights" from this hearing:

1.    Being informed by the mediator (hereinafter "Weinberg"), again at one
      and the same time, that Defendant HMS Host could *NOT* use any later
      allegations of wrongdoing by Plaintiff against her, as she expected, but
      that these incidents showed a "pattern & practice" of ostensibly
      *criminal* conduct that would support the termination of Plaintiff !

      Now this is supposedly a neutral mediator armed with at least enough
      legal knowledge to know that not only were the later allegations *time
      barred,* just as was the original charge, but that Plaintiff had never had
      the opportunity to defend against these charges either and yet he
      presumes them to be correct upon the mere, unsupported, allegation of
      Defendant Host.

      This situation alone should serve to amply illustrate the fact that the
      deck was, and is, stacked against Plaintiff being able to get any
      substantive relief, even if Defendant *HERE* was prosecuting any of

Complaint for damages page 30 of 42

the correct grievances, any one of which would have yielded a
summary exoneration of Plaintiff and a restoration to her job in the
first instance on December 5th, 2006 !

2.    That all concerned parties, after seeing and reading the "*Ashwander*"
assertions document (*Exhibit "K"*) offered into evidence by Plaintiff to
support her *good faith* appearance at the mediation hearing made
impertinent, irrelevant, inflammatory, and condescending comments
about it; Jeanine, a Union shop steward, even told Plaintiff to "fire
William Henshall because he does not know what he is talking about" .

3.    That in view of these "facts" Weinberg, shop steward Jeanine, and
Agent Kuan advised Plaintiff that she  should accept an offer (*not*
forthcoming) to be re-instated but *without* any back pay for the *five
months* these proceedings had dragged on and consider herself lucky
in the bargain ! !

4.    That Weinberg told Plaintiff that she was mistaken if she  thought that
judicial intervention was available before the *exhaustion of remedies*
as this was 'an established matter of law'. Clearly this is contrary to
the law as decided by the opinions of the supreme Court of the united
States in this area and most specifically those of Justice Byron White,
being relied upon by Plaintiff herein.

Complaint for damages page 31  of 42

At the time of the filing of this complaint, *twelve months* after Plaintiff's wrongful termination, *an arbitration date* has been set, but not until February 25th, *2008, fifteen months after the wrongful termination* !! Plaintiff is aware of another case of wrongful termination in which the arbitration will not take place until *16 months* after the termination. In addition, even if such arbitration is held, Defendant *HERE* Local # 2 is pursuing the *WRONG* grievance, over the objection of Plaintiff, and *NOT* raising any of the meritorious claims which do exist.

That Defendant *HERE* Local #2 by and through the acts of its agents Richard Kuan and Mike Casey not only completely failed to adequately represent Plaintiff throughout the termination proceedings, but their actions threaten the loss of many substantive claims of state and/or federal law that could have been raised, *had a pre-termination hearing been timely held*, of, among other things, reverse discrimination, discrimination against disabled people pursuant to the *Americans with Disabilities Act*, retaliatory discrimination, most particularly against workers claiming workman's compensation benefits, age discrimination, *anti-whistle blowing* discrimination, and *selective enforcement* of provisions of the CBA, to name some of the possibilities arising in the context of *pretextual termination* in the instant case.

Defendant **_HERE_** Local #2, and agents Casey, and Kuan **_knew, or
should have known_** of each of these claims and likewise **_knew or should
have known about_** , of each and every one of the procedural defects
committed by Defendant HMS Host Inc. in terminating Plaintiff, yet they
totally failed to take any action of consequence to assert substantive
contractual, and/or due process, rights of Plaintiff or **_any like situated Union
member._**

That as a result of the acts of Defendants as set forth in brief above,
William Henshall has come forward to financially assist Plaintiff Linda
Pickett to the maximum practicable extent in order to assure that his **_de facto_**
family, including Brittany Pickett, a minor, and Ryan Pickett, a dependent
adult child, do not go homeless or otherwise become a public charge due to
(a) Plaintiff Linda Pickett being unable to provide the essentials of life for
herself and children and (b) Plaintiff Linda Pickett being effectively further
denied due process in attempting to modify the support order against her ex
Kevin Pickett as he is at all times **_fully represented by counsel_**, yet she is
unable to afford counsel and has to proceed, as here, in propria persona with
little or no hope of prevailing against a fully armed adversary.

Accordingly, along with William Henshall's close familial ties to all
concerned family members over the 20 years he has known Plaintiff Linda
Pickett, to the point of being considered a father figure to the children ,he has
thus a right in the recovery of his property which has been redirected to

Complaint for damages page 33 of 42

Plaintiff Linda Pickett due to the manifestly unlawful acts committed against her by Defendants, and each of them, complained of herein.

As a direct consequence of the actions (or inactions) of the Defendants, and each of them, against Plaintiff, she is, and has been since December 5th, 2006, *without any income stream whatever save for the pittance emanating from her disability claim.*

Plaintiff has been *libeled* and/or *defamed* by Defendant HMS Host Inc. by reason of its letter, sent to the EDD in pursuance of *Section 1327 of the California Unemployment Code*, a document demanded by Plaintiff, but not yet forthcoming from Defendant HMS Host Inc., claiming that it had proven its allegations against Plaintiff in an ostensibly timely pre-termination hearing *that has yet to occur*, thus disparaging the character of Plaintiff with *meritless criminal accusations* and at the same time denying her due process of law in that she has never has a *pre-deprivation hearing* for such *vested property rights* of unemployment benefits due to the *false* claims stated by Defendant Host in such letter.

Plaintiff has been further *libeled* and/or defamed by Defendant Host via the insertion into the record of the termination proceedings a letter dated *December 11th, 2006*, by its agent, Mary Mork, claiming to be some or another sort of admission and confession of Plaintiff (see *Exhibit "K"*) to the alleged wrongdoing of violating some or another *unspecified* "cash handling

policy" which was also construed by Defendant Host, albeit **unilaterally and without Plaintiff having an opportunity to be heard on the matter,** as satisfying either "**just cause**" and/or "**gross misconduct**" elements of **Section 35 of the CBA** permitting the summary termination of Plaintiff. This letter is **totally untrue** and Plaintiff denies having made any such admissions of wrongdoing.

These acts of Defendant Host and, by extension Defendant **HERE**, and agents Kuan, and Casey also constitute breach of the covenant of good faith and fair dealing **and, in the case of Defendant HERE, and agents Casey, and Kuan the duty of fair representation** as clearly against the terms and provisions of the CBA which Plaintiff, and **all like situated**, rely upon to secure their jobs from the sort of random and vindictive actions as Plaintiff has suffered in the instant case in derogation of the implied covenant of good faith and fair dealing intrinsic in CBA agreements.

The acts of Defendants, and each of them as hereinabove stated, also constitute a breach of contract and, in the case of Defendant **HERE**, a further breach of the duty of fair representation to Plaintiff owed by Defendants, most especially as regards Defendant's acquiescence, individually and severally, **to the setting of the wrong record** for purposes of at least administrative, if not judicial, review.

In addition, the convenient bypassing of the *progressive discipline procedures,* as set forth in *Section 35* of the *CBA*, which would otherwise be applicable, assuming arguendo that Defendant Host had in fact proven its *sole* allegation of wrongdoing, which it did not do, due to its peremptory finding of "*just cause*" and/or "*gross misconduct*" is likewise an unfair labor practice (see e.g. *Fair Labor Standards Act*) , violation of its obligation of good faith and fair dealing, and/or a manifest breach of contract.

At least as to the issue of the existence of "*just cause*" as it applies to the determination of eligibility for unemployment benefits, the decision of the *California Unemployment Insurance Appeals Board* in Plaintiff's appeal from the denial of such benefits in *Case No. 2003023* (see *Exhibit "L"*) sustaining Plaintiff's claim that there was no "just cause" for her termination, and in which appeal was had a hearing of a type that should have been in order *prior* to Plaintiff's summary and wrongful termination, should be highly persuasive in making the same determination, albeit in a somewhat different context herein.

Plaintiff further contends that her long years of accrued service has vested her with a property interest in the continuance of her career (see e.g. *Wygant v Jackson Bd. Of Education 476 US 67*) and the right not to be discharged except for good cause (see e.g. *Pugh v See's Candies 47 Cal 3rd 654*), here with an accompanying written labor agreement (*CBA*) in addition to the implied covenant of fair dealing and acting in good faith.

Complaint for damages page 36 of 42

Defendant Host has further defamed and libeled Plaintiff, constructively, if not actually, by maintaining in its records of Plaintiff's work for Defendant Host the *false* and *fraudulent* termination letter of Mary Mork in 'support' of Plaintiff's having been (wrongfully) terminated for "just cause", when no such just cause either existed or was proved.

Accordingly, Plaintiff is unable to even apply for work, having no way to avoid the mention of her long term relationship with Defendant Host and knowing that questions which would necessarily arise in any job interview process about why an applicant was seeking a new job would be even more pronounced, from the point of view of a prospective employer, for an applicant coming off such a long term relationship.

Indeed, there might well be a presumption *against* hiring an applicant such as Plaintiff in these circumstances by reason of the fact that one does not ordinarily quit such a job and thus there 'must have been a good reason' for the employer to terminate the relationship, likely one involving at least *alleged criminal improprieties*.

It is at this point that Plaintiff would have no way of knowing, or proving, that any negative comments were made about her or that the defamatory termination letter might not be proffered by Defendant Host in response to inquiries about Plaintiff's bona fides and/or character.

Complaint for damages page 37 of 42

Even a stream of rejections for jobs would likely not satisfy whatever arbitrary statutory burden of proof Plaintiff would have in proving such defamation by Defendant and Plaintiff would be thus denied, in effect, her right to a trial by jury, while having a prima facie case against Defendant Host and never being able to sustain, as it were, her burden of proof to survive even a motion for summary judgment, let alone get evidence to a jury of the wrongdoing of Defendant Host, most especially in the likely event that Plaintiff would be *compelled*, as in the instant case, to proceed in pro per being *unable to afford* representation of counsel, and be opposed by Defendant and its veritable stable of trained attorneys.

Plaintiff has been further damaged by her wrongful termination by Defendant Host in that she has not been able to keep up with the discharge of obligations for various credit card balances, medical bills, auto insurance, and the like, with negative entries accrued to her credit record and reduction of 'credit-worthiness' thereby, and has been reduced to a very meager lifestyle having to deny herself and her children even simple purchases that would otherwise have been in reach if not for such wrongful termination by Defendant Host.

Complaint for damages page 38  of 42

## *PRAYER FOR RELIEF*

Plaintiff prays a jury trial *on all issues so triable* and for the following damages, to wit:

1.    As against Defendant HMS Host Inc.

A.    An amount to be determined in lost wages *and tips* from the date of the wrongful termination, Dec. 5th, 2006 until the date of the entry of judgment herein;

B.    Damages according to proof for the negligent infliction of emotional distress and trauma on Plaintiff and, by extension, her family, for the unlawful actions to which Plaintiff was *wholly and unnecessarily subjected* due to Defendant Host. Inc.'s wrongful termination of Plaintiff and breach of contract when it knew or should have known of the manifest unlawfulness of its acts;

C.    *Nine hundred thousand dollars (900,000.00)* dollars for breach of contract;

D.    Compensatory and/or exemplary damages in an amount of *five million (5,000,000.00)* dollars in order to deter Defendant HMS

Complaint for damages page 39 of 42

Host Inc., and *all like situated*, from repeating the clearly and egregiously wrong acts committed against Plaintiff against any other innocent parties like situated.

E.    *Five hundred thousand dollars (500,000.00)* for libel and/or defamation of character, most especially as regards any negative entries made upon Plaintiff's credit record(s) as a result of her being unable to discharge her obligations due to being wrongfully terminated and/or Plaintiff being effectively rendered unable to find a new job as a direct consequence of having to "admit" being terminated for theft of property", against Plaintiff as hereinabove stated.

While at first blush these damages seem excessive it is not so; Defendant Host Inc. had the misfortune to pick on a victim who was prepared to stand up for her rights and had the resources to do so effectively, *unlike the vast majority of people in her position*, a fact of which Defendant Host Inc. has to be keenly aware, and thus has arisen an all too rare opportunity for Plaintiff to perform a public service and send offenders a message too clear to admit of doubt as to the pitfalls of violating the Law of the Land via the (mis)use of their usually superior legal wherewithal and position of dominance in an employment agreement.

F.    Restoration of the amount, to be ascertained, loaned to Plaintiff by her friends for living expenses of Plaintiff as hereinabove mentioned;

Complaint for damages page 40 of 42

2.    As against Defendant HERE Local # 2:

A.    Compensatory and/or exemplary damages in an amount of *three hundred thousand dollars (300,000.00)* against Defendant HERE Local #2 , for its *total failure, despite the timely, repeated demands of Plaintiff,* to provide the fair representation secured to Plaintiff and to deter such future misconduct against Plaintiff and/or any like situated parties;

B.    *One Hundred thousand dollars (100,000.00)* for its active role as a collaborator in cooperating with Defendant Host Inc. in denying Plaintiff the due process of law that they knew or should have known was secured by the Constitution & laws of the united States and in similar cooperation with Defendant Host Inc. and its wrongful termination of Plaintiff;

C.    *Fifty thousand dollars (50,000.00)* for its role in negligently inflicting emotional stress upon Plaintiff by their co-operative role in the proceedings as aforestated.

3.    As against either HMS Host Inc. and/or HERE Local #2:

A.    Court costs and attorneys fees, most especially against Defendant HERE Local #2 for failing, as a part of its

Complaint for damages page 41  of 42

duty of fair representation, to prosecute this suit and/or
otherwise fairly represent Plaintiff's interests against
Defendant HMS Host.

4.    A judicial determination, to the maximum practicable extent,
construing not only the meaning of "*just cause*" and "*gross
misconduct*" as stated in the CBA, but a declaration of what
procedure(s) are essential to the determination of such factors in the
*first instance*, e.g. a *timely, noticed pre-termination hearing*, a time
limit for asserting alleged misconduct, and an approximate time frame
for the completion of administrative review of an action of termination
(and provisions for an *expedited* review in *blatant* cases of abusive
contract violations and other wrongful acts where there is *no
underlying factual dispute* such as in the instant case), most
particularly where the terminated worker's *stream of income is
severed* while such review is pending.

Date: _____, 2008

Linda Rovai-Pickett/Plaintiff
In Propria Persona

Complaint for damages page 42 of 42

Linda Rovai-Pickett
17 Queen Anne Court
Millbrae, California,
Tel: 650-873-2188
Plaintiff In Propria Persona

## IN THE SUPERIOR COURT OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN FRANCISCO

Linda Rovai-Pickett,              )
                                  )
                                  )       CASE No. CGC07 469683
            Plaintiff             )
                                  )
                                  )
                                  )
                                  )
      vs.                         )
                                  )       Index of Exhibits
HMS Host Inc.  et al              )
                                  )       to Complaint for Damages
HERE Local #2                     )
                                  )
      et al.                      )
                                  )
            Defendants            )
                                  )
                                  )
                                  )
                                  )
_____)

| | |
|---|---|
| Exhibit A | Plaintiff's letter to Defendant HERE 1/12/07 |
| Exhibit B | Same to Defendant Casey 1/18/07 |
| Exhibit C | Plaintiff: Mediation issues 1/22/07 |
| Exhibit D | Plaintiff to HERE 1/23/07 |
| Exhibit E | Plaintiff demand to stay arbitration 5/2/07 |
| Exhibit F | Plaintiff to NLRB 3/7/07 |
| Exhibit G | Plaintiff to HERE in re Health Care 3/9/07 |
| Exhibit H | Kim Wirshing, HERE counsel to Plaintiff 4/16/07 |
| Exhibit I | Plaintiff to Wirshing 4/18/07 |
| Exhibit J | Declination of Plaintiff to address merits in Mediation 'hearing'  5/2/07 |
| Exhibit K | Termination letter of Defendant HMS Host 12/5/06 |
| Exhibit L | Decision of ALJ in re unemployment  2/7/07 |

Linda Rovai-Pickett
17 Queen Anne Court
Millbrae, California,
650-873-2188

### IN THE SUPERIOR COURT OF CALIFORNIA

### IN AND FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| Linda Rovai-Pickett, ) | |
| ) | |
| ) | CASE No. _____ |
| Plaintiff ) | |
| ) | |
| ) | |
| vs. ) | |
| ) | Exhibit "A" |
| HMS Host, ) | |
| ) | |
| HERE Local #2, ) | Plaintiff's fax to Defendant |
| ) | |
| ) | HERE of January 12, 2007 |
| ) | |
| ) | |
| ) | |
| Does 1 thru 50 ) | |
| ) | |
| Defendants ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |

To:   HERE Local 2

From:  Linda Rovai-Pickett

In Re:  Re-instatement to job

Date:  January 5, 2007

As you are well aware I have been terminated *without just cause* in plain violation of the Collective Bargaining Agreement (CBA), not to mention being denied even the barest scintilla of due process in that no hearing was ever had where I could present my case as to the (*unproven !*) allegations against me and which hearing, in any event, would have been *time barred* for failure to bring the charges in a timely manner.

This last objection is abundantly supported, and remember this alleged "rule violation" was, at most, over a matter of *four dollars* an amount that even if neglect could have somehow been shown, would not have risen to satisfy the just cause requirement of *Section 35 of the CBA*, as in my job as a food server *several hundreds* of transactions had occurred in the *month* between the time of the occurrence of the alleged violation and the date of the "hearing" wherein I would have had *no opportunity* to have recalled the details of the alleged violation (had there been facts in evidence to support the claim).

I have been advised that the *egregious* actions against me by the company will almost certainly amount to a wrongful, if not retaliatory and/or pretextual, discharge, most especially considering my length of service of *twenty four years* and, as such, it would seem clear of doubt that as a part of the Union's duty of fair representation that they file suit on my behalf on these, and probably other, grounds and do so *forthwith* with the intention of

moving the trial court for an ex parte order re-instating me to my job *as of December 5ᵗʰ, 2006* with *full back pay, including tips*, or, in the alternative having me place on paid administrative leave *under like circumstances* until such time as the administrative and/or judicial procedures are completed.

It is my position, pursuant to information provided by counsel, that I had and have a right to a pre-deprivation hearing of some sort as a matter of due process of law (see e.g. *\*Goldberg v Kelly 397 US 254, Cleveland Bd. of Educ. v Loudermill 470 US 532, Brock v Roadway Express 481 US 252*) most particularly where, as here, I have also been denied unemployment benefits which, having been taken, in the first instance, from *my property* in the form of my time and labor, are thus *vested property rights* which would *absolutely require* a pre-deprivation hearing, perhaps even a *judicial* one, in which I might be heard.

I believe that lawful authority exists, as a matter of due process, even if not mandated by overt lawful authority such as in *Brock*, supra, for my re-instatement and/or placement on *paid* administrative leave pending full resolution of all issues judicially and/or administratively given the egregious actions of the company against me in clear violation of the CBA; the facts of this case cry out for no less (perhaps terms and conditions such as in *Brock*, supra, would be suitable for appending to the CBA, if they could not be said to exist by reason of due process and/or liberty issues).

If it is your opinion that any of the above is in error, then you may consider this a demand to have *written copies forthwith of any and all legal authorities supporting your position*.

As of this date (*thirty days* later), long past the time of action on the part of the Union, I remain not only out of work but with my application for unemployment benefits *summarily* denied apparently on the basis of the EDD taking the company's *unsupported* word for the truth of their allegation against me and this, too, *without a hearing* of any kind whatsoever (which the EDD might have presumed, perhaps via *fiction of law,* to have occurred).

The time for action is *NOW*. Please see to it.

_____/S/_____    12-03-07

Linda Rovai-Pickett
17 Queen Anne Court
Millbrae, California
650-873-2188
Cell 650-296-6099

\* in my view, as stated by counsel, the Goldberg case, along with the other cases cited and **_Sniadach v Family Finance Corp. 395 US 337_**, is **holding** case law sustaining the view that the violations of due process rights by the company supersedes and nullifies any alleged action taken against me for, among other reasons, the failure to any hold hearing at all, let alone one consistent with the due process afforded the *welfare* recipients in Goldberg, prior to my being dismissed, thus there is *NOTHING TO ARBITRATE.*

Linda Rovai-Pickett
17 Queen Anne Court
Millbrae, California,
650-873-2188

## IN THE SUPERIOR COURT OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN FRANCISCO

Linda Rovai-Pickett,                    )
                                        )
                                        )        CASE No. _____
            Plaintiff                   )
                                        )
                                        )
                                        )
        vs.                             )
                                        )        Exhibit "B"
HMS Host,                               )
                                        )
HERE Local #2,                          )        Plaintiff's fax to Defendant
                                        )
                                        )        HERE of January 18, 2007
                                        )
                                        )
                                        )
                                        )
                                        )
Does 1 thru 50                          )
                                        )
            Defendants                  ) .
                                        )
                                        )
                                        )
                                        )
                                        )
_____)

To: Mike Casey
     HERE Local # 2
     415-864-4158 fax

From: William Henshall

In Re: Matter of Linda Rovai-Pickett

Date: January 18, 2007


     This is to bring to your attention that there is currently pending a mediation 'hearing' on Monday January 22, 2007 between HMS Host Inc. and my long time friend Linda Rovai-Pickett, a food server of *twenty six years* service who was wrongfully terminated from this position on December 5th, 2006 at a meeting, *not hearing*, where she had but 3 days notice, which she had *no notice whatsoever* of the agenda of said meeting, and which, in any event, being based on alleged misconduct that had occurred *thirty days prior to the date of the meeting*, would have been, and should now be, construed as violative on it's face of the spirit, if not letter of the CBA and/or due process for the length of the delay, most especially over an alleged matter of *four* dollars.

     As you might expect, Linda has complained from day one about these procedural defects and other matters, the latter possibly coming into play if somehow the procedural defects could be cured, a seemingly impossible task given the legal authorities I have compiled in this area.

     This case, given how clearly the company has violated the law and/or the CBA, represents a real opportunity to not only obtain the substantive relief Linda deserves, but to put in place precedents and safeguards so that no one else is subjected to such

lawless and wanton behavior on the part of an employer.

The real concern here, at the moment, is that following a three hour meting with Richard Kuan in Burlingame on Thursday January 11th, 2007, wherein a cordial exchange of views and ideas was had, that HERE is taking the docile and unwarranted position, for the purpose of the mediation hearing scheduled, that (a) somehow the company has sustained it's burden of proof as to it's allegations of wrongdoing, and (b) *that Linda has somehow had the burden of proof shifted to her* to deny their claims, neither position being supported by *any known legal authorities*.

As is evident from the accompanying letter from myself to Richard Kuan subsequent to our meeting, this approach invites the unwarranted risk of being ruled by the courts to have acquiesced to any or all of these egregious errors and *thereby waived any right to raise them in a judicial forum*. This would, in my view, be especially true, if not a certainty, if this matter goes to arbitration; this is also true despite seemingly definitive language in the CBA mandating such arbitration prior to seeking judicial relief.

In plain point of fact, Linda is in no position, being *unlawfully deprived of her stream of income* and with dependent children to support in the bargain, to invest the *months* of time that arbitration takes, and even on an expedited basis it is my opinion that the ALJ would lack the jurisdiction to rule on many, if not all, the legal irregularities present in this case.

It should here be noted that *no response* to my accompanying letter has been made to either Linda or myself, which leads to the inescapable conclusion that HERE Local #2 is going to proceed as stated at the mediation hearing of Jan. 22nd and address the "merits" of the case without raising any of these points.

This could be a colossal error that not only would deprive Linda of obtaining the substantive relief cried out for against HMS Host, but would deprive the Union of a golden opportunity to further it's interests in setting standards for employee discipline and/or discharge that would have far reaching beneficial effects.

Not only this, but with a case where the excesses and prejudice of an employer could hardly be clearer, one has to ask the questions:

1.  If an employer can get away with the termination of an employee, most especially one of such long standing, in the manner done here, *of what limitation* does this type of authority admit ??

2.  If the Union cannot effectively enforce, one way or another, rights of it's members fairly ascribed to the CBA and/or due process of law, then what reason is there for the union to exist at all or for workers to want to join a union ?

Linda needs your help *NOW*. Please respond to her at your *earliest* convenience at 650-873-2188 or 650-296-6099 (cell) --

Sincerely,

_____ /S/        12-03-07

Linda Rovai-Pickett
17 Queen Anne Court
Millbrae, California,
650-873-2188

## IN THE SUPERIOR COURT OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| **Linda Rovai-Pickett,** | ) |
| | ) |
| | )     **CASE No.** _____ |
| Plaintiff | ) |
| | ) |
| | ) |
| vs. | ) |
| | )     Exhibit "C" |
| HMS Host, | ) |
| | ) |
| HERE Local #2, | )     Plaintiff's disclaimer of |
| | ) |
| | )     Defendant HERE's |
| | ) |
| | )     grievance/mediation tactics |
| | ) |
| Does  1 thru 50 | ) |
| | ) |
| Defendants | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

To: Whom it may concern

From: Linda Rovai-Pickett

In Re: Mediation statement

Date: January 22, 2006

This is to *set the record* of the mediation hearing between myself and HMS Host Inc. pursuant to their *wrongful* discharge of me on December 5th, 2006 in order to preserve, to the maximum practicable extent, all objections as hereinafter listed for *judicial* review should the same become necessary.

My intent here is find a balancing position of, at one and the same time, acting in good faith in an attempt to seek an administrative remedy for the wrongs committed against me, although I disagree with the tactics of my HERE Local #2 representative in this regard as the union is well aware, and to make it perfectly clear what my personal positions are on the *real* issues arising herein, having been advised by trusted counsel having a sound working knowledge of the de facto legal system.

To that end, I am *admitting nothing* for the purpose of mediation as I believe that HMS Host has denied my rights in not holding a *timely and noticed pre-termination hearing* wherein I could be heard in my own defense as required by law.

Second, the record will disclose that at the meeting, *not* hearing, of December 5th, 2006 neither evidence in support of HMS Host's allegations against me nor witnesses on their behalf were produced *despite my timely demands*.

Third, that this meeting, such as it was, was fully *thirty days after the date of the alleged misconduct by me* that led to my being terminated, and being subsequently denied unemployment benefits, *again without a pre-termination due process hearing,* based on a *false and fraudulent letter* submitted by HMS Host Inc. pursuant to <u>*Section 1327 of the California Unemployment Code*</u> attempting to justify such termination as being within the law.

Fourth, that the *lengthy* delay in bringing the charges against me, most particularly over an alleged matter of *four* dollars and combined with the fact that in my job as a food server I will routinely have *40-50* transactions per day, violates the spirit, if not letter of the CBA and denies me an opportunity to present a defense, had such opportunity been available which it was not, due to *the impossibility of being able to have any recall* of the events that gave rise to my *(pretextual)* summary termination.

Fifth, that the decision to terminate me *had already been made prior to this meeting* and thus no attempt was made to allow me *an opportunity to be heard in my own defense*, a foundation requirement of even *procedural* due process, not to mention CBA protections, to which I have timely objected.

Sixth, that I had but a few days notice of this meeting, *and no notice whatsoever of the agenda of the meeting* and hence no opportunity to gather evidence, confer with counsel, and generally prepare a defense to the allegations against me.

Seventh, that I disagree with the Union's approach to this mediation in that they plan to attempt to address the "merits", such as they are, of HMS Host's case against me and in making this effort, to stipulate, in effect, that *we have had the burden of proof shifted to us* after HMS Host Inc. had 'proved' it's charges against me, *which it did not do and has never done*.

Eighth, that the Union does not plan to present any of the above facts to the mediator listed in 1 thru 6 above for reasons totally beyond my comprehension, most especially in view of the advice of counsel I have received based on research and lawful authorities that *I have seen* and agree with, many of these being decisional case law from the *supreme Court of the united States*.

Finally, that for the foregoing reasons, any perception that my side is addressing the "merits" of the case against me is, and must be, based on the *hypothetical assumption* that *all* the errors complained of in 1 thru 6 above have been *judicially* resolved in favor of HMS Host Inc. and that this mediation will thus be something of a sounding board for what would occur if the matter were to be arbitrated.

In summary, as I have made great efforts to point out to HERE Local #2, all of what they propose to do at this hearing would have been perfectly proper to present at a *timely, noticed, pre-termination hearing* which, had such a hearing occurred, the result would have abrogated the necessity for this proceeding.

Sincerely,

_____/S/ 12-03-07_____

Linda Roval-Pickett

Linda Rovai-Pickett
17 Queen Anne Court
Millbrae, California,
650-873-2188

1

2

3          IN THE SUPERIOR COURT OF CALIFORNIA

4        IN AND FOR THE COUNTY OF SAN FRANCISCO

5

6

7   Linda Rovai-Pickett,                     )
                                             )
8                                            )
9                                            )      CASE No. _____
10                      Plaintiff            )
                                             )
11                                           )
12                                           )
13              vs.                          )
                                             )
14                                           )      Exhibit "D"
    HMS Host,                                )
15                                           )
16  HERE Local #2,                           )
                                             )      Plaintiff's fax to Defendant
17                                           )
18                                           )      of January 23rd, 2007
19                                           )
20                                           )      setting forth positions on
21                                           )
22  Does 1 thru 50                           )      legal issues
23                                           )
24                      Defendants           )
25                                           )
26                                           )
27                                           )
28                                           )
                                             )

To: Mike Casey
      HERE Local # 2
      415-864-4158 fax

From: William Henshall

In Re: Matter of Linda Rovai-Pickett

Date: January 23, 2007

     This is to express disappointment and disgust, if not surprise, at the handling of Linda's termination redress and to note that she was misled, if not lied to, by the Union as to the meeting of Jan. 22nd being a "mediation" hearing when in fact it was a grievance procedure. Further evidence of bad faith on your part.

     Now it seems that an arbitration is in the offing, but with who knows how long a delay and with Linda still wrongfully terminated and deprived of her stream of income, with her financial situation growing more desperate by the day.

     Based on this latest "effort", it can only be expected that HERE Local #2 will provide more of the same docile, subservient efforts that have characterized it to date, instead of seriously performing your duty of fair representation not only to Linda, but to the labor movement in general.

     And I now understand that Richard Kuan once again failed to object to anything that Host did at this meeting, including introducing more alleged instances of "misconduct" (involving more piss-ant amounts of money) by Linda that, even if true, would be barred from being used on several grounds, including timeliness, of which you should be well aware and which clearly show the desperation of Host to establish the CBA *just cause*.

Also, the question arises as to why, most especially since you have refused to seek judicial relief in the first instance for Linda and have her re-instated to her job pending the outcome of these proceedings, that there isn't something by way of a fund for wrongfully terminated workers which could be drawn upon for expenses during the pendency of at least administrative, if not judicial, proceedings, and which costs could be recovered from Host/employers upon a successful restoration of a worker's job.

For your further review I am also enclosing a document prepared with the idea of obtaining legal representation for Linda which she feels that she needs that sets forth many, if not all, of the legal theories that could and should be advanced that would, at one and the same time, restore Linda to her job and, quite possibly, set long overdue, from the looks of it, new standards in the area of labor-management relations so that injustices such as has befallen Linda do not occur again to another innocent party.

With particular reference to any arbitration, no matter how timely it should occur, Linda and I would like answers to the following questions, and each of them, *forthwith*:

1.    What the Union hopes to gain by such arbitration, most especially given it's extremely poor efforts to date on Linda's behalf and given the administrative record it has allowed to be set, albeit over Linda's timely objections ??

2.    On what legal basis does the Union proceed to arbitration with any hope of success, most particularly now having backed itself into a corner whereby *the burden of proof has been permitted to be reversed* ??

3.   On what legal basis would an ALJ, let alone an arbitrator, have any jurisdiction to rule on the many *legal* objections raised by Linda to this entire process even if belatedly advanced by you, most especially those regarding issues of *due process of law* that we believe fairly arise in this case ??

4.   If the arbitration fails to secure relief for Linda, as is a very probable outcome given the circumstances, would the Union then be willing to seek *judicial* relief, and particularly an order re-instating Linda to her job or placing her on *fully paid* (*including lost tips*) administrative leave as of Dec. 5th, 2006 during the pendency of the suit and, if not, why not ??


How you can idly stand by and not only watch such an egregious injustice done to Linda, but actively co-operate in it's perpetration, is beyond Linda and me. Is this really how HERE understands the nature of labor relations, to be in such a state as to offer none of the protections afforded even welfare recipients ?? Is this really what was envisioned by the architects of the much vaunted "New Deal" with it's fundamental changes in labor law to supposedly help the "forgotten man" ??


_____     12-03-07

William Henshall

To: Mike Casey
     HERE Local # 2
     415-864-4158  fax

From: Linda Pickett

In Re: Issues in re CBA

Date: January 26, 2007

    As you know I have been insistent that there are many
procedural errors and violations of the CBA that, taken separately,
let alone together, would reverse my unlawful termination by HMS
Host Inc. and restore to my rightful position.

    HERE does not seem to share these views. In particular I
need to know *what would constitute timeliness*. for the purpose of
invoking the CBA procedures for discipline and/or termination,
and at what point the company would be prevented from taking any
action against an alleged wrongdoer.

    The CBA appears to be silent on this issue, so you may
construe this as a demand to have *written* copies of any and all
legal authority that would support an opinion that the events in the
instant case were indeed timely, most especially where timely
objections to them were made.

    Likewise, I need copies of any and all legal authorities that
purport to define the *"just cause"* provision of the CBA, most
especially since I cannot see any way that a single matter of *four*
dollars, even if proven *which it was not*, could satisfy such a
requirement.

In addition, I would like to know why my many years of service, ostensibly without any claims of the type used to wrongfully terminate me, were not introduced into evidence, assuming that the meeting of December 5th, 2006 fully satisfied the *pre-termination* requirements for discipline and/or termination, to rebut the claim of wrongful conduct on my part.

Finally, I think it essential that we meet as soon as possible to discuss this entire case in order that we get on the same page, as I have no reason whatsoever to believe that any benefits will accrue in either mediation or arbitration if they are approached with the mindset that the burden of proof has been shifted to me to disprove the company's claims.

Please contact me asap at 650-873-2188 or 650-296-6099.

_____/81____/2-03-07_

Linda Pickett

Linda Rovai-Pickett
17 Queen Anne Court
Millbrae, California,
650-873-2188

# IN THE SUPERIOR COURT OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| **Linda Rovai-Pickett,** | ) |
| | ) |
| | )     **CASE No.** _____ |
| Plaintiff | ) |
| | ) |
| | ) |
| vs. | ) |
| | )     Exhibit "E" |
| HMS Host, | ) |
| | ) |
| HERE Local #2, | )     Demand for filing of |
| | ) |
| | )     action for Declaratory |
| | ) |
| | )     Judgment & Injunctive |
| | ) |
| Does 1 thru 50 | )     Relief by HERE Local #2 |
| | ) |
| Defendants | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

To:   HERE Local # 2
      Mike Casey
      Richard Kuan

From:  Linda Pickett

In Re: Continuation of mediation

Date:  March 7th, 2007


Have this day been advised of a continuation of the scheduled mediation hearing of March 14th, 2007 and further advised that this delay is for the benefit of Host to get it's records complete and in order.

Also Richard Kuan said to me that he needed to review all company documents to be able to assess the case against me, such as it is.

*None of this is acceptable*, most especially where I continue to be without any income, but more to the point you are continuing to address issues that are *not even relevant* to the outcome of mediation and/or arbitration.

Also this delay I perceive to be the first of may such that are likely to occur here, most particularly given the poorly drafted language of *Section 36(f)(2) of the CBA* wherein lies the carte blanche authority to seek, and likely get, continuances for any reason or for no reason -- an seemingly unreviewable power to be used by the company to string out arbitration for so long that even an egregiously wrongfully terminated worker such as myself will not be able to wait it out while being without income, just giving strong meaning to the phrase "justice delayed is justice denied".

Now my case is as clear a case of wrongful termination as can possibly be imagined, so there are no good reasons for any delays to get what should be a *summary* ruling in my favor given the well known facts of the case.

You have been given every opportunity to perform your duty of fair representation to me as a Union constituent and have failed miserably in this regard despite my many pleas as to the merits of the case.

Now is the time to act and to present the case I have wanted argued since day one. Please advise ASAP as to your intentions.


Sincerely,



_____/S/_____  12-03-07

Linda Pickett
650-873-2188
650-296-6099 cell

Linda Rovai-Pickett
17 Queen Anne Court
Millbrae, California,
650-873-2188

# IN THE SUPERIOR COURT OF CALIFORNIA

# IN AND FOR THE COUNTY OF SAN FRANCISCO

Linda Rovai-Pickett,                )
                                     )
                                     )     CASE No. _____
            Plaintiff                )
                                     )
                                     )
                                     )
        vs.                          )
                                     )     Exhibit "F"
HMS Host,                            )
                                     )
HERE Local #2,                       )     Fax to NLRB posing
                                     )
                                     )     questions of Labor Law
                                     )
                                     )     relevant to the instant
                                     )
Does 1 thru 50                       )     case;
                                     )
            Defendants               )
                                     )
                                     )
                                     )
                                     )
                                     )
                                     )

To:  NLRB
     San Francisco Office
     Joseph Norelli, Director  Fax 415-356-5156

From:  Linda Pickett

In Re:  Issues related to wrongful discharge

Date:  March 7th, 2007

Having recently been wrongfully discharged from my job of *twenty four years* it is my intention to visit the NLRB office in order to file complaints with the appropriate authorities in an attempt to seek redress of grievance.

To this end, I am advised by counsel that there are questions of law, both statutory and constitutional, that arise on the facts of the case and I am posing *some* of these here in advance in the hope that this will expedite some answers to such questions.

1.  Could the FLSA and/or the Federal Arbitration Act be construed to preempt the right to seek judicial relief for a manifestly wrongful termination, most especially if the Union is named a party defendant in such a suit ??

2.  When a CBA is silent on the issue, what authority governs the timeliness of the presentation of charges of misconduct against a worker, most particularly if such charges could result in the termination of such worker ?

3.  Is there a right to a noticed, *pre-termination* hearing, again most especially for a worker having many years of good service on the job at which hearing the issues of "just cause" and/or "gross misconduct" would be *jointly* determined in the first instance ??

4.  Would a *single* alleged instance of misconduct, amounting to, at most, only a *few* dollars, satisfy the elements of "just cause" and/or "gross misconduct" even if proven, most particularly for the purpose of bypassing the incrementally imposed discipline guidelines agreed to in the CBA ??

5.  Does an arbitrator possess, in a case where an employer has *clearly acted in unmitigated bad faith in violation of the CBA* , the authority to do more than order the terminated worker to be rehired and to be compensated with full back pay ??  Why or why not ??

6.  Is there prevailing legal authority on what constitutes a *timely* administrative resolution of a grievance for a wrongful termination and/or a time past which a recalcitrant party (employer) can have evidentiary presumptions arise *against* them or even a directed verdict for the claimant due to their dilatory actions ?? Again bear in mind that the terminated worker is *without a stream of income* through this whole period (unless there is authority for an arbitrator and/or mediator to order that the terminated worker be placed on *fully paid retroactive administrative leave* pending the resolution of a grievance).

And as a general proposition, why, in a Nation based on the *rule of law*, is it that there seems to be no hard and fast rules when it comes to matters of labor relations, and rulings by arbitrators and/or administrative law judges are *not* bound by stare decisis or res judiciata (precedent). Even granting that there are an almost unlimited scope of situations that can arise in the workplace, when an employer acts, as has happened in the instant case, with *reckless disregard* of the terms and conditions of the CBA, and the Union *does nothing*, despite the constant urging of the affected member accompanied by seemingly applicable legal authorities, to vindicate the safeguards in such CBA for the protection of it's constituency, why is there not an available remedy(ies) *immediately* for the resolution of such lawlessness ??

As is clear from the facts, workers are, in California at least, *more* protected when they do *NOT* belong to a Union, if the decisions of the California Courts are any indication (see e.g. ***Pugh v See's Candies 116 C.A. 3rd 311, Tameny v Atlantic Richfield 27 Cal 3rd 167, Foley v Interactive Data 47 Cal 3rd 654***). Is there any reason that this should be so and, if it is true, what reason would there be to join a Union and give up such protections ?? And where does such a situation leave agencies like the NLRB in the big scheme of things ??

Your prompt attention to this matter is solicited and appreciated. Please contact me in any way as listed below.

Sincerely,

_____/$/_____  12-03-07

Linda Pickett
17 Queen Anne Court
Millbrae, California
650-873-2188
650-296-6099  cell
650-872-1159  fax

Linda Rovai-Pickett
17 Queen Anne Court
Millbrae, California,
650-873-2188

## IN THE SUPERIOR COURT OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN FRANCISCO

Linda Rovai-Pickett,                    )
                                         )
                                         )     CASE No. _____
            Plaintiff                    )
                                         )
                                         )
                                         )
            vs.                          )
                                         )     Exhibit "G"
HMS Host,                            ─   )
                                         )
HERE Local #2,                           )     Fax to HERE Local #2
                                         )
                                         )     posing questions of Law
                                         )
                                         )     relevant to the instant
                                         )
Does 1 thru 50                           )     case;
                                         )
            Defendants                   )
                                         )
                                         )
                                         )
                                         )
                                         )

To:   HERE Local # 2
      Mike Casey  Fax: **415-864-4158**
      Richard Kuan  Fax: **340: 344-9406**

From:  Linda Pickett

In Re:  Grievance issues

Date:  March 29th, 2007

   This is to inquire as to the status of my company insurance
benefits for myself and my *children* during the pendency of the
administrative process, most especially as it relates to the grievance
and/or arbitration activities currently in progress. Just as with my
grievance claim, oral inquiries about this situation have gone
unanswered and this matter is in need of *immediate* resolution.

   It is my understanding that these benefits remain in place
during this time, most particularly in view of the fact that I am also
on Workman's Comp/disability leave; in addition there might be
COBRA provisions of law that come into play as well. In addition,
the presumption if innocence standard, particularly given the facts
of this case, should, via operation of law, serve to maintain the
status quo until such time as the matter is decided.

   Please advise at your earliest convenience about this
important matter, most especially if your view differs from the one
expressed herein (and with *accompanying written legal
authorities* in support of such contrary position) and/or if there are
any documents that need to be signed and/or otherwise prepared to
effect a continuance of such insurance benefits (fax all copies of
any such documents to me at 650-872-1159).

In addition, I again point out that it is my position pursuant to my wrongful discharge that the company's failure to act promptly upon the occurrence of such termination, particularly interposing the objection that the *single* charge of alleged "misconduct", even if not time barred for the purpose of disciplinary action, did *NOT* of and by itself constitute either "just cause" and/or "gross misconduct" pursuant to *Section 35 of the CBA*.

I also believe that a fair reading of the CBA, and such documents in general, would strongly support the argument that the Union and/or affected worker, have the right to at least a *noticed, timely, pre-termination hearing for the express purpose of determining the existence of "just cause" and/or "gross misconduct"* and that to leave such a determination to the total discretion of the Employer in the first instance *seriously compromises* my position for the duration of any administrative proceedings and thus operates as a waiver of the otherwise ostensibly applicable concept of "exhaustion of remedies" that is some sort of requirement before seeking judicial relief.

Further, I firmly believe that HERE Local # 2, in the best case scenario, is processing the *WRONG* grievance, most particularly as it has taken the position that the company has established the existence of "just cause" and or "gross misconduct" essential for the *termination* of a worker pursuant to the terms and conditions of the CBA and has thus, by necessary implication agreed with the proposition that *I have the burden of proof to refute the company's "meritorious" claim* !!

At best, for the company's position, all that could possibly be said on the facts of this case, is that *perhaps* the company has established enough "misconduct" as to be able to invoke the *progressive* discipline set forth in *Section 35 the CBA* and this is a tremendous stretch in a legal sense in this case.

As I have maintained throughout, if the company can do to workers generally what it has done to me in the instant case then there is *neither substance nor enforceability* to the CBA and no apparent reason for it's existence save as a *window dressing* to *assuage the guilt* of the parties and *inform the conscience* of the court in dismissing claims of victimized workers at the hands of their employers and/or Unions, hardly a contemplated goal of the framers of most, if not all, of the fundamental "changes" in labor law in the 1930s and 1940s (Wagner Act, National Labor Relations Act, National Labor Management Act and the like) and the *judicial violence* done to the interpretation of Congress' Interstate Commerce powers (see e.g. *NLRB v Jones & Laughlin Steel 301 US, Wickard v Filburn 317 US 111, US v Darby 312 US 100*).

Also, a as a part of a continuing objection to the unwarranted delays in the grievance/arbitration process, I re-state my displeasure at the length of time already expended, let alone who knows how much more time to come, most especially with my *stream of income cut off*, to resolve issues that could and should have been addressed and decided *within two weeks, if not less*, from the beginning due to the total absence of any substance to the company's legal position then or now.

Finally I make note of the fact that my appearance at the mediation hearing now scheduled for April 10th is in serious jeopardy due to the fact that I am having foot surgery on Friday March 30th, 2007 in order to be assured of medical coverage -- while I would rather have this done later this would run the unwarrantable risk of not having insurance coverage (one of the reasons for the urgent request at the outset of this letter) but I am advised by my doctor that I will be laid up, *unable to walk*, let alone drive, for approximately two weeks, which period covers the time of the scheduled hearing at which I would very much like to attend and have the right to attend (especially in view of what has

transpired to date in this sordid affair).


Please advise about each and every one of these matters at
your *earliest possible convenience* --


Sincerely,


/s/    12-03-07

Linda Pickett
17 Queen Anne Court
Millbrae, California 94030
650-873-2188
650-296-6099
650-872-1159   fax

Linda Rovai-Pickett
17 Queen Anne Court
Millbrae, California,
650-873-2188

## IN THE SUPERIOR COURT OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN FRANCISCO

Linda Rovai-Pickett,                    )
                                         )
                                         )        CASE No. _____
                  Plaintiff             )
                                         )
                                         )
          vs.                            )
                                         )        Exhibit "H"
HMS Host,                                )
                                         )
HERE Local #2,                           )     Response of HERE Local #2
                                         )
                                         )     to inquiries of Plaintiff in
                                         )
                                         )     letter of March 29, 2007
                                         )
                                         )
Does  1 thru 50                          )
                                         )
                  Defendants             )
                                         )
                                         )
                                         )
                                         )
                                         )
                                         )

Apr-16-07   08:09am   From-MIKE CASEY                    4158845040            T-761   P.002/003   F-806

 # UNITE HERE!

Via:   Facsimile # 650.872.1159

April 16, 2007

Linda Pickett

Ms. Pickett:

I have been asked to respond to your fax of March 29, 2007, addressed to Mike Casey and Richard Kuan.

First of all, insurance benefits continue only if you meet the eligibility requirements contained in the Collective Bargaining Agreement (CBA). Should you lose eligibility, the Trust Fund should send you a "COBRA" notice to allow you to pay for continuation of your coverage. Should you have any questions about your eligibility and/or your coverage, please contact the Trust Fund at 650.342.7681. There is no "status quo" regarding your health benefits when you are terminated from employment pending the resolution of any grievance.

If you are receiving Workman's Compensation benefits, they are independent from your eligibility for Health benefits and would only cover your specific injury, not other health issues or dependent (family) coverage.

You mention the "presumption of innocence" standard regarding the disciplinary action taken against you. Unfortunately, your analysis is wrong under the law. Under labor and employment law, an employer may take disciplinary action immediately and then, through the grievance procedure, they must provide evidence of "just cause." Further, this only applies to employers who are unionized and have a "just cause" clause in their CBA. If you work for a non-union employer, the employer may discipline for any reason or no reason at all and you have no recourse or remedy.

You have asked for "accompanying written legal authorities," to explain the above issues. You should consult independent legal counsel for any legal opinions related to these issues. As stated above, you should contact the Trust Fund for information regarding health benefits and/or continuing coverage under COBRA.

Contrary to your assertions regarding the correct process of discipline, the CBA contains no provisions that would require a "pre-termination" hearing to establish just cause or gross misconduct. The employer may take what actions it deems necessary and the employee may request the Union to file a grievance.

| Michael Casey | Mariana Wong | Lamoin Werlein-Jaen |
|---|---|---|
| President | Vice-President | Secretary/Treasurer |

209 Golden Gate Ave., San Francisco, CA, 94102 • phone: 415.864.8770 • fax: 415.864.4158
209 Highland Ave., Burlingame, CA, 94010 • phone: 650.344.6827 • fax: 650.344.9406

Despite your various comments regarding the Union's position and arguments during the grievance process, the Union investigates each grievance raised by a member and makes whatever arguments the evidence supports. The Union has done exactly that in this case.

I am unable to respond to your philosophical or historical arguments regarding the Wagner Act or the CBA. These issues do not have any immediate impact upon your case.

You also mention your concern with what you consider the length of the process. Unfortunately, this is not uncommon in the processing of grievances. I would note that the Union has recently postponed a mediation hearing at your request and it has now been re-scheduled. This is an example of how the grievance process can be extended because everyone's schedule has to be coordinated.

In any event, the Union is processing your grievance and will help you to present your case at the mediation hearing.

Sincerely,

Kim C. Wirshing, Esq.
UNITE HERE Local 2

c:    Richard Kuan
      Mike Casey

opeiu-3-afl-cio(51)mlb

Linda Rovai-Pickett
17 Queen Anne Court
Millbrae, California,
650-873-2188

## IN THE SUPERIOR COURT OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN FRANCISCO

**Linda Rovai-Pickett,**                    )
                                             )
                                             )        CASE No. _____
                                             )
            Plaintiff                        )
                                             )
                                             )
                                             )
      vs.                                    )
                                             )        Exhibit  "I"
                                             )
HMS Host,                                    )
                                             )
HERE Local #2,                               )        Reply of Plaintiff to
                                             )
                                             )        HERE letter of 4-16-2007
                                             )
                                             )        (See Exhibit "H")
                                             )
                                             )
Does  1 thru 50                              )
                                             )
            Defendants                       )
                                             )
                                             )
                                             )
                                             )
                                             )
                                             )
                                             )
─────────────────────────────────────────────)

To:  HERE Local 2; fax 415-864-4158
     Kim Wirshing
     Mike Casey;
     Richard Kuan;  fax 650-344-9406

From: Linda Pickett

In Re:  Letter of April 16th, 2007

Date:  April 16th, 2007


        This is in response to your letter of today in response to my
inquiries of March 29th past.


        First, I express appreciation for the time and effort involved
in responding to my inquiries.


        This said, however, we still have starkly different views about
the law as it applies to not only my case, but in the general
discourse of labor law disputes, especially related to CBA based
issues and procedures.


        Duly noted here is the regrettable lack of citation to any
authority(ies) in support of any claims advanced in your letter. I do
not think it at all reasonable that any court ruling on any of the
issues raised would respond favorably to any ipse dixit assertions

        Reply to letter of April 16th, 2007 page 1 of 7

as to what the law was on a given subject. Furthermore, in the position of *legal* agent or representative of the Union constituency it seems that HERE has the *duty*, most especially where substantive issues of law arise, to respond to such inquiries in a timely and meaningful manner not found in your letter of April 16.

As to such statements that this is the way labor law is, relevant to the issue of the determination of "just cause" in the first instance, we can agree that this is not a matter that likely lends itself to a prophylactic "one size fits all" rule due to the many variations of facts that could arise in a termination situation. I believe, however, that the instant case presents issues crying out for resolution in the courts -- issues that it is not only your *duty* to present, but ones in which favorable rulings (probable outcomes in this case) could set powerful precedents for future such cases and thus provide the meaningful and substantive protection to workers contemplated by the framers of such laws as the *Wagner Act, the National Labor Relations Act, the National Labor Management Act* et al and it was disingenuous on your part to proffer but a summary dismissal of inquiries about these provisions of law which provide the *foundation for the modern labor movement.*

Reply to letter of April 16th, 2007 page 2 of 7

And even if we assume your *unsupported* ruminations about the state of labor law have some validity, it is a *cardinal* principal of the supreme Court of the united States (and by extension, the judicial department of government) that:

"The Court will not anticipate a question of Constitutional law in *advance of the necessity of deciding it*"

### *Ashwander v TVA 297 US 288,341*

What this means is that to challenge a given statute, regulation, or the like what is needed is an injured party with the status and standing to present the challenge. I believe that I qualify here in every particular. *THIS* is the way things are changed under our system of Constitutional government.

My research into this area of law has led me to believe, based on case law, NLRB decisions, et. al., many of which have been brought to your attention in earlier communications, that each and every position set forth in this case is substantive and founded on sound legal principles and will be recognized in court as such.

Reply to letter of April 16th, 2007 page 3 of 7

I simply cannot believe for a minute that in the American system of jurisprudence, being founded in significant part on the dual concepts of *presumption of innocence and opportunity to be heard in one's defense*, that an Employer can, in the first instance, summarily and *without any involvement* by either the Union or the accused worker, declare the existence of not only "just cause" and or "gross misconduct" but, in effect, probable cause of *criminal* activity such as would justify the arrest of such attainted worker.

Granted that the instant situation cannot be fairly categorized as a fully adversarial proceeding such as would be the case in the de facto criminal justice system. Still, the basic fairness of even civil proceedings, most especially where the accused worker's *reputation, career, and livelihood* (including often, as here, the ancillary rights of *minor and/or disabled children*) can be settled in even an administrative proceeding wherein the simple, *unsupported, unproven*, and in the instant case *untimely*, accusation of the company can create, in effect a *rebuttable, if not conclusive, presumption of guilt against the worker* and of which type of presumption there is no apparent provision made in the *California Evidence Code*.

Reply to letter of April 16th, 2007 page 4 of 7

And as to the issue of timeliness of the charges, a matter conspicuous by it's absence in your letter, just as *HERE* was at the "hearing" of December 5th, 2006, the timely and forceful assertion of this claim alone would have perforce settled the matter in my favor and rendered the ongoing administrative efforts moot.

While fully realizing that the CBA is, alas, silent on the issue of timeliness, it seems manifestly clear that a *judicial* consideration of this matter is in order. While not being in possession of conclusive on point authorities at this time, my position is that such a ruling, most particularly if applied in the context of due process of law, let alone judicial process, would be beyond the scope and power of a mediator, let alone arbitrator.

Such a procedure might well come under attack on, among other canons of law, a violation of separation of powers (see e.g. *American Insurance v Canter 1 Peters 511, DeLima v Bidwell 182 US 1, Ex Parte Bakelite 279 US 438*), most especially if I am entitled to judicial redress of grievance (see e.g. *Cohens v Virginia 19 US 264*) as the *Constitution for the united States {1787‑ 1791}* was ordained and established to secure.

Reply to letter of April 16th, 2007 page 5 of 7

Returning to the timeliness matter, of what limits would the CBA admit ?? Would HERE take the position that charges *10 years* old could be validly presented ?? 5 years ?? 5 months ?? 5 weeks ?

In summation, one can but wonder if your pessimistic view of labor law and it's implied *minimal* rights (privileges ??) secured to Union workers is in fact sound, whether such workers would be better off eschewing such Union "benefits" and CBA "protections" altogether and asserting claims for breach of contract and/or the covenant of good faith and fair dealing, which remedy their non-union counterparts have at their disposal (see e.g. *Foley v Interactive Data 47 Cal 3rd 459, Scott v PG&E 11 Cal 4th 454 -- note the discussion in this latter case about the growing acceptance of due process of law as the standard in employee discipline matters; this coupled with the fact that the framers of the statutory schemes comprising the modern labor law movement could hardly have been ignorant of at least the concept of "notice and hearing" (see e.g. Simon v Craft 182 US 216, Grannis v Ordean 234 US 385, Pennoyer v Neff 95 US 714* ) bolsters the assertion that there *IS* a right to a pre-termination hearing. And remember that the supreme Court of the united States has held, however creatively and dubiously, that a *welfare recipient* such a right to benefits as to require a pre-deprivation

hearing as a matter of due process of law (see e.g. *__Goldberg v Kelly 397 US 254__*)  ?? Also bear in mind that the supreme Court has recognized, albeit in dicta, that an "employee's" most valuable asset, even more than the equity in his home, is his *job seniority* (see e.g. *__Volt v Stanford 489 US 468__*) and that such a claimant would have far more in the nature of a substantive property right to protect than the mere *privileged* beneficiary of federal welfare largesse and my arguments set forth become clear and compelling.

Sincerely,

Linda Pickett
17 Queen Anne Court
Millbrae, California
650-873-2188//650-296-6099  cell
650-872-1159   fax

Reply to letter of April 16th, 2007 page 7 of 7

Linda Rovai-Pickett
17 Queen Anne Court
Millbrae, California,
650-873-2188

## IN THE SUPERIOR COURT OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN FRANCISCO

**Linda Rovai-Pickett,**          )
                                  )
                                  )          CASE No. _____
            Plaintiff             )
                                  )
                                  )
                                  )
        vs.                       )
                                  )          Exhibit "J"
HMS Host,                         )
                                  )
HERE Local #2,                    )          Declination to address the
                                  )
        et al.                    )          "merits" of wrongful
                                  )
                                  )          termination
                                  )
                                  )          (served at Mediation
                                  )
        Defendants                )
                                  )          hearing of May 2nd, 2007)
                                  )
_____)

To: Whom it may concern

From: Linda Pickett

In Re: Declination to address the "merits" of wrongful termination

Date: May 2nd, 2007

Please take notice that consistent with the positions I have maintained throughout my wrongful termination by HMS Host Inc., and with a view in mind to seek *judicial* redress for the wrongs committed against me, I cannot, despite an almost irresistible urge, address the alleged merits of the charges against me in order to clear my name.

This is so because I believe that the single charge against me was (1) *time barred* for a lapse of thirty days from date of occurrence to that of termination, (2) that the charge was *NEVER* proven, (3) that I never had a hearing at which I could be heard in my own defense, and (4) that there were neither witness(es) nor evidence, save for a scrap of highly circumstantial and impeachable evidence, against me that did not and could not sustain the company's burden of proof in discharging me.

Wishing to preserve any and all legal rights, especially those secured by the *Constitution for the united States {1787-1791}*, I am thus prevented from active participation in today's proceedings to the extent of addressing the merits as hereinabove mentioned due to the "*Ashwander Doctrine*" of the supreme Court of the united States as set forth in the case of *Ashwander v TVA 297 US 288* at pages 341 et seq. in the concurrence of Justice Brandeis, most particularly where he stated 'Rule 4' that:

"The Court will not pass upon a Constitutional question (and I am advised by trusted counsel that several such questions could fairly arise in the circumstances of the instant case), although *properly* presented by the record, *if there is also present some other ground upon which the case may be disposed of.*"

I am also firmly of the opinion that the *wrong* grievance is being pursued in this 'hearing' and do not wish to waive any rights by taking part in such proceedings (for samples of the dangers of waiving rights see e.g. *York v Texas 137 US 15, Millican v US 600 Fed 2nd 273, Atwater v Lago Vista No. 99-1408* supreme Court of the united States).

Worth noting is another decision of the supreme Court, albeit otherwise regrettable, of *Miranda v Arizona 384 US 436, 491*, where the court stated:

"Where rights secured by the Constitution are involved, there can be no rule making or legislation that would abrogate them."

Sincerely,

/s/

Linda Pickett

Linda Rovai-Pickett
17 Queen Anne Court
Millbrae, California,
650-873-2188

## IN THE SUPERIOR COURT OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| **Linda Rovai-Pickett,** ) | |
| ) | |
| ) | **CASE No.** _____ |
| Plaintiff ) | |
| ) | |
| ) | |
| vs. ) | |
| ) | Exhibit "K" |
| HMS Host, ) | |
| ) | |
| HERE Local #2, ) | Letter of Defendant Host |
| ) | |
| ) | in "support" of discharge |
| ) | |
| ) | of Plaintiff from job dated |
| ) | |
| Does 1 thru 50 ) | December 11th, 2007 |
| ) | |
| Defendants ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |

**HMS HOST**

December 11, 2006

Linda Rovai-Pickett
16 Queen Anne Court
Millbrae, CA 94030

Dear Linda,

This letter will provide you with the results from the investigation conducted by HMS Host in regards to your termination on December 5, 2006 for violating the company's Cash Handling Policy, and the decision made by management.

To review the chain of events, on November 5, 2006, you added a $4 service charge to a customer's credit card transaction in the Buena Vista Café, when the customer had no written in a service charge on the charge slip. The discovery was made after the customer complained to HMSHost Corporation on November 16, 2006. During our meeting on December 5, 2006, I asked you how you close out a credit card transaction, and put in the service charge, and you stated to me that you put in the charge listed on the credit card slip signed by the customer.

Your actions violated our Cash Handling Policy. It is the decision of the management of HMS Host to discontinue our employment relationship with you effective December 5, 2006, due to your failure to follow the correct Cash Handling procedures you agreed to upon your hire.

You have already received any monies owed to you: regular wages, overtime wages, sick pay and vacation pay. Should you find any discrepancies, please feel free to contact me at (408) 294-5108. In addition, you are able to apply for unemployment benefits. Information on how to file a claim for unemployment benefits is also included. Linda, we at HMS Host wish you the best of luck in your future career endeavors.

Regards,

Mary L. Mork, SPHR
Senior Field Human Resources Manager
San Jose Region (SJC, SFO, FAT, SLC, BOI)

Cc:    Cecilia Chow, UNITE HERE Local 2
       Richard Kuan, UNITE HERE Local 2

Linda Rovai-Pickett
17 Queen Anne Court
Millbrae, California,
650-873-2188

# IN THE SUPERIOR COURT OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| **Linda Rovai-Pickett,** | ) |
| | ) |
| | )    **CASE No.** _____ |
| Plaintiff | ) |
| | ) |
| | ) |
| vs. | ) |
| | )    Exhibit "L" |
| HMS Host, | ) |
| | ) |
| HERE Local #2, | )    Decision of Administrative |
| | ) |
| | )    Law Judge of California |
| | ) |
| | )    Unemployment Appeals |
| | ) |
| Does 1 thru 50 | )    Board finding absence of |
| | ) |
| Defendants | )    "good cause" for discharge |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |



SAN FRANCISCO OFFICE OF APPEALS
185 Berry St. Lobby 5, Ste 200
SAN FRANCISCO CA 94107

(415) 357-3801

| | |
|---|---|
| LINDA A ROVAI-PICKETT<br>SSN: 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<br>Claimant-Appellant | Case No. 2003023<br><br>Issue(s): 1256<br><br>Date Appeal Filed: 12/31/2006<br><br><br>EDD: 0210  BYB: 12/03/2006 |

**Date and Place of Hearing(s):**
(1)  01/29/2007   San Bruno

**Parties Appearing:**
Claimant

# DECISION

The decision in the above-captioned case appears on the following page(s).

The decision is final unless appealed within 20 calendar days from the date of mailing shown below. See the attached "Notice to Parties" for further information on how to file an appeal. If you are entitled to benefits and have a question regarding the payment of benefits, call EDD at 1-800-300-5616.

*Robert S. Marder*

**Robert S. Marder**, Administrative Law Judge

FEB  7 2007

Date Mailed:

Case No:    2003023                          **San Francisco Office of Appeals**
CLT/PET:    Linda A Rovai-Pickett           ALJ:   Robert S. Marder
Parties Appearing:  Claimant
Parties Appearing by Written Statement:  None

## ISSUE STATEMENT

The claimant appealed from a determination disqualifying the claimant for
unemployment benefits under Unemployment Insurance Code section 1256. The
issue in this case is whether the claimant was discharged for misconduct
connected with the most recent work.

## STATEMENT OF FACTS

The claimant was employed by her last corporate employer as a food server and
she had been so employed by the corporate entity for approximately 26 years.
The claimant was employed at her last restaurant location on assignment from
her long-term corporate employer for approximately two and a half months. Her
wage rate was $7.70 an hour plus tips. The claimant's last day worked was
December 5, 2006, and her employment ended under the following
circumstances.

The employer discharged the claimant for allegedly adding a $4 service charge
for a tip to a customer's credit card transaction without the customer's
authorization or permission.

The employer presented no specific details or documentary evidence of the
above-described final incident to the department.

At the hearing, the claimant herself presented documentary evidence in the form
of the credit charge slip copy reflecting a $12.98 food and beverage charge plus
sales tax with a line drawn through the tip entry, indicating that the customer
elected not to include any tip on his credit card charge. However, the employer's
restaurant electronic journal of the customer transaction in question reflects a tip
charge of $4 which when added to the food, beverage and sales tax subtotal
resulted in a $16.98 total charge to the customer..

The claimant adamantly denied adding a $4 tip charge to the customer credit
card slip. The claimant with a 26 year work history as a food server with the
employer restaurant corporation further asserted that her union is in the process
of grieving her discharge, the claimant having no record of any prior disciplinary
action taken against her by the employer. The claimant explained the $4 tip
discrepancy between the electronic journal and the customer's charge slip as
possibly being attributable to default in the employer's micro-systems or the

2003023                                    2

inadvertent swipe of o of the four microprocessor m es by another food server which somehow got recorded as a tip entered by the claimant when, in fact the claimant had nothing to do with the $4 tip entry in question. The claimant presented further evidence indicating that the best evidence for the transaction in question and the claimant's knowing involvement if any, would have been a previously employer generated record known as "a 22" which is a one page computer printout of all of the transactions on her shift on the day in question on November 5, 2006, when she recalled working a 14 hour work shift.

## REASONS FOR DECISION

An individual is disqualified for benefits if he or she has been discharged for misconduct connected with his or her most recent work. (Unemployment Insurance Code, section 1256.)

"Misconduct connected with the work" is a substantial breach by the claimant of an important duty or obligation owed the employer, wilful or wanton in character, and tending to injure the employer. (Precedent Decision P-B-3, citing *Maywood Glass Co. v. Stewart* (1959) 170 Cal.App.2d 719.)

On the other hand, mere inefficiency, unsatisfactory conduct, poor performance as the result of inability or incapacity, isolated instances of ordinary negligence or inadvertence, or good faith errors in judgment or discretion are not misconduct.

The employer has the burden of proving misconduct. (*Prescod v. California Unemployment Insurance Appeals Board* (1976) 57 Cal.App.3d 29.)

There must be a direct and proximate causal relationship between specific acts of misconduct and a discharge if a disqualification is to be assessed under section 1256 of the code. (Precedent Decision P-B-192.)

If weaker and less satisfactory evidence is offered when it was within the power of the party to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust. (Evidence Code, section 412.)

Hearsay evidence is admissible for whatever weight the administrative law judge deems it to be worth. (Precedent Decision P-B-235.)

In determining the credibility of a witness, as provided in section 780 of the Evidence Code, the administrative law judge may consider any matter that has any tendency in reason to prove or disprove the truthfulness of the testimony at the hearing, including:

    a.   the demeanor of the witness while testifying and the
        manner in which the witness testifies.

2003023                                    3

b. the charac.... of the testimony of the witness.

c. the extent of the capacity of the witness to perceive, to recollect, or to communicate any matter about which the witness testifies.

d. the extent of the opportunity of the witness to perceive any matter about which the witness testifies.

In the present case, the employer has failed to meet its burden of proving by satisfactory evidence a direct and causal relationship between a specific act of misconduct and the claimant's discharge as is required under Prescod and Precedent Decision P-B-192, cited above. The employer presented no documentary evidence to the department in support of its serious charge that the claimant knowingly falsified the customer's credit card charge slip to reflect a $4 tip without the customer's authorization or permission. The claimant herself presented the apparent documentary evidence with a credible alternative and innocent explanation or narrative as to how the $4 tip may have gotten into the employer's electronic journal involving a micro-system problem or glitch. Given the claimant's 26 year record of employment with the corporate employer entity in question and the lack of any record of prior disciplinary action taken against her as well as the absence of probative or more compelling employer evidence, it is lastly concluded that the claimant was discharged from her last employment for reasons other than misconduct as defined in Maywood as cited above, thereby not disqualifying her from unemployment benefits pursuant to section 1256 of the code.

## DECISION

The department's determination is reversed. The claimant is not disqualified from receiving unemployment benefits under section 1256 of the code, provided she is otherwise eligible. Benefits are payable.

SCRSU:ga:dw

2003023                          4

# EXHIBIT B

SUM-100

## SUMMONS
### (CITATION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*  HMS Host Inc.;

Hotel Employees and Restaurant Employees
Local # 2;

Does 1 thru 50

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

### Linda Pickett

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* | **San Francisco Superior Court** **400 McAllister Street** **San Francisco, California 94102** |

CASE NUMBER:
*(Número del Caso):*

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Linda Pickett
17 Queen Anne Court
Millbrae, Ca. 94030
650-873-2188

| | | | |
|---|---|---|---|
| DATE: *(Fecha)* | | Clerk, by _____ , Deputy *(Secretario)* *(Adjunto)* | |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. [ ] as an individual defendant.
2. [X] as the person sued under the fictitious name of (specify):
   HERE LOCAL #2
3. [X] on behalf of (specify):

   under: [ ] CCP 416.10 (corporation)     [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
   [X] other (specify): INDIVIDUAL

4. [ ] by personal delivery on (date): 2-22-08

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

American LegalNet, Inc.
www.USCourtForms.com

# EXHIBIT C

FEB 28 2008

FEB 28 2008

SUM-100

## SUMMONS
### (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

NOTICE TO DEFENDANT:
(AVISO AL DEMANDADO):     HMS Host Inc.;
Hotel Employees and Restaurant Employees
Local # 2;
Does 1 thru 50
YOU ARE BEING SUED BY PLAINTIFF:
(LO ESTÁ DEMANDANDO EL DEMANDANTE):

## Linda Pickett

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is:<br>(El nombre y dirección de la corte es): | CASE NUMBER:<br>(Número del Caso): CGC07-469683 |
|---|---|
| San Francisco Superior Court<br>400 McAllister Street<br>San Francisco, California 94102 | |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):

Linda Pickett
17 Queen Anne Court
Millbrae, Ca. 94030
650-873-2188

| DATE:<br>(Fecha) | Clerk, by_____, Deputy<br>(Secretario)                         (Adjunto) |
|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

NOTICE TO THE PERSON SERVED: You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☒ as the person sued under the fictitious name of (specify):
     HMS HOST INC.

3. ☒ on behalf of (specify):

   under: ☐ CCP 416.10 (corporation)           ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☒ other (specify): INDIVIDUAL
4. ☐ by personal delivery on (date):     2-22-08

Received

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. January 1, 2004] | SUMMONS | Code of Civil Procedure §§ 412.20, 465 |
|---|---|---|

FEB 28 2008

American LegalNet, Inc.
www.USCourtForms.com

HMSHost Compliance Group

# EXHIBIT D

1   MATTHEW D. ROSS, ESQ. (SB #084703)
    mross@leonardcarder.com
2   JENNIFER L. MARSTON, ESQ. (SB#250018)
    jmarston@leonardcarder.com
3   LEONARD CARDER, LLP
    1330 Broadway, Suite 1450
4   Oakland, CA 94612
    Telephone: (510) 272-0169
5   Facsimile: (510) 272-0174

6   Attorneys for Defendant
    UNITE HERE! Local 2
7
    KATHERINE C. HUIBONHOA (SB# 207648)
8   katherinehuibonhoa@paulhastings.com
    JOHN C. POST (SB# 233236)
9   johnpost@paulhastings.com
    PAUL, HASTINGS, JANOFSKY & WALKER LLP
10  55 Second Street
    Twenty-Fourth Floor
11  San Francisco, CA 94105-3441
    Telephone: (415) 856-7000
12  Facsimile: (415) 856-7100

13  Attorneys for Defendant
    Bay Area Restaurant Group
14
                SUPERIOR COURT OF THE STATE OF CALIFORNIA
15
                        COUNTY OF SAN FRANCISCO
16

17
    LINDA ROVAI-PICKETT,                    CASE NO. _____
18
                 Plaintiff,                 [Superior Court of the State of California for the
19                                           County of San Francisco, Case No. CGC 07
          vs.                                469683
20
    HMS HOST, INC., HOTEL EMPLOYEES         **NOTICE TO ADVERSE PARTY OF**
21  & RESTAURANT EMPLOYEES LOCAL            **REMOVAL OF CIVIL ACTION TO**
    #2, DOES 1 THRU 50,                     **FEDERAL COURT**
22
23               Defendants.

24
25
26
27
28

    LEGAL_US_W # 58462787.1                         NOTICE OF REMOVAL OF CIVIL ACTION

1    TO PLAINTIFF LINDA ROVAI-PICKETT:

2

3            PLEASE TAKE NOTICE that a Notice of Removal of this action was filed in the

4    United States District Court for the Northern District of California, on March 26, 2008.  Attached

5    is a copy of the Notice of Removal, the filing of which effects the removal of this action to the

6    United States District Court.

7

8    DATED:  March 26, 2008            LEONARD CARDER, LLP

9

10                                By: _____

11                                        MATTHEW D. ROSS

12                                Attorneys for Defendant
                                    UNITE HERE! Local 2

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT E

1   MATTHEW D. ROSS, ESQ. (SB# 084703)
    mross@leonardcarder.com
2   JENNIFER L. MARSTON, ESQ. (SB# 250018)
    jmarston@leonardcarder.com
3   LEONARD CARDER, LLP
    1330 Broadway, Suite 1450
4   Oakland, CA 94612
    Telephone: (510) 272-0169
5   Facsimile: (510) 272-0174

6   Attorneys for Defendant
    UNITE HERE! Local 2
7
    KATHERINE C. HUIBONHOA (SB# 207648)
8   katherinehuibonhoa@paulhastings.com
    JOHN C. POST (SB# 233236)
9   johnpost@paulhastings.com
    PAUL, HASTINGS, JANOFSKY & WALKER LLP
10  55 Second Street
    Twenty-Fourth Floor
11  San Francisco, CA 94105-3441
    Telephone: (415) 856-7000
12  Facsimile: (415) 856-7100

13  Attorneys for Defendant
    Bay Area Restaurant Group
14
15              SUPERIOR COURT OF THE STATE OF CALIFORNIA

16                        COUNTY OF SAN FRANCISCO

17

18  LINDA ROVAI-PICKETT,                    CASE NO.   CGC 07 469683

19              Plaintiff,                  **NOTICE TO SUPERIOR COURT OF
                                            REMOVAL OF CIVIL ACTION TO
19       vs.                                UNITED STATES DISTRICT COURT FOR
                                            THE NORTHERN DISTRICT OF
20                                          CALIFORNIA**
    HMS HOST, INC., HOTEL EMPLOYEES
21  & RESTAURANT EMPLOYEES LOCAL
    #2, DOES 1 THRU 50,
22
            Defendants.
23

24

25

26

27

28

                                            NOTICE TO STATE COURT CLERK OF
                                                                   REMOVAL
    LEGAL_US_W # 58462787.1

1   TO THE CLERK OF THE SUPERIOR COURT FOR THE COUNTY OF SAN FRANCISCO:

2          Attached hereto as Exhibit A is a correct copy of the Notice to Adverse Party of

3   Removal of Civil Action to the United States District Court, the original of which was filed with

4   the United States District Court for the Northern District of California on March 26, 2008. Said

5   Notice was also served on Plaintiff by U.S. Mail on March 26, 2008.

6          The filing of said Notice of Removal effects the removal of the above-entitled action from

7   this Court.

8   DATED: March 26, 2008            MATTHEW D. ROSS
                                     JENNIFER L. MARSTON
9                                    LEONARD CARDER, LLP

10

11                                   By:_____

12                                        MATTHEW D. ROSS

13                                   Attorneys for Defendant
                                     UNITE HERE! LOCAL 2

14

15  DATED: March 26, 2008            KATHERINE C. HUIBONHOA
                                     JOHN C. POST
16                                   PAUL, HASTINGS, JANOFSKY & WALKER LLP

17

18                                   By:_____
                                          JOHN C. POST

19                                   Attorneys for Defendant
20                                   BAY AREA RESTAURANT GROUP

21

22

23

24

25

26

27

28

LEGAL_US_W # 58462787.1

                                    -1-        NOTICE OF REMOVAL OF CIVIL ACTION
                                                        TO FEDERAL COURT