MATTHEW D. ROSS, ESQ. (CSB No. 084703)
mross@leonardcarder.com
LEONARD CARDER, LLP
1330 Broadway, Suite 1450
Oakland, CA 94612
Telephone: (510) 272-0169
Facsimile: (510) 272-0174

Attorneys for Defendant
UNITE HERE! Local 2

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA ROVAI-PICKETT, | CASE NO. C08-01625-MMC |
| Plaintiff, | **UNITE HERE! LOCAL 2 ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES** |
| vs. | |
| HMS HOST, INC., HOTEL EMPLOYEES & RESTAURANT EMPLOYEES LOCAL #2, DOES 1 THRU 50, | |
| Defendants. | |

Defendant UNITE HERE! LOCAL 2 ("Local 2") (erroneously identified by plaintiff as "Hotel Employees & Restaurant Employees Local #2) answers plaintiff's complaint (first amended), which is attached as Exhibit "A" to this Answer, with the paragraphs numbered by UNITE-HERE! Local 2 counsel, for the court's convenience, as follows:

1.       Answering paragraph 1, Local 2 admits plaintiff is a citizen of California. Except as so admitted, paragraph 1 is denied.

2.       Answering paragraph 2, Local 2 admits that defendant Bay Area Restaurant Group (erroneously identified by plaintiff as "HMS Host Inc.") does business in California. Local 2 admits that Bay Area Restaurant Group and Local 2 are parties to a collective bargaining relationship. Local 2 admits that plaintiff is a member of Local 2. Except as so admitted,

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 • FAX: (510) 272-0174

1    paragraph 2 is denied.

2    3.    Answering paragraph 3, Local 2 is without sufficient knowledge or information to form a

3    belief as the truth of the allegations contained in said paragraph, and on that basis denies each and

4    every allegation contained therein.

5

6    4.    Answering paragraph 4, Local 2 admits that plaintiff originally filed her complaint in

7    Superior Court of the State of California for the County of San Francisco, which is a court of

8    general jurisdiction.  Except as so admitted, paragraph 4 is denied.

9    5.    Answering paragraph 5, Local 2 admits plaintiffs' claims arise under Section 301 of the

10   Labor Management Relations Act, 29 U.S.C. § 185, and that, under 28 U.S.C. § 1331, the state

11   court and this Court have jurisdiction over plaintiffs' claims.

12   6.    Answering paragraph 6, Local 2 admits that section 36(l) of the collective bargaining

13   agreement between defendants provides as stated in plaintiff's complaint, except Local 2 denies

14   that the collective bargaining agreement states "relied under the grievance procedure."  Except as

15   so admitted, paragraph 6 is denied.

16

17   7.    Answering paragraph 7, Local 2 admits that section 36(l) of the defendants' collective

18   bargaining agreement speaks for itself.  Local 2 is without sufficient knowledge or information to

19   form a belief as to the truth of the remaining allegations contained in paragraph 7, and on that

20   basis denies each and every remaining allegation contained therein.

21

22   8.    Answering paragraph 8, Local 2 admits that LMRA § 301 provides courts with

23   jurisdiction over suits for enforcement of collective bargaining agreements.  Local 2 is without

24   sufficient knowledge or information to form a belief as to the truth of the remaining allegations

25   contained in paragraph 8, and on that basis denies each and every remaining allegation contained

26   therein.

27   9.    Answering paragraph 9, Local 2 admits that on December 5, 2006, co-defendant Bay Area

28

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 • FAX: (510) 272-0174

1  Restaurant Group terminated plaintiff's employment after finding that she violated their "Cash

2  Handling Policy" because she added an unauthorized four dollar tip to a customer's credit card

3  transaction. Except as so admitted, paragraph 9 is denied.

4

5  10.    The allegations in paragraphs 10-11 are denied.

6  11.    Answering paragraphs 12-14, Local 2 is without sufficient knowledge or information to

7  form a belief as to the truth of the allegations contained in said paragraph, and on that basis,

8  denies each and every allegation contained therein.

9  12.    Answering paragraph 15, Local 2 admits that plaintiff has expressed that she has been

10 unable to work since her termination. Except as so admitted, paragraph 15 is denied.

11 13.    Answering paragraph 16-25, Local 2 is without sufficient knowledge or information to

12 form a belief as to the truth of the allegations contained in said paragraphs, and on that basis,

13 denies each and every allegation contained therein.

14 14.    Answering paragraph 26, Local 2 admits that it owes a duty of fair representation to

15 plaintiff. Except as so admitted, paragraph 26 is denied.

16

17 15.    Answering paragraph 27, Local 2 admits that a meeting was held regarding the

18 termination of plaintiff's employment based upon her violation of Bay Area Restaurant Group's

19 "Cash Handling Policy." Local 2 further admits that, in addition to plaintiff, Local 2 business

20 agent Richard Kuan and a Bay Area Restaurant Group representative were present at the meeting.

21 Except as so admitted, paragraph 27 is denied.

22

23 16.    The allegations in paragraphs 28-32 are denied.

24 17.    Answering paragraph 33, Local 2 admits that section 35 of the defendants' collective

25 bargaining agreement provides for summary termination upon a showing of sufficient cause to

26 conclude the employee stole from the employer or its customers. Except as so admitted,

27 paragraph 33 is denied.

28

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 • FAX: (510) 272-0174

18.    The allegations in paragraphs 34 are denied.

19.    Answering paragraph 35, Local 2 admits it filed a grievance on December 12, 2006, contending plaintiff's termination was not supported by just cause. Except as so admitted, paragraph 35 is denied.

20.    Answering paragraph 36, Local 2 admits that plaintiff filed for unemployment benefits. Local 2 is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in paragraph 36, and on that basis, denies each and every other allegation contained therein.

21.    Answering paragraph 37-38, Local 2 is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in said paragraphs, and on that basis, denies each and every allegation contained therein.

22.    Answering paragraph 39, Local 2 admits that plaintiff was employed as a server for co-defendant Bay Area Restaurant Group. Local 2 further admits that, on December 5, 2006, Bay Area Restaurant Group terminated plaintiff's employment after finding that she violated their "Cash Handling Policy" because she added an unauthorized four dollar tip to a customer's credit card transaction. Except as so admitted, paragraph 39 is denied.

23.    Answering paragraph 40, Local 2 is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in paragraph 40, and on that basis, denies each and every allegation contained therein.

24.    The allegations in paragraphs 41-43 are denied.

25.    Answering paragraph 44, Local 2 admits that on November 5, 2006, plaintiff added an unauthorized four dollar tip to a customer's credit card slip transaction, and this is the incident that led to plaintiff's termination. Except as so admitted, paragraph 44 is denied.

26.    Answering paragraph 45, Local 2 is without sufficient knowledge or information to form a

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 • FAX: (510) 272-0174

1  belief as to the truth of the allegations contained in said paragraph, and on that basis, denies each

2  and every allegation contained therein.

3  27.    The allegations in paragraph 46 are denied.

4
5  28.    Answering paragraph 47, Local 2 admits that a meeting was held on December 5, 2006,

6  regarding the termination of plaintiff's employment based upon her violation of co-defendant Bay

7  Area Restaurant Group's "Cash Handling Policy." Local 2 further admits that, in addition to

8  plaintiff, Local 2 business agent Richard Kuan and a Bay Area Restaurant Group representative

9  were present at the meeting. Except as so admitted, paragraph 47 is denied.

10  29.    The allegations in paragraph 48 are denied.

11  30.    Answering paragraph 49-56, Local 2 is without sufficient knowledge or information to

12  form a belief as to the truth of the allegations contained in said paragraphs, and on that basis,

13  denies each and every allegation contained therein.

14
15  31.    Answering paragraph 57, Local 2 admits that Local 2 business agent Richard Kuan met

16  with plaintiff and William Henshall to prepare for the Step I meeting with Bay Area Restaurant

17  Group regarding the grievance filed over plaintiff's termination. Local 2 further admits that the

18  Step I meeting was held between plaintiff, Local 2, and co-defendant Bay Area Restaurant Group,

19  on January 22, 2007, and no resolution was reached about the grievance. Except as so admitted,

20  paragraph 57 is denied.

21
22  32.    The allegations in paragraph 58 are denied.

23  33.    Answering paragraph 59-60, Local 2 is without sufficient knowledge or information to

24  form a belief as to the truth of the allegations contained in said paragraphs, and on that basis,

25  denies each and every allegation contained therein.

26  34.    Answering paragraph 61, Local 2 admits that Local 2 business agent Richard Kuan met

27  with plaintiff and William Henshall to prepare for the Step I meeting with Bay Area Restaurant
28

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 ♦ FAX: (510) 272-0174

1    Group regarding the grievance filed over plaintiff's termination. Except as so admitted,

2    paragraph 61 is denied.

3    35.    The allegations in paragraphs 62-64 are denied.

4
5    36.    Answering paragraph 65, Local 2 admits that, at the Step I held pursuant to the collective

6    bargaining agreement's grievance procedure, Bay Area Restaurant Group produced evidence of

7    other eight to ten other credit card transactions entered by plaintiff in November 2006, in which

8    plaintiff entered a service charge amount in excess of the amount authorized by the customer.

9    Except as so admitted, paragraph 65 is denied.

10    37.    The allegations in paragraphs 66-67 are denied.

11
12    38.    Answering paragraph 68, Local 2 admits that Kevin O'Connor, a representative of Local

13    2, met with plaintiff and William Henshall regarding the grievance over plaintiff's termination.

14    Except as so admitted, the allegations in paragraph 68 are denied.

15    39.    The allegations in paragraph 69 are denied.

16    40.    Answering paragraph 70, Local 2 admits that the mediation between defendants

17    concerning the plaintiff's termination grievance was originally scheduled for March 14, 2007.

18    Except as so admitted, paragraph 70 is denied.

19
20    41.    Answering paragraph 71, Local 2 admits that plaintiff sent a letter to its president Michael

21    Casey and Richard Kuan, dated March 2, 2007. Except as so admitted, paragraph 71 is denied.

22    42.    Answering paragraph 72, Local 2 admits the mediation scheduled for March 14, 2007 was

23    postponed, at Bay Area Restaurant Group's request, to March 27, 2007. Local 2 further admits

24    that, at Bay Area Restaurant Group's request, the mediation was again postponed until April 10,

25    2007. Except as so admitted, paragraph 72 is denied.

26    43.    Answering paragraph 73, Local 2 admits the mediation was postponed again at Bay Area

27    Restaurant Group's request until April 10, 2007.

28

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 ♦ FAX: (510) 272-0174

44.    Answering paragraph 74, Local 2 admits that plaintiff sent a letter to President Casey and Richard Kuan, dated March 29, 2007. Local 2 further admits that in this letter, plaintiff informed Local 2 that she was receiving worker's compensation benefits and that she was unavailable on April 10, 2007, the date on which the mediation over her grievance was rescheduled. Except as so admitted, paragraph 74 is denied.

45.    The allegations in paragraphs 75-77 are denied.

46.    Answering paragraph 78, Local 2 admits that in a letter dated April 16, 2007, Kim Wirshing, Local 2's grievance director, responded to plaintiff's March 29, 2007 letter to Local 2. Except as so admitted, paragraph 78 is denied.

47.    The allegations in paragraph 79 are denied.

48.    Answering paragraphs 80-83, Local 2 admits only that plaintiff has quoted portions of Wirshing's letter to plaintiff. Except as so admitted, the remaining and additional allegations of the paragraphs are denied.

49.    Answering paragraph 84, Local 2 admits that plaintiff sent a letter, dated April 16, 2007, to Wirshing, Casey and Kuan. Except as so admitted, paragraph 84 is denied.

50.    The allegations in paragraphs 85-86 are denied.

51.    Answering paragraph 87, Local 2 admits that the parties held a mediation concerning the grievance filed over plaintiff's termination on May 2, 2007. Except as so admitted, paragraph 87 is denied.

52.    Answering paragraph 88, Local 2 admits that, at the mediation, the plaintiff provided defendants, and the mediator, a document entitled "Declination to address the 'merits' of wrongful termination." Except as so admitted, paragraph 88 is denied.

53.    The allegations in paragraph 89 are denied.

54.    Answering paragraph 90, Local 2 admits that, at the mediation, the Federal Mediation and

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 • FAX: (510) 272-0174

1   Conciliation Services mediator, David Weinberg told plaintiff and Local 2 that, in his experience,

2   the evidence of the eight to ten other credit card transactions would establish a pattern and

3   practice of criminal misconduct, i.e. theft, at the arbitration. Except as so admitted, the

4   allegations in paragraph 90 are denied.

5

6   55.    The allegations in paragraphs 91-92 are denied.

7   56.    Answering paragraph 93, Local 2 admits that, at the mediation, the shop steward Jeanine

8   Hessing, did tell plaintiff that she should "fire" William Henshall. Except as so admitted,

9   paragraph 93 is denied.

10  57.    Answering paragraph 94, Local 2 admits that it did recommend that, if Bay Area

11  Restaurant Group offered to reinstate plaintiff without backpay, that plaintiff should accept that

12  offer. Except as so admitted, paragraph 94 is denied.

13  58.    The allegations in paragraph 95 are denied.

14

15  59.    Answering paragraph 96, Local 2 admits that an arbitration between defendants

16  concerning plaintiff's termination grievance was scheduled for February 25, 2008, but it was

17  cancelled because Bay Area Restaurant Group unilaterally withdrew plaintiff's termination on

18  February 22, 2008. Except as so admitted, paragraph 96 is denied.

19  60.    The allegations in paragraphs 97-100 are denied.

20

21  61.    Answering paragraph 101, Local 2 admits that plaintiff is receiving worker's

22  compensation benefits. Except as so admitted, paragraph 101 is denied.

23  62.    Answering paragraphs 102-103, Local 2 is without sufficient knowledge or information to

24  form a belief as to the truth of the allegations contained in said paragraphs, and on that basis,

25  denies each and every allegation contained therein.

26  63.    The allegations in paragraphs 104-107 are denied.

27

28  64.    Answering paragraph 108, Local 2 admits that the defendants' collective bargaining

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 ♦ FAX: (510) 272-0174

DEFENDANT LOCAL 2'S ANSWER                8
[USDC Case No. C08-01625-MMC]

1   agreement provides that plaintiff cannot be terminated without just cause.  Except as so admitted,

2   paragraph 108 is denied.

3   65.    The allegations in paragraph 109-111 are denied.

4   66.    Answering paragraphs 112-114, Local 2 is without sufficient knowledge or information to

5   
6   form a belief as to the truth of the allegations contained in said paragraphs, and on that basis,

7   denies each and every allegation contained therein.

8                            **FIRST AFFIRMATIVE DEFENSE**

9                                   (Untimeliness)

10  67.    Plaintiff's claims are untimely and have not been commenced within the applicable statute

11  of limitations period.

12                           **SECOND AFFIRMATIVE DEFENSE**

13  
14           (Failure to Exhaust Administrative/Contractual Prerequisites)

15  68.    Plaintiff has failed to satisfy all applicable administrative/contractual prerequisites before

16  bringing this suit.

17                            **THIRD AFFIRMATIVE DEFENSE**

18                                   (Mitigation)

19  69.    Plaintiff has failed to exercise reasonable care and diligence to mitigate her alleged

20  damages, if any, including procuring other employment.  In the event that plaintiff establishes any

21  claims for damages, defendant Local 2 is entitled to an offset in the amount that plaintiff could

22  
23  have earned in the exercise of reasonable diligence, and further by the amount of any and all

24  interim earnings from the date of plaintiff's termination to the date of trial, including but not

25  limited to any and all Worker's Compensation benefits paid to plaintiff and any and all

26  unemployment compensation benefits paid to plaintiff.

27  
28  

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1650
OAKLAND, CA 94612
TEL: (510) 272-0169 • FAX: (510) 272-0174

DEFENDANT LOCAL 2'S ANSWER                    9
[USDC Case No. C08-01625-MMC]

**FOURTH AFFIRMATIVE DEFENSE**

(Plaintiff's Worker's Compensation Injury)

70.    On February 22, 2008, Bay Area Restaurant Group unilaterally withdrew plaintiff's

December 5, 2006 termination.  Since December 5, 2006 until present, Local 2 believes that

plaintiff has been receiving Worker's Compensation benefits.  Thus, plaintiff was not eligible to

work during the period in which plaintiff claims she was damaged, and she has not incurred any

damages.

71.    In the event plaintiff establishes any claims for damages, defendant Local 2 is entitled to

an offset by the amount of any and all interim earnings from the date of plaintiff's termination to

the date of trial, including but not limited to any and all Worker's Compensation benefits paid to

plaintiff.

**FIFTH AFFIRMATIVE DEFENSE**

(Good Faith Efforts)

72.    At all times, defendant Local 2 made good faith efforts to comply with state and federal

laws regarding due process under the defendants' contracts, and good faith and fair dealing.

**SIXTH AFFIRMATIVE DEFENSE**

(Same Decision Protected Conduct)

73.    Plaintiff's claims for damages, fees, and costs are barred in whole or in part because

defendant Local 2 would have made the same decisions regarding plaintiff in the absence of any

alleged impermissible motivating factor or procedure, the presence of which are denied.

**SEVENTH AFFIRMATIVE DEFENSE**

(DFR Action Against Local 2 Barred Because Employer
Had "Just Cause" To Terminate the Plaintiff)

74.    Notwithstanding the Union's vigorous advocacy on behalf of the plaintiff in the grievance

procedure, the plaintiff's own deliberate, willful and/or negligent conduct, including stealing from

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 ♦ FAX: (510) 272-0174

1  customers of Bay Area Restaurant Group, supplied "just cause" for her termination, thereby

2  precluding the bringing of this action against Local 2, and/or precluding a remedy against Local

3  2, even if it breached the duty of fair representation.

### EIGHTH AFFIRMATIVE DEFENSE

(Damages Award Against Local 2 Barred Because
Employer Had "Just Cause" To Terminate the Plaintiff)

75.    Notwithstanding the Union's vigorous advocacy on behalf of the plaintiff in the grievance

procedure, the plaintiff's own deliberate, willful and/or negligent conduct, including stealing from

customers of Bay Area Restaurant Group, supplied "just cause" for her termination, thereby

proximately causing some or all of her damages and injuries alleged in the complaint.

### NINTH AFFIRMATIVE DEFENSE

(Unclean Hands)

76.    Over the course of processing her grievance, plaintiff has failed to disclose material facts.

To the extent, if any, that plaintiff has suffered any emotional distress or mental anguish,

plaintiff's own conduct and negligent acts and omissions proximately caused her emotional

distress and/or mental anguish.

### TENTH AFFIRMATIVE DEFENSE

(Equitable Defenses)

77.    Plaintiff's claims are barred, in whole or in part, by the equitable doctrines of waiver,

estoppel, laches, and unclean hands because of plaintiff's own conduct, acts or omissions.

### ELEVENTH AFFIRMATIVE DEFENSE

(Reasonableness)

78.    Plaintiff's claims are barred in whole or in part because defendant Local 2's actions and

omissions fell within the wide range of reasonableness afforded a union under the federal duty of

fair representation.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 • FAX: (510) 272-0174

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL. (510) 272-0169 • FAX. (510) 272-0174

## TWELFTH AFFIRMATIVE DEFENSE

(Failure to State a Claim)

79.    Plaintiff has failed to state a claim for relief.

## THIRTEENTH AFFIRMATIVE DEFENSE

(Frivolous Claims)

80.    Defendant Local 2 alleges that a reasonable opportunity for investigation and discovery will reveal and, on that basis, alleges that plaintiff's claims are unreasonable, and/or were filed in bad faith and/or are frivolous and, for that reason, justify an award of attorney fees and costs against plaintiff.

## FOURTEENTH AFFIRMATIVE DEFENSE

(Lack of Agency)

81.    Plaintiff's claims against defendant Local 2 are precluded by the fact that all conduct and decisions alleged in the complaint were undertaken by parties for whom defendant Local 2 is not responsible.

## FIFTEENTH AFFIRMATIVE DEFENSE

(Punitive Damages)

82.    An award of punitive damages would be an unconstitutional denial of defendant Local 2's right to due process and/or equal protection under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 7 of the California Constitution.

## SIXTEENTH AFFIRMATIVE DEFENSE

(Preemption of Pain and Suffering Damages)

83.    The Labor Management Relations Act and other federal labor law preempt plaintiff's request for damages for damages on account of Plaintiff's alleged "pain and suffering."

/ / /

1

### SEVENTEENTH AFFIRMATIVE DEFENSE

2

(Additional Affirmative Defenses)

3

84.    Defendant Local 2 presently has insufficient knowledge and/or information on which to

4

form a belief as to whether it may have additional, as yet unstated, affirmative defenses available.

5

Defendant Local 2 reserves the right to assert additional defenses if discovery indicates that such

6

additional affirmative defenses would be appropriate.

7

8

### PRAYER FOR RELIEF

9

WHEREFORE, defendant Local 2 prays as follows:

10

1.    That plaintiff take nothing; herein;

11

2.    That all of plaintiff's claims against Local 2 be dismissed with prejudice;

12

3.    That judgment be entered in defendant Local 2's favor;

13

14

4.    That defendant Local 2 be awarded its costs, expert witness fees, and reasonable

15

attorney fees;

16

5.    For such other relief as the Court deems proper.

17

Dated this 2nd day of April 2008.

18

LEONARD CARDER, LLP

19

20

s/ Matthew D. Ross
Matthew D. Ross  (CSB No. 084703)

21

Attorney for Defendant UNITE HERE! Local

22

23

24

25

26

27

28

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 ♦ FAX: (510) 272-0174

# EXHIBIT A

Linda Rovai-Pickett
17 Queen Anne Court
Millbrae, California
Tel: 650-873-2188

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

FEB - 4 2008

GORDON PARK-LI, Clerk
BY: _____ MARIA SANCHEZ _____
Deputy Clerk

Plaintiff in Propria Persona

# IN THE SUPERIOR COURT OF CALIFORNIA
## IN AND FOR THE COUNTY OF SAN FRANCISCO

Linda Rovai-Pickett,                    )
                                         )
                                         )    Case No. CGC07 469683
              Plaintiff                  )
                                         )    *Complaint*
                                         )    (First Amended )
                                         )
                                         )
         vs                              )    Wrongful termination;
                                         )
HMS Host Inc.,                           )    Negligent Infliction
                                         )
Hotel Employees &                        )    of Emotional Distress;
Restaurant Employees Local #2,           )
                                         )    Unfair Labor Practice;
                                         )
                                         )    Breach of Contract;
                                         )
                                         )    Failure to perform
                                         )
                                         )    duty of fair

Complaint for damages page 1 of 42

|  |  |
|---|---|
| | ) representation; |
| | ) |
| | ) Defamation of |
| | ) |
| Does 1 thru 50 | ) character; |
| | ) |
| | ) ***Jury Trial Demanded*** |
| Defendants | ) |
| | ) |

1.    *COMES NOW* Plaintiff Linda Rovai-Pickett in her own proper person sui juris as lawful de jure Citizen of California (***Article II, Section 1 of the California Constitution (1849)***) to complain of Defendants, and each of them as follows:

2.    That Plaintiff is informed and believes that ***HMS Host Inc.(Host)*** is a corporation doing business in California and subject to the jurisdiction thereof. That ***Hotel Employees & Restaurant Employees Local # 2 (HERE Local #2)*** is a Union ostensibly representing workers interests, including plaintiff, with Defendant Host at the San Francisco International Airport pursuant to a Collective Bargaining Agreement (***CBA***) negotiated by Defendants Host and HERE Local 2 and in effect at all times relevant hereto.

3.    That information on Doe defendants 1 through 50 will be provided via amended complaint when the same have been identified and their roles in damaging Plaintiff become known.

Complaint for damages page 2 of 42

## JURISDICTION AND VENUE

4.    Jurisdiction and venue is invoked pursuant to ***Article VI, Section 1 of the California Constitution (1849)*** that establishes the superior court as a common law court of general jurisdiction which has cognizance over claims of breach of contract and tort. Also invoked is the right to sue established by the decisions of the California Supreme Court for violation of the covenant of good faith and fair dealing and/or wrongful termination (see e.g. ***Foley v Interactive Data 47 Cal 3rd 654, Scott v PG&E 11 Cal 4th 454*** and ***Tameny v Atlantic Richfield 27 Cal 3rd 167*** and those of lower courts — see e.g. ***Pugh v See's Candies 116 Cal App. 3rd 311***).

5.    In addition, Plaintiff cites ***Section 301 of the Federal Labor Relations Act, 20 USCA Section 185(a)*** pursuant to an action against a Union for a violation of its duty of fair representation and subsequent action against an Employer for wrongful discharge (see e.g. ***Vaca v Sipes 386 US 171***) and cites, in support of ***concurrent*** jurisdiction of this court in such actions, ***Section 11 of the Judiciary Act of 1789 (see also Dowd Box Co. v Courtney 368 US 502), 28 USC 1331***.

6.    In addition, Plaintiff notes that not only is there no language in the Collective Bargaining Agreement (CBA) which could be construed to estop her from seeking a judicial remedy, and doing so in the first instance, there ***IS*** explicit language in ***Section 36(l)*** thereof recognizing an aggrieved party's

Complaint for damages page 3  of 42

right to seek such judicial relief, to wit:

> "The sole remedy available to any employee for any alleged breach of
> this agreement shall be pursuant to the grievance procedure. Provided,
> however, that *nothing herein shall prevent an employee from*
> *electing to pursue a legal or statutory remedy* providing such election
> will bar any further or subsequent proceeding for relied under the
> grievance procedure."

7. This seems strikingly analogous to the 'savings to suitors" clause
found in statutes conferring admiralty & maritime jurisdiction on the United
States District Courts in recognition of the fact that "the common law of
England and the inestimable privilege of the trial their peers of the vicinage
according to the course of that law" (see e.g. ***Declaration of Rights 1774:***
***Resolve 5***) was *the fundamental premise* giving rise to the founding of the
Nation & Republic and the ordaining and establishment of the ***Constitution***
***for the unite5 States {1787-1791}***.

8. Additionally, with not one, but several, substantive questions of labor
law arising in the context of the instant case, Plaintiff cites the opinion of the
supreme Court of the united States in the case of ***Textile Workers v Lincoln***
***Mills 353 US 448*** wherein it was held that *Section 301 of the FLRA*
authorized "... courts to fashion a body of federal law for the enforcement of
these collective bargaining agreements." Plaintiff is likewise prepared, upon
request, to brief the '***Jones&Laughlin-Parrish-Nebbia-Wickard***' issue as an
alternative theory of jurisdiction in the instant case.

Complaint for damages page 4 of 42

## FIRST CAUSE OF ACTION

### Wrongful Termination

9. 1.     That Defendant HMS Host did unlawfully and in violation of
*known* applicable law(s), wrongfully terminate Plaintiff Linda Rovai-
Pickett from her job of *twenty four years* on the basis of an allegation
of a single, unsupported, untimely, and unproven "violation of
company cash handling procedure".

10. 2.     That Defendant wrongfully terminated Plaintiff without ever
affording her the opportunity to defend against this spurious
charge, with there being no effective notice of hearing, no
opportunity for Plaintiff to exercise her "*Weingarten*" right of counsel
and, with a stale charge allegedly occurring fully *thirty days prior* to
the date of the "hearing", there being no way whatsoever for Plaintiff
to have any recall of the *four dollar* transaction giving rise to her
termination and present a defense to the allegation.

11. 3.     That Defendant wrongfully terminated Plaintiff in that the decision to
terminate her was made *before* the "hearing" even  took place, which
is the plainest violation of well settled  (industrial) due process
imaginable.

12. 4.     That Defendant wrongfully terminated Plaintiff in plain violation of
the covenant of good faith and fair dealing and in complete absence of
any semblance of "*just cause*" as specifically mandated in Section
35(c) of the *CBA* in effect at *all relevant times material hereto*.

13. 5.     That Defendant wrongfully terminated Plaintiff using, for all
intents and purposes, a pretextual allegation while at the same time
permitting other workers to continue to work, even  without any known
discipline, let alone suspension or discharge, for *repeatedly* engaging
in conduct in clear violation of Defendant HMS Host's stated *zero
tolerance* policy for the use of drugs or alcohol while at work, of

Complaint for damages page 5  of 42

which a *single* occurrence of such activity *would* amount to just cause for *summary* termination of the type inflicted upon Plaintiff in the instant case. Accordingly, Plaintiff suffered disparate treatment by Defendant HMS Host when she was (wrongfully) terminated.

14.6.    That Defendant wrongfully terminated Plaintiff using, for all intents and purposes, a pretextual allegation, knowing full well that Plaintiff presented, from the skewed perspective of Defendant HMS Host, a *clear and present danger* of becoming a whistle blower or worse, with Plaintiff having potentially damaging knowledge of Defendant's lax enforcement of its zero tolerance policy, as aforestated and thus being in a position to cause people in supervisorial capacities, and co-workers as well, to be severely disciplined, if not terminated for their violations of such policy.

## SECOND CAUSE OF ACTION

### Negligent Infliction of Emotional distress

15.    That Defendant HMS Host, aided and abetted by the failure of Defendant HERE Local # 2 to perform its *duty of fair representation*, did negligently inflict emotional distress upon Plaintiff and cause her great mental anguish at the loss of her long time job *for no reason* and, for all intents and purposes, especially combined with Defendant HMS Host's defaming of Plaintiff, render Plaintiff Linda Rovai-Pickett unable to obtain any work by reason of being unable to satisfactorily account for twenty plus years in her work history on any job application without the circumstances of her wrongful termination becoming known and the stigma of such wrongful discharge weighing heavily against her chances of being able to secure comparable, if any, work at all.

Complaint for damages page 6 of 42

## THIRD CAUSE OF ACTION

### Unfair Labor Practices

16.     That Defendant HMS Host did wrongfully terminate Plaintiff Linda Rovai-Pickett by the use of *unfair labor practices* such as, but not limited to, the following:

17.    1.     Giving her *no notice* of the "hearing" at which Plaintiff was terminated or any notice of the agenda of such hearing;

18.    2.     By violating Plaintiff's rights of assistance of Union representation (Cal. Govt Code Sec. 3525 et seq), if not assistance of counsel, to aid in her preparation of a defense to whatever (*unknown*) charges were to be alleged;

19.    3.     By not producing any evidence in support of its single allegation of wrongdoing despite the *timely* demand of Plaintiff (and *not*, notably, Defendant HERE Local # 2) and despite having the burden of proof by at least clear and convincing evidence to sustain its allegation;

20.    4.     By failing to produce, again as against the *timely* demand of *PLAINTIFF*, *not* Defendant HERE, the *best evidence* of the transactional report of Plaintiff's shift activity, which report, if offered in evidence, would almost certainly have provided affirmative defenses for Plaintiff as against even this untimely and unsupported accusation.

21.    5.     By *not* invoking the progressive discipline scheme *clearly* and unambiguously set forth in Section 35 of the CBA – and this makes the *mammoth* assumption that the charge could have been proven -- and disciplined Plaintiff accordingly (perhaps a

Complaint for damages page 7 of 42

written warning *MIGHT* have been in order in such a case);

22. 6. By proceeding upon the *untimely* and *unsupported* complaint of a accuser likely had a *conflict of interest* of sufficient magnitude to have discredited his complaint and testimony altogether, with Plaintiff having reason, upon information and belief, to think that the accusing party had a relationship with the owner of the Buena Vista concession at SFO;

23. Needless to say that without any notice or time to prepare a defense Plaintiff was rendered wholly unable to follow up on this promising avenue of defense.

24. 7. That Plaintiff was terminated in a manner completely and utterly in violation of the provisions of the CBA and upon a pretextual context which, if allowed to go unchallenged, could be used repeatedly by Defendant HMS Host and *all others like situated*, to *absolutely defeat the public policy of California* and many, if not all, of the rights and statutory protections of workers set forth in such laws as *Fair Employment & Housing Act*, the *Unruh Civil Rights Act*, and other such enactments by the simple expedient of termination "for just cause" on any imaginable pretext whatsoever.

## FOURTH CAUSE OF ACTION

### Breach of Contract

25. That Defendant HMS Host breached the contract with not only Plaintiff Linda Rovai-Pickett, but *all like situated workers* covered by the terms and conditions of the CBA, by terminating Plaintiff without any semblance of (industrial) due process on a single unsupported, untimely

accusation without either evidence, witness(es) or any effective notice and
opportunity to defend against such charge(s) when Defendant HMS Host
*knew or should have known* of each and every legal duty it had pursuant to
the strictures of due process and/or the *CBA*.

## FIFTH CAUSE OF ACTION

### Failure to perform duty of fair representation

26.    That Plaintiff's wrongful termination was significantly aided by
Defendant HERE Local # 2's *complete and utter* failure to perform the duty
of fair representation it had to Plaintiff, and *all like situated* constituent
Union members, by each of the following acts (not an exhaustive list !):

27.    1.    By failing to object to the proceedings at which Plaintiff was
            wrongfully terminated by Defendant HMS Host at the "hearing"
            of December 5th, 2006, most particularly their failure, by and
            through their agent, Richard Kuan, to object to the manifest
            untimeliness of the single charge against Plaintiff, which
            staleness prevented all possibility of Plaintiff recalling details of
            the disputed transaction for the purposes of defense thereto;

28.    2.    By failing to object to the absence of any supporting evidence of
            the allegation against Plaintiff at the same hearing, when
            Defendants *knew, or should have known*, of Defendant HMS
            Host's having the burden of proof by at least *clear and
            convincing* evidence to sustain its allegation for the purposes of
            disciplinary action, let alone discharge of an employee;

Complaint for damages page 9 of 42

29.     3.     By failing to grieve any of the issues set forth by Plaintiff, and with substantive legal authorities, which are *serious* violations of the CBA and/or (industrial) due process, to wit:

30.          A.     The unmitigated untimeliness of the single accusation against Plaintiff and her concomitant inability to mount an effective defense to such untimely (and unknown) charge;

31.          B.     The absolute absence of supporting evidence of the allegation against Plaintiff (indeed, in the grievance that Defendant HERE did file, it agreed that, for the purposes of arbitral review, that Defendant HMS Host *had* sustained its burden of proof and that the burden of proof had now *shifted* to Plaintiff to show the violation of due process and/or provisions of the CBA. When questioned about the supporting legal authorities to sustain this reversal of fortune, the silence of Defendant HERE Local # 2 has been striking).

32.          C.     The violation of Plaintiff's right of Union assistance, if not assistance of counsel, due to the lack of notice of the proceedings against Plaintiff to terminate her;

33.          D.     Manifest absence of the progressive discipline procedures as set forth in the CBA negotiated by Defendant HERE Local # 2 and Defendant HMS Host and lack of objection by Defendant HERE;

34.          E.     Absence of objection to the *unilateral* determination of the existence of "just cause" for the termination of Plaintiff by Defendant HMS Host when the facts of the case, even construed most favorably for Defendant HMS Host, did *not* disclose any *exigent* circumstances which *might* have warranted the *summary* termination inflicted

Complaint for damages page 10 of 42

upon Plaintiff in the instant case;

35.

F.      Perfunctory and dilatory handling of Plaintiff's perceived
grievance by Defendant HERE Local #2 and the manifest
lack of due diligence in prosecuting the same, to the point
where arbitration will not occur until after *fourteen
months after* Plaintiff's wrongful termination, if then, as
Defendant HMS Host could, and probably will if past
record be any indication, request a delay for whatever
'reason' it can concoct for however long it can get away
with to delay, if not deny justice to Plaintiff for its
wrongful termination of her.

## SIXTH CAUSE OF ACTION
### Defamation of Character

36.      That Plaintiff Linda Rovai-Pickett has been defamed by Defendant
HMS Host pursuant to its *false* and *fraudulent* claims against Plaintiff for
allegedly engaging in *criminal* activity, which claims were asserted in the
hearing on her restoration of status to claim unemployment insurance
benefits, which spurious claims form an integral part of Plaintiff's otherwise
stellar work record with Defendant HMS Host, and which claims and
wrongful termination have rendered Plaintiff essentially unable to secure
other comparable, if any, work due to the inability to account for her many
years of work for Defendant HMS Host without the *inevitable* discovery (or
presumption) of Defendant HMS Host's assertion of Plaintiff engaging in
allegedly *criminal* activity which led to her being terminated for "just
cause".

Complaint for damages page 11 of 42

37.    And even if Plaintiff could use HMS Host as a job and/or character reference, there would be no way to know if her good name was further defamed by any negative comments of agents of Defendant HMS Host when questioned about Plaintiff's work history and/or the reason for her separation from a job of such long standing. Thus the specter of *prospective* defamation hangs forebodingly over Plaintiff until such time as her good name has been cleared and her character vindicated.

38.    Plaintiff has been further defamed by the actions of Defendant HMS Host in that its wrongful termination of Plaintiff and the concomitant loss of the stream of income, has left her unable to regularly discharge the obligations of her credit card debt (despite the *minimal* use of such credit since the wrongful termination) and thus the accrual of *negative* entries on Plaintiff's credit records and the corresponding reduction in her *apparent* "creditworthiness" to all concerned parties.


## *STATEMENT OF THE CASE*

39.    That on or about December 5th, 2006 Plaintiff Linda Pickett was wrongfully and egregiously terminated from her job of *twenty four years* as a server for Defendant Host Inc. over an alleged discrepancy of *four* dollars in a transaction which was alleged to have occurred *fully a month earlier* on November 5th, 2006.

Complaint for damages page 12 of 42

40.    That Plaintiff had so little notice of the meeting of December 5th, 2006
-- and assumed, given past experiences that she might be receiving some or
another award for her *good* work for Defendant Host, that her Union rights --
effectively the right to assistance of counsel -- recognized in California
(*Robinson v State Personnel Bd. 97 C.A. 3rd 994*) *were denied* as there was
*no effective notice* that any adverse actions were afoot on Dec. 5, 2006 and
thus no opportunity to prepare a defense.

41.    That despite Plaintiff's *timely* demand of Defendant Host Inc. to
produce any and all evidence and witnesses in support of the allegations
against her at a meeting on Dec. 5th, 2006, no such evidence was ever
produced and thus there was *no legal basis* to discharge Plaintiff Linda
Pickett from her job, as would be required by at least the "*just cause*" and/or
"*willful misconduct*" provisions, not to mention the *progressive discipline*
scheme, of *Section 35c of the CBA*, notwithstanding any claimed or asserted
'employment at will' defense by Defendant Host Inc., due to the many
violations of applicable laws and public policy considerations, as hereinafter
fully set forth, which operate to supersede any such right to discharge *with or
without cause* (!) as Defendant Host Inc. might have been able to claim.

42.    That Defendant *HERE* Local 2, by its agent Richard Kuan, sat
submissively by and *did not actively participate nor in any way discharge
Defendant HERE Local #2's duties of fair representation* of Plaintiff Linda

Complaint for damages page 13 of 42

Pickett at the meeting of December 5th, 2006, which existed pursuant to the Collective Bargaining Agreement and/or applicable State and Federal laws.

43.    Defendant *HERE* Local #2 did not object to any of the proceedings, nor raise any issues about the *summary* termination of such an outstanding worker of *long standing*, most especially in the instant case without *any shred* of supporting evidence that would have sustained, in whole or in part, the right of Defendant Host Inc. to have taken such drastic action against Plaintiff, most particularly where, as here, the discharge was based on a *single* instance of an alleged discrepancy that could not and should not have risen to the level of *"gross misconduct"* that might have then furnished grounds for Plaintiff's *summary termination*.

44.    That Defendant *HERE* Local #2 did not raise the objection of the *untimeliness* of the allegation against Plaintiff, with *fully one month having passed since the date of the alleged wrongdoing* and this in a job of food server which position routinely entails 50 or more transactions per shift, a fact *well known* to Defendants and each of them, that at least *twenty workdays, not to mention thirty calendar days,* had elapsed since the alleged date of occurrence.

45.    Thus Plaintiff had handled over *1000* transactions since that time and thus *could have no way* whatsoever, even if what would otherwise have been a due process *pre-termination* hearing had occurred -- *and there was no*

Complaint for damages page 14 of 42

*such hearing — to have had any recall* of the particulars of a single
transaction, especially over an amount of *four* dollars, so as to be able to
*effectively* defend against the allegation even if there had been introduced
evidence and/or witnesses as to the existence of *"just cause"* and/or *"willful*
*misconduct"*, even using the standard of "preponderance of evidence", let
alone stricter standards.

46.     Further, had the opportunity to present a defense existed, *which,*
*again, it did not,* affirmative defenses could and would have been made
regarding the manifest defects in Defendant Host Inc.'s operating and
accounting procedures that almost certainly would have exonerated Plaintiff
from any responsibility for the wrongdoing alleged, *whatever it was,* facts
that would likely have operated, had the instant events arisen in a criminal
venue, *to the easy establishment of reasonable doubt,* thus providing the
legal basis for the acquittal of such a *criminal* defendant.

47.     Plaintiff, at the risk of being repetitive, asserts the simple truth that
prior to the meeting of December 5th, 2006, of which she had but 3 days
notice and *no notice as to the agenda, the decision to terminate her had*
*already been made* and that the sole function of this meeting was to notify
her that she had been terminated.

Complaint for damages page 15 of 42

48.    There was not, *nor was there intended to be,* any opportunity for Plaintiff to present her case, even if Defendant Host Inc. had established their prima facie case; the decision to terminate was a *fait accompli* and Defendant *HERE* Local #2 did its part to ensure *the appearance of fairness and impartiality,* of which there was none in evidence, by standing mute throughout the proceedings.

49.    As a direct result of these circumstances, Plaintiff, upon timely filing for unemployment benefits was *summarily* denied by the California Employment Development Department (EDD) on the apparent basis of a letter from Defendant Host Inc., as required by *Section 1327 of the California Unemployment Code,* that set forth the "factual" basis for the termination of Plaintiff *which basis did not and does not exist.*

50.    That as best as Plaintiff can understand it, the action taken by the EDD in denying her these benefits must have been based on some or another *fiction of law* that she had in fact been given a meaningful and substantive *pre-termination* hearing as required by law, thus shifting the burden of proof of her eligibility for benefits *onto Plaintiff and away from Defendant Host Inc.* based on the *false and fraudulent* document submitted by them as aforestated. Plaintiff was thus denied due process of law as to these unemployment benefits.

Complaint for damages page 16  of 42

51.    Important to note here that the events of December 5th, 2006
culminating with the (*wrongful*) termination of Plaintiff began in earnest
over a year earlier when on or about November 20th, 2005 Plaintiff had
occasion to physically observe Michelle Zimmerman, the General Manager
for Defendant Host at the San Francisco International Airport, literally lying
on the ground and in a clearly intoxicated condition (totally consistent with
her known habit of drinking while on the job) and Zimmerman's
*contemporaneous* recognition that Plaintiff had seen her in such
*compromising* position and was thus a threat to her job security (and Host's
own perceived self interests in the bargain).

52.    Plaintiff was, and is, as are many others, aware of Michelle
Zimmerman's drinking on the job which testimonial and/or documentary
evidence which will demonstrate clearly occurred and was, indeed, a regular,
if not daily feature, on the scene at Host facilities with the both of them often
drinking together in a variety of situations.

53.    Thus began a long train of abuse and harassment against Plaintiff, who
in addition to the knowledge of such drinking, was in possession of personal
and *damaging* knowledge of GM Zimmerman's culpability of violating
Defendant Hosts "*zero tolerance*" policy of drug and alcohol abuse, with the
idea in mind to effect her (wrongful) termination and end the threat.

Complaint for damages page 17 of 42

54.     Duly noted is that many people aware of the drinking situations above
are of foreign ancestry and whose behavior, most especially those recently
emigrated, is in general passive and submissive consistent with such
background, and who could, from the point of view of the miscreants, by the
use of the superior legal position of at least GM Zimmerman, be kept quiet by
cowing them and threatening their job security, even their legal status as
"green card" holders, unlike Plaintiff who, not only having the character to
stand up for herself, had the perceived, if not actual, knowledge of the legal
system and access to those with a knowledge of the law, to fend off any such
crude attempts to intimidate her or threaten her job security.

55.     And as this complaint is filed, both Zimmerman and others like
situated, remain on their jobs when *they* could have been subjected to the
sort of *summary* termination foisted off on Plaintiff by Defendant Host in a
*retaliatory, pretextual,* and *illegal* manner, for in those instances Defendant
Host would indeed have had the "just cause" for termination (subject to
grievance procedures) so sorely lacking in the instant case.

56.     In addition, Plaintiff had as much, if not more knowledge of the micro
system than did even senior management, who felt intimidated by her
knowledge. Thus Plaintiff was terminated on the basis of very disparate
treatment, to say the least.

Complaint for damages page 18 of 42

57.    That on Thursday January 11th, 2007 Plaintiff and her trusted friend
and advisor William Henshall had a *three hour* meeting with *HERE* agent
Richard Kuan at the local headquarters of Defendant *HERE* Local #2 in
Burlingame, California to discuss the upcoming mediation hearing of January
22nd, 2007 at which time all of the objections to the process used in
terminating Plaintiff were raised and supported by lawful authorities
presented by William Henshall *in writing* to Agent Kuan, which he chose,
*without any supporting legal authorities*, to ignore and dismiss.

58.    Particular attention was drawn by William Henshall to the issues of the
lack of a *pre-termination* hearing and *opportunity for Plaintiff to be heard*
and the fact that even if Defendant HMS Host Inc. had proven its allegations,
even in a *full adversarial substantive due process hearing*, that the *single
charge of a four dollar* error would not have satisfied the "*just cause*"
and/or "*gross misconduct*" requirements in *Section 35c of the CBA* to
terminate plaintiff and would not have been judicially so construed to do so
in the instant case consistent with *known* existing case law.

59.    Plaintiff, and *all like situated* -- and this applies almost *universally*
throughout the field of labor relations insofar as it applies to workers covered
by Collective Bargaining Agreements — relies upon the security of *seemingly
substantive* procedures and *fundamental fairness* inherent in any
disciplinary process, let alone one for termination of a *long term* worker, to
protect them from the arbitrary and capricious, not to mention *retaliatory*,

Complaint for damages page 19 of 42

actions of Defendant HMS Host Inc. to use any *pretextual* excuse without, as in the instant case, producing any witnesses or evidence, not holding a pre-termination hearing or, at the very least, holding a meeting *so far after the occurrence of the alleged wrongdoing* that no reasonable person could have any recall of alleged events *such as to be able to put on an effective defense* even with a timely, noticed, pre-termination hearing.

60. Plaintiff simply cannot believe that this sort of result, whereby she has been summarily terminated from her job of *twenty four* years on a *single, naked, unsupported* allegation can be consistent with the spirit and letter of so many reforms in labor law wrought during the last several decades, nor can it be compatible with public policy, most especially when the result also affects, potentially substantially, the rights of her *dependent* children to not only the *essentials of life* but other deprivations as well, most immediately the threat of preclusion of a college education, even a modest one, for Plaintiff's daughter, Brittany Pickett, due to the lack of ability to be able to afford the costs of the same, and the loss of the case of her son, Ryan Pickett, against the San Mateo Unified School District for the egregious denial of his right to a meaningful and substantive education due to the loss of privity because of to Plaintiff's inability to pay attorney fees.

61. Returning to the meeting of January 11th, 2007. it became clear that Defendants HERE Local #2 and Agent Kuan were going to approach the mediation hearing of January 22nd taking the position that Defendant HMS

Complaint for damages page 20 of 42

Host Inc. had *proven* its allegations against Plaintiff and that Plaintiff now *had the burden of proof* to demonstrate she was not guilty of any wrongdoing !

62.    Subsequent to this meeting, Plaintiff faxed, on Friday, January 12, 2007, objections to this stated approach (see *Exhibit "A"*) to Defendant HERE Local #2 by and through its agent, Agent Richard Kuan so as to make it clear *exactly what the issues were* and set forth the position that Plaintiff wanted advanced at the mediation hearing of January 22nd, 2007.

63.    No direct, substantive response to this fax was ever received. Accordingly, on or about Thursday January 18th, 2007, Plaintiff faxed the same document to HERE Agent Mike Casey at the headquarters of Defendant HERE Local #2 in San Francisco, California and an accompanying document setting forth more particulars about Plaintiff's position (see *Exhibit "B"*) and asking, in effect, that the decision of Agent Richard Kuan, pursuant to the hereinabove mentioned plan to approach the mediation hearing, be reversed and Plaintiff's agenda be used.

64.    This was likewise not done and thus at the mediation meeting Plaintiff attempted to file a document disclaiming the position of Defendants HERE Local #2 and its agents Kuan and Casey and setting forth *each and every defect in the proceedings to date* as hereinabove mentioned (see *Exhibit "C"*), but Plaintiff was *threatened and intimidated* with the abandonment of

Complaint for damages page 21  of 42

the mediation by Agent Kuan and, by extension, Defendant HERE Local #2 and its Agent Casey, if the document was filed or otherwise recorded.

65.     Thus the mediation "hearing", such as it was, proceeded with Defendant HMS Host Inc. adding even more *unsupported and untimely* allegations of similar "wrongdoing" by Plaintiff, some for as little as a *few cents*, in ostensible support of their establishing a "pattern & practice" of such wrongdoing, none of which were, had been, or could be raised in any disciplinary action against Plaintiff, most especially not in support of the challenged wrongful termination here at issue, in what can only be described as a lame and desperate attempt to somehow establish the *"just cause"* and/or *"willful misconduct"* elements for the discharge of Plaintiff.

66.     Once again, *no objections were raised*, at least by Defendant HERE Local #2 and most especially by its Agent Kuan, to any of Defendant HMS Host Inc.'s new allegations, thus continuing the Defendants' shameful record of failing to provide any of the *"fair representation"* to which Plaintiff, and *all like situated*, are entitled.

67.     Plaintiff on Tuesday January 23rd, 2007 Defendant HERE Local #2 to its agent Mike Casey, a position paper prepared by William Henshall (see *Exhibit "D"*) setting forth with specificity many of the legal authorities relied upon to sustain Plaintiff's position on the issues, many being decisional case law of the courts as set forth therein, but *no response* was received to this.

Complaint for damages page 22 of 42

68.      Plaintiff and William Henshall had, on Friday February 2nd, 2007, a further meeting with Kevin Connor, another agent of Defendant *HERE*, at the offices of *HERE* in Burlingame, California, for over an hour which meeting also failed to produce the desired results, most especially the denial of Defendant *HERE* to prosecute the instant lawsuit against Defendant Host which Plaintiff believes such action to be an integral part of the duty of Defendant *HERE* to provide *fair representation* to all its constituent members when they are the victims of unlawful and unfair labor practices by employers.

69.      Instead, Defendant *HERE* seems committed to handling any further administrative proceedings on the basis that Plaintiff has in fact had the burden of proof shifted to her to rebut the allegations of Defendant Host and thus Plaintiff is in great fear of having viable, substantive objections "waived" that would result in her immediate re-instatement to her job and put an end to this case.

70.      That on or about February 12th, 2007 Plaintiff learned that there was scheduled a mediation hearing on March 14th, 2007. Plaintiff strenuously objected to such a lengthy continuance, again especially *without any income stream for support*, but was told by Agent Kuan that this was the earliest available date for such hearing. The delay for an arbitration hearing can only

Complaint for damages page 23 of 42

be imagined and such delays would totally destroy Plaintiff's existing living arrangements and wreak havoc on ever facet of not only her life but her *dependent* children as well.

71.    That on Friday March 2nd, 2007 Plaintiff sent Defendant HERE Local #2 via its Agents Casey and Kuan, a demand letter (see *Exhibit "E"*) seeking for them to abandon the upcoming mediation and/or arbitration, based on the fact that judicial relief was in order in the first instance due to the manifest wrongful discharge of Plaintiff and that Declaratory & Injunctive relief should thus be available to right the wrongs committed against Plaintiff and that Defendant HERE Local #2 had the status and standing, *as well as the responsibility*, as an integral part of its duty of fair representation to Plaintiff.

72.    That on or about March 6th, 2007 Plaintiff was notified by Defendant HERE and Agent Kuan that there would be a further delay in the mediation, with the date moved up to March 27th, 2007 because Defendant Host, the party with all the legal talent and expertise (!) needed more time to prepare their case. Plaintiff again objected to this continuance, now realizing that due to the poorly drafted *Section 37(f)(2)* of the *CBA* that continuances in the grievance/administrative process could continue *ad infinitem* without, apparently, being in violation of any law. Indeed, the date of March 27th presented a conflict for Plaintiff, who was scheduled to have emergency foot surgery *before* her insurance coverage expires in order to salvage some of her physical mobility.

Complaint for damages page 24 of 42

73.     That Plaintiff was notified by Defendant *HERE* that there would be a further delay of mediation to the first week of April again, apparently, due to a continuance requested by Defendant HMS Host Inc. Due objection was made to such continuance.

74.     That on March 29th, 2007 Plaintiff faxed to Defendant *HERE* Local #2 and agents Richard Kuan and Mike Casey a letter seeking answers to crucial questions regarding the status of her health care insurance for herself and her children, after having made several unsuccessful oral inquiries because being already cut off from her stream of income, it would be impossible for her to cover any costs of every day medical needs, let alone any emergencies that might arise. (see *Exhibit "G"*). Plaintiff also renewed her strenuous objection to the lengthy delays in the administrative process, most especially for a matter that is a manifestly clear breach of contract and wrongful termination by Defendant HMS Host and indicated the unlikely prospect of her attending the scheduled mediation hearing on April 10th, 2007 (*four months* after her wrongful termination it should be noted), due to her being compelled to have foot surgery before the end of March in order to assure that the costs of this surgery would be covered by insurance, and put Defendant *HERE* Local #2 on *clear and unambiguous* notice, if in the event they somehow were unclear on the concept, that they were processing the *WRONG* grievance.

Complaint for damages page 25  of 42

75.     That on April 5th, 2007 Plaintiff was advised by Defendant *HERE* of yet another delay in the "mediation" hearing, again ostensibly at the behest of Defendant HMS Host for another two to three weeks, with *no reason* given or, evidently, needed pursuant to *Section 36(f)(2) of the CBA* if this section is construed to apply to mediation as well as arbitration.

76.     Plaintiff duly objected to this further delay of justice, without apparent effect as Defendants, and each of them, seem to believe that they possess, at least between them, *total and complete discretion* on every issue arising pursuant to the CBA, most especially the dilatory practices complained of herein.

77.     Thus yet another issue arises for *judicial* determination, along with, among others, Plaintiff's right to a timely, noticed, pre-termination hearing, the effective *time limits* for an employer to bring charges against a worker covered by a CBA, and the evidentiary burden necessary to establish the existence of "just cause" and/or "gross misconduct" in the first instance.

78.     That on April 16th, 2007 Plaintiff received a non-responsive, meritless, and generally self-serving letter (see *Exhibit "H"*) from Kim Wirshing, an attorney for Defendant *HERE* ostensibly replying to her letter of inquiry of March 29th, 2007 (see *Exhibit "G"*) into several issues of relevant law and/or legal principles underlying the entirety of Plaintiff's wrongful discharge.

79.    Among the startling revelations in this letter, which do nothing but highlight the lack of knowledge of Defendant *HERE* and thus its *fundamental inability* to perform its duty of fair representation, are the following statements (each of which is *conspicuously absent any supporting legal authorities*):

80.    "You mention the "presumption of innocence" standard regarding the disciplinary action against you. Unfortunately, your analysis is wrong under the law (what law -- ed ??). Under labor and employment law, an employer may take disciplinary action immediately and then, through the grievance procedure, they must provide evidence of "just cause". Further, this only applies to employees who are unionized and have a "just cause" clause in their CBA. *If you work for a non-union employer, the employer may discipline for any reason or no reason at all and you have no recourse or remedy.*

81.    "Contrary to your assertions regarding the correct process of discipline, the CBA contains *no provisions that would require a "pre-termination" hearing to establish "just cause" or "gross misconduct"*.

82.    "I am unable to respond to your philosophical or historical arguments regarding the Wagner Act or the CBA. *These issues do not have any immediate impact upon your case.*"

83.    "You have asked for "accompanying legal authorities", to explain the above issues. *You should consult independent legal counsel ...* related to any of these issues."

84.    Plaintiff responded to this letter with yet another reply questioning and/or rebutting *with expanded legal reasoning* (see *Exhibit "T"*) every assertion made by Wirshing in his letter, most especially regarding non-union

employees having no recourse against employers for wrongful discharge
(*flatly wrong statement of law*), but without any hope or confidence, which
was in serious doubt before the receipt of this letter, that Defendant *HERE*
could or would fairly represent not only Plaintiff's interests in the instant
case, but that of other members who should find themselves similarly
positioned in the future due, in large part to the subservience of the Union to
employers and its unawareness and/or inability or unwillingness to use
existing legal authorities, to fight for the rights of its constituency when the
occasion arises.

85.     Plaintiff also finds the suggestion to "consult independent counsel"
offensive and in utter derogation of the Union's obligation to discharge its
duty of fair representation, which we can infer from this letter to mean that
the Union thinks it has *no obligation*, as the legal agent *of its membership*,
to respond to substantive inquiries about applicable law and that any member
having issues of this sort *should have to bear the time and expense* to see an
outside attorney (if one can be found) to provide such assistance.

86.     This goes to the heart of the matter, as there is no reason whatsoever
that the Union should not have *competent, trained,* counsel in the area of
labor law who could provide meaningful legal assistance when necessary.

Complaint for damages page 28 of 42

87.    That the 'mediation' hearing finally occurred, albeit anticlimactically,

on May 2nd, 2007 with neither any justice for Plaintiff nor any administrative

relief in sight; Plaintiff was advised by Agent Kuan, who attended this

hearing without doing anything to advance the interests of Plaintiff, that

arbitration could easily take up to *two more years* -- a clearly inappropriate

and unacceptable situation, most especially where Plaintiff *HAS YET* to be

heard in her own defense and the *wrong* grievance is being processed by

Defendant *HERE* Local #2.

88.    Plaintiff personally delivered to Defendants and mediator a document

entitled "Declination to address the "merits" of wrongful termination" (see

*Exhibit "J"*) which was personally delivered to defendant HMS Host and the

mediator, David Weinberg, which set forth her position as, at one and the

same time, having a fervent desire to address the alleged merits of not only

the single charge against her which resulted in her wrongful termination on

December 5th, 2006, but a variety of similar allegations made by Defendant

HMS Host long after their wrongful termination of Plaintiff, none of which

were even presented and made known to Plaintiff on December 5th, 2006 or

which were relied upon in any way to effect her summary termination at the

hands of Defendant HMS Host in order to vindicate herself, and Plaintiff's

realization that by addressing the "merits" she was running an *unknown* and

*unacceptable* risk of *waiving rights secured by the Constitution* and/or

rights and privileges otherwise established by law, most especially as it

related to seeking the judicial redress of grievance to which she is entitled as

Complaint for damages page 29 of 42

a matter of right (see e.g. *Cohens v Virginia 6 Wheat 264*) and Plaintiff stood her ground pursuant to the "*Ashwander* Doctrine" (*Ashwander v TVA 297 US 288,341* et seq.) objections stated in this document and the supporting legal authorities therein and other authority within the knowledge of William Henshall on this subject matter.

89. Some "highlights" from this hearing:

90.1. Being informed by the mediator (hereinafter "Weinberg"), again at one and the same time, that Defendant HMS Host could *NOT* use any later allegations of wrongdoing by Plaintiff against her, as she expected, but that these incidents showed a "pattern & practice" of ostensibly *criminal* conduct that would support the termination of Plaintiff !

91. Now this is supposedly a neutral mediator armed with at least enough legal knowledge to know that not only were the later allegations *time barred*, just as was the original charge, but that Plaintiff had never had the opportunity to defend against these charges either and yet he presumes them to be correct upon the mere, unsupported, allegation of Defendant Host.

92. This situation alone should serve to amply illustrate the fact that the deck was, and is, stacked against Plaintiff being able to get any substantive relief, even if Defendant *HERE* was prosecuting any of

Complaint for damages page 30 of 42

the correct grievances, any one of which would have yielded a
summary exoneration of Plaintiff and a restoration to her job in the
first instance on December 5th, 2006 !

93.2.    That all concerned parties, after seeing and reading the "*Ashwander*"
assertions document (*Exhibit "K"*) offered into evidence by Plaintiff to
support her *good faith* appearance at the mediation hearing made
impertinent, irrelevant, inflammatory, and condescending comments
about it; Jeanine, a Union shop steward, even told Plaintiff to "fire
William Henshall because he does not know what he is talking about".

94.3.    That in view of these "facts" Weinberg, shop steward Jeanine, and
Agent Kuan advised Plaintiff that she  should accept an offer (*not*
forthcoming) to be re-instated but *without* any back pay for the *five
months* these proceedings had dragged on and consider herself lucky
in the bargain ! !

95.4.    That Weinberg told Plaintiff that she was mistaken if she  thought that
judicial intervention was available before the *exhaustion of remedies*
as this was 'an established matter of law'. Clearly this is contrary to
the law as decided by the opinions of the supreme Court of the united
States in this area and most specifically those of Justice Byron White,
being relied upon by Plaintiff herein.

Complaint for damages page 31  of 42

96.    At the time of the filing of this complaint, *twelve months* after Plaintiff's wrongful termination, *an arbitration date* has been set, but not until February 25th, *2008, fifteen months after the wrongful termination* !! Plaintiff is aware of another case of wrongful termination in which the arbitration will not take place until *16 months* after the termination. In addition, even if such arbitration is held, Defendant *HERE* Local # 2 is pursuing the *WRONG* grievance, over the objection of Plaintiff, and *NOT* raising any of the meritorious claims which do exist.

97.    That Defendant *HERE* Local #2 by and through the acts of its agents Richard Kuan and Mike Casey not only completely failed to adequately represent Plaintiff throughout the termination proceedings, but their actions threaten the loss of many substantive claims of state and/or federal law that could have been raised, *had a pre-termination hearing been timely held*, of, among other things, reverse discrimination, discrimination against disabled people pursuant to the *Americans with Disabilities Act*, retaliatory discrimination, most particularly against workers claiming workman's compensation benefits, age discrimination, *anti-whistle blowing* discrimination, and *selective enforcement* of provisions of the CBA, to name some of the possibilities arising in the context of *pretextual termination* in the instant case.

Complaint for damages page 32 of 42

98.    Defendant *HERE* Local #2, and agents Casey, and Kuan *knew, or should have known* of each of these claims and likewise *knew or should have known about* , of each and every one of the procedural defects committed by Defendant HMS Host Inc. in terminating Plaintiff, yet they totally failed to take any action of consequence to assert substantive contractual, and/or due process, rights of Plaintiff or *any like situated Union member*.

99.    That as a result of the acts of Defendants as set forth in brief above, William Henshall has come forward to financially assist Plaintiff Linda Pickett to the maximum practicable extent in order to assure that his *de facto* family, including Brittany Pickett, a minor, and Ryan Pickett, a dependent adult child, do not go homeless or otherwise become a public charge due to (a) Plaintiff Linda Pickett being unable to provide the essentials of life for herself and children and (b) Plaintiff Linda Pickett being effectively further denied due process in attempting to modify the support order against her ex Kevin Pickett as he is at all times *fully represented by counsel*, yet she is unable to afford counsel and has to proceed, as here, in propria persona with little or no hope of prevailing against a fully armed adversary.

100.    Accordingly, along with William Henshall's close familial ties to all concerned family members over the 20 years he has known Plaintiff Linda Pickett, to the point of being considered a father figure to the children , he has thus a right in the recovery of his property which has been redirected to

Complaint for damages page 33 of 42

Plaintiff Linda Pickett due to the manifestly unlawful acts committed against her by Defendants, and each of them, complained of herein.

101. As a direct consequence of the actions (or inactions) of the Defendants, and each of them, against Plaintiff, she is, and has been since December 5th, 2006, *without any income stream whatever save for the pittance emanating from her disability claim.*

102. Plaintiff has been *libeled* and/or *defamed* by Defendant HMS Host Inc. by reason of its letter, sent to the EDD in pursuance of **Section 1327 of the California Unemployment Code**, a document demanded by Plaintiff, but not yet forthcoming from Defendant HMS Host Inc., claiming that it had proven its allegations against Plaintiff in an ostensibly timely pre-termination hearing *that has yet to occur*, thus disparaging the character of Plaintiff with *meritless criminal accusations* and at the same time denying her due process of law in that she has never has a *pre-deprivation hearing* for such *vested property rights* of unemployment benefits due to the *false* claims stated by Defendant Host in such letter.

103. Plaintiff has been further *libeled* and/or defamed by Defendant Host via the insertion into the record of the termination proceedings a letter dated *December 11th, 2006,* by its agent, Mary Mork, claiming to be some or another sort of admission and confession of Plaintiff (see *Exhibit "K"*) to the alleged wrongdoing of violating some or another *unspecified* "cash handling

Complaint for damages page 34 of 42

policy" which was also construed by Defendant Host, albeit *unilaterally and without Plaintiff having an opportunity to be heard on the matter,* as satisfying either *"just cause"* and/or *"gross misconduct"* elements of *Section 35 of the CBA* permitting the summary termination of Plaintiff. This letter is *totally untrue* and Plaintiff denies having made any such admissions of wrongdoing.

104.   These acts of Defendant Host and, by extension Defendant *HERE*, and agents Kuan, and Casey also constitute breach of the covenant of good faith and fair dealing *and, in the case of Defendant HERE, and agents Casey, and Kuan the duty of fair representation* as clearly against the terms and provisions of the CBA which Plaintiff, and *all like situated,* rely upon to secure their jobs from the sort of random and vindictive actions as Plaintiff has suffered in the instant case in derogation of the implied covenant of good faith and fair dealing intrinsic in CBA agreements.

105.   The acts of Defendants, and each of them as hereinabove stated, also constitute a breach of contract and, in the case of Defendant *HERE,* a further breach of the duty of fair representation to Plaintiff owed by Defendants, most especially as regards Defendant's acquiescence, individually and severally, *to the setting of the wrong record* for purposes of at least administrative, if not judicial, review.

106.     In addition, the convenient bypassing of the *progressive discipline procedures,* as set forth in **Section 35** of the **CBA**, which would otherwise be applicable, assuming arguendo that Defendant Host had in fact proven its *sole* allegation of wrongdoing, which it did not do, due to its peremptory finding of "*just cause*" and/or "*gross misconduct*" is likewise an unfair labor practice (see e.g. **Fair Labor Standards Act**) , violation of its obligation of good faith and fair dealing, and/or a manifest breach of contract.

107.     At least as to the issue of the existence of "*just cause*" as it applies to the determination of eligibility for unemployment benefits, the decision of the **California Unemployment Insurance Appeals Board** in Plaintiff's appeal from the denial of such benefits in **Case No. 2003023** (see **Exhibit "L"**) sustaining Plaintiff's claim that there was no "just cause" for her termination, and in which appeal was had a hearing of a type that should have been in order *prior* to Plaintiff's summary and wrongful termination, should be highly persuasive in making the same determination, albeit in a somewhat different context herein.

108.     Plaintiff further contends that her long years of accrued service has vested her with a property interest in the continuance of her career (see e.g. ***Wygant v Jackson Bd. Of Education 476 US 67***) and the right not to be discharged except for good cause (see e.g. ***Pugh v See's Candies 47 Cal 3rd 654***), here with an accompanying written labor agreement (**CBA**) in addition to the implied covenant of fair dealing and acting in good faith.

Complaint for damages page 36 of 42

109,    Defendant Host has further defamed and libeled Plaintiff,
constructively, if not actually, by maintaining in its records of Plaintiff's work
for Defendant Host the *false* and *fraudulent* termination letter of Mary
Mork in 'support' of Plaintiff's having been (wrongfully) terminated for "just
cause", when no such just cause either existed or was proved.

110,    Accordingly, Plaintiff is unable to even apply for work, having no way
to avoid the mention of her long term relationship with Defendant Host and
knowing that questions which would necessarily arise in any job interview
process about why an applicant was seeking a new job would be even more
pronounced, from the point of view of a prospective employer, for an
applicant coming off such a long term relationship.

111.    Indeed, there might well be a presumption *against* hiring an applicant
such as Plaintiff in these circumstances by reason of the fact that one does
not ordinarily quit such a job and thus there 'must have been a good reason'
for the employer to terminate the relationship, likely one involving at least
*alleged criminal improprieties*.

112.    It is at this point that Plaintiff would have no way of knowing, or
proving, that any negative comments were made about her or that the
defamatory termination letter might not be proffered by Defendant Host in
response to inquiries about Plaintiff's bona fides and/or character.

Complaint for damages page 37 of 42

113.   Even a stream of rejections for jobs would likely not satisfy whatever arbitrary statutory burden of proof Plaintiff would have in proving such defamation by Defendant and Plaintiff would be thus denied, in effect, her right to a trial by jury, while having a prima facie case against Defendant Host and never being able to sustain, as it were, her burden of proof to survive even a motion for summary judgment, let alone get evidence to a jury of the wrongdoing of Defendant Host, most especially in the likely event that Plaintiff would be *compelled*, as in the instant case, to proceed in pro per being *unable to afford* representation of counsel, and be opposed by Defendant and its veritable stable of trained attorneys.

114.   Plaintiff has been further damaged by her wrongful termination by Defendant Host in that she has not been able to keep up with the discharge of obligations for various credit card balances, medical bills, auto insurance, and the like, with negative entries accrued to her credit record and reduction of 'credit-worthiness' thereby, and has been reduced to a very meager lifestyle having to deny herself and her children even simple purchases that would otherwise have been in reach if not for such wrongful termination by Defendant Host.

## *PRAYER FOR RELIEF*

Plaintiff prays a jury trial *on all issues so triable* and for the following damages, to wit:

I.     As against Defendant HMS Host Inc.

    A.     An amount to be determined in lost wages *and tips* from the date of the wrongful termination, Dec. 5th, 2006 until the date of the entry of judgment herein;

    B.     Damages according to proof for the negligent infliction of emotional distress and trauma on Plaintiff and, by extension, her family, for the unlawful actions to which Plaintiff was *wholly and unnecessarily subjected* due to Defendant Host. Inc.'s wrongful termination of Plaintiff and breach of contract when it knew or should have known of the manifest unlawfulness of its acts;

    C.     *Nine hundred thousand dollars (900,000.00)* dollars for breach of contract;

    D.     Compensatory and/or exemplary damages in an amount of *five million (5,000,000.00)* dollars in order to deter Defendant HMS

Complaint for damages page 39 of 42

Host Inc., and *all like situated*, from repeating the clearly and
egregiously wrong acts committed against Plaintiff against any
other innocent parties like situated.

E.    *Five hundred thousand dollars (500,000.00)* for libel and/or
defamation of character, most especially as regards any negative
entries made upon Plaintiff's credit record(s) as a result of her
being unable to discharge her obligations due to being
wrongfully terminated and/or Plaintiff being effectively rendered
unable to find a new job as a direct consequence of having to
"admit" being terminated for theft of property", against Plaintiff
as hereinabove stated.

While at first blush these damages seem excessive it is not
so; Defendant Host Inc. had the misfortune to pick on a victim
who was prepared to stand up for her rights and had the
resources to do so effectively, *unlike the vast majority of people
in her position*, a fact of which Defendant Host Inc. has to be
keenly aware, and thus has arisen an all too rare opportunity for
Plaintiff to perform a public service and send offenders a
message too clear to admit of doubt as to the pitfalls of violating
the Law of the Land via the (mis)use of their usually superior
legal wherewithal and position of dominance in an employment
agreement.

F.    Restoration of the amount, to be ascertained, loaned to
Plaintiff by her friends for living expenses of Plaintiff as
hereinabove mentioned;

Complaint for damages page 40 of 42

2.    As against Defendant HERE Local # 2:

    A.    Compensatory and/or exemplary damages in an amount of
*three hundred thousand dollars (300,000.00)* against
Defendant HERE Local #2 , for its *total failure, despite the
timely, repeated demands of Plaintiff,* to provide the fair
representation secured to Plaintiff and to deter such future
misconduct against Plaintiff and/or any like situated parties;

    B.    *One Hundred thousand dollars (100,000.00)* for its active role
as a collaborator in cooperating with Defendant Host Inc. in
denying Plaintiff the due process of law that they knew or
should have known was secured by the Constitution & laws of
the united States and in similar cooperation with Defendant Host
Inc. and its wrongful termination of Plaintiff;

    C.    *Fifty thousand dollars (50,000.00)* for its role in negligently
inflicting emotional stress upon Plaintiff by their co-operative
role in the proceedings as aforestated.

3.    As against either HMS Host Inc. and/or HERE Local #2:

    A.    Court costs and attorneys fees, most especially against
Defendant HERE Local #2 for failing, as a part of its

Complaint for damages page 41 of 42

duty of fair representation, to prosecute this suit and/or otherwise fairly represent Plaintiff's interests against Defendant HMS Host.

4.    A judicial determination, to the maximum practicable extent, construing not only the meaning of *"just cause"* and *"gross misconduct"* as stated in the CBA, but a declaration of what procedure(s) are essential to the determination of such factors in the *first instance*, e.g. a *timely, noticed pre-termination hearing*, a time limit for asserting alleged misconduct, and an approximate time frame for the completion of administrative review of an action of termination (and provisions for an *expedited* review in *blatant* cases of abusive contract violations and other wrongful acts where there is *no underlying factual dispute* such as in the instant case), most particularly where the terminated worker's *stream of income is severed* while such review is pending.

Date: _____, 2008

Linda Rovai-Pickett/Plaintiff
In Propria Persona

Complaint for damages page 42 of 42

<u>**PROOF OF SERVICE**</u>

I am employed in Alameda County, California. I am over the age of eighteen (18) years and not a party to the within action. My business address is 1330 Broadway, Suite 1450, Oakland, California 94612. On April 2, 2008, I served the following document:

1.    **UNITE HERE! LOCAL 2 ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES**

I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which sent notification of such filings to the following:

**Katherine C. Huibonhoa**          **katherinehuibonhoa@paulhastings.com**

**John C. Post**                         **johnpost@paulhastings.com**

I served the foregoing document by placing a true copy thereof enclosed in a sealed envelope and served in the manner and/or manners described below to each of the parties herein and addressed as below or stated on the attached service list:

**Linda Rovai-Pickett**
**17 Queen Anne Court**
**Millbrae, CA 94030**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Oakland, California, on April 2, 2008.


                                                  /s/ Khae Saechao
                                                  Khae Saechao

LEGAL_US_W # 58462787.1