

Linda Rovai-Pickett
17 Queen Anne Court
Millbrae,  California, USA
650-873-2188
1    Plaintiff In Propria Persona

2

3              UNITED STATES DISTRICT COURT

4

5              NORTHERN DISTRICT OF CALIFORNIA

6

7    **Linda Rovai-Pickett**,                    )

8                                                )

9                                                )    **CASE No.** *C08 01625*

10                        Plaintiff              )

11                                               )

12              vs.                              )    Answer to Defendant's

13                                               )

14    HMS Host Inc.,                             )     Motion to Dismiss

15                                               )

16    HERE Local #2                              )

                                                 )    June 27, 2008

17                                               )

18    Does  1 thru 50                            )    9:00 AM

19                                               )

20                        Defendants            )    Hon. Maxine Chesney

21                                               )

22                                               )

                 _____  )

23

24

25

26

27

28

Plaintiff's answer to Motion to Dismiss  Page  1  of   17

COMES NOW Plaintiff Linda Rovai-Pickett in her own proper person sui juris appearing *under duress and coercion*, *specially and not generally herein,* to answer Defendant HMS Host's Motion to Dismiss pursuant to FRCP Rule 12(b)(6).

## *Table of Contents*

Statement of facts ……………………………………............   3

Argument & Authorities …………………………………....   4

Jurisdiction & Venue …………………………………….....   6

Federal Preemption as denial of judicial process ………..   7

Errors in Limitations argument ………………………….   11

Timely filing by Plaintiff ………………………………….   15

Plaintiff has stated valid claims ………………………….   17

## *Table of Authorities*

### *Cases*

| | | |
|---|---|---|
| *Adkins v Intl. Elec. Workers* | *769 Fed 2nd 330* ……………..… | *12* |
| *Blue Chip Stamps v Manor* | *421 US 723* …………………... | *16* |
| *Chandler v Roudebush* | *425 US 840* …………………... | *6,11,14* |
| *Cohens v Virginia* | *6 Wheat 264* …………………... | *16* |
| *Del Costello v Teamsters* | *462 US 151* …………………….. | *11,14* |
| *Fransden v Brother. RR Clerks* | *782 Fed 2nd 674* ………………... | *12* |
| *Galindo v Stoody Co.* | *793 Fed 2nd 1502* ……………… | *11* |
| *Humphrey v Moore* | *375 US 335* …………………….. | *6* |
| *In Re Marriott Corp.* | *109 Labor Arb. Rpts 689* ……… | *4* |
| *In Re Premier Chemicals* | *113 Labor Arb. Rpts. 279* ……… | *4* |
| *In Re USDOJ* | *106 Labor Arb. Rpts 1175* ……… | *4* |
| *Martin v Hunters Lessee* | *1 Wheat 504* ……………………... | *16* |
| *Vaca v Sipes* | *356 US 171* …………………….. | *6* |

# *Statement of Facts*

Just so that we are clear here, Plaintiff points out that Defendant conveniently omitted a few facts in its Motion which have a substantive effect on, and rebut, their assertions that Plaintiff has failed to state a claim, to wit:

1.  That the cumbersome and time consuming administrative process, stretching to date for *sixteen months*, and this without Plaintiff ever having had the opportunity to be heard in her own defense, has already worked considerable prejudice and injuries to Plaintiff, most especially regarding the loss of her stream of income for such a sustained period and the ancillary obligations which she has had to assume;

2.  That *Defendant* was the one guilty of dilatory tactics and delays which had led to the protracted proceedings to date and they are continuing their bad faith actions by their attempts at removal and, now, with dismissal, *before* Plaintiff has even had the opportunity to prepare and file a motion to remand;

3.  That *Defendant HMS Host* was the one who *backed out of the arbitration* when they belatedly discovered that they did indeed have legal, moral, and ethical problems stemming from their wrongful termination of Plaintiff;

4.  That not a scintilla of "just cause" ever existed for the discipline, let alone termination, of Plaintiff. Indeed the only evidence proffered by Defendant at what passed for a 'pre-termination' due process "hearing", was telling in its absence of support for Defendant and its *clear and unambiguous* backing for Plaintiff; the receipt for the transaction in which Plaintiff allegedly added a *four dollar* tip without the consent of the customer showed nothing but a line drawn through the area in which the tip would have been recorded !

5.  That this single allegation of wrongdoing *was time barred*, having occurred *thirty days prior* to the alleged "due process hearing", a hearing at which the decision to terminate Plaintiff was a *fait accompli*, as a blatant denial of industrial due process on, among

other grounds, that Plaintiff could not possibly be expected to remember the details of a single transaction over *twenty* working days past, with her average shift consisting routinely of 50, 60, or more transactions per shift. Indeed, on the date of the alleged wrongdoing, Plaintiff worked a *fourteen hour* day !

6.  In addition to (5) above, Plaintiff was denied due process with such a long delay even though there is no fixed time in the Collective Bargaining Agreement (CBA) limiting such time. There is, however, considerable arbitral support for the limiting of time which an employer has to commence the disciplinary process, with this *maxing out at ten days from the occurrence of the alleged wrongdoing (In Re Marriott Services (!) 109 Labor Arbitration (LA) Rpts. 689, In Re USDOJ 106 LA 1175, In Re Premier Chemicals 113 LA 279), this as a matter of (industrial) due process.*

This is applicable a fortiori in the instant case where the employer is making, in effect, charges of a *criminal* nature against Plaintiff. Accordingly an employer should have a vested interest in the timely handling of any such claims in order to prevent their recurrence and/or to be able to discharge an employee who has engaged in such *criminal* actions.

7.  There is likewise arbitral support for the ability of arbitrators to *infer* the existence of terms in a CBA despite their nominal absence, most particularly those which affect the constitutional issues of property rights and due process.

## *Arguments & Authorities*

For starters, if Plaintiff has failed to state the proverbial claim for relief which one might conclude should be granted by this court, then Plaintiff respectively wants to know exactly what one has to do to state a claim upon which relief might be available.

As shown in the complaint, and statement of facts herein, Plaintiff has what seems to be the clearest possible claim for relief imaginable, even a prima facie case, pursuant to either federal law, state law, or both combined given not only the unlawful acts of Defendants against her, but *how* these nefarious deeds were carried out.

Not just as a one time occurrence to a private party, but if the *manner in which* Defendants acted against Plaintiff, with Defendant HMS Host wrongfully terminating her in plain violation of what it *knew or should have known* to be applicable standards of law, with the (active) cooperation of Defendant HERE Local #2, is sustained by this court and not redressed by adequate exemplary damages, this free pass could, and doubtless would, be used by Employers, with subservient Unions not objecting, to terminate anyone for *any reason or no reason* and utterly flout and defeat any and all laws enacted by either the State or the national government for the protection of rights of workers, without any possibility of there existing any meaningful way for an injured party to redress terrible wrongs and/or to prohibit, to the maximum practicable extent, any such future actions by either the perpetrators or of others covetous of imitating their example.

## CONCURRENT JURISDICTION IN STATE COURT
### (and, arguably, <u>absence</u> of federal jurisdiction)

Plaintiff incorporates by reference, and in its entirety, the corresponding section in her Motion to Remand herein. In addition the following points and authorities are cited in support of Plaintiff's answer to Defendant's Removal Motion.

State courts today still *routinely* exercise jurisdiction over many areas rooted in federal law. Civil Rights cases come immediately to mind here (*Chandler v Roudebush 425 US 840*), as do cases involving the education of children (*FAPE, NCLB, IDEA;* also *ERISA,* and the like); indeed the putative case-in-Chief of labor cases of the type here involved, *Vaca v Sipes 356 US 171*, arose in a Missouri State court before arriving at the supreme Court (see also *Humphrey v Moore 375 US 335*); were this not so, the federal district courts would be swamped with cases and rendered wholly unable to render the justice which they were ostensibly ordained and established to provide to those litigants having claims arising solely under federal law and with jurisdiction *exclusively* conferred by Congress upon federal courts.

Thus there is no general rule regarding the exercise of concurrent jurisdiction. If there were to be one such, Plaintiff opines that it might well read:

"When a Plaintiff acting (involuntarily) in propria persona has brought a claim or claims cognizable, in whole or in part, by federal law in a State court, and most especially where the Defendant(s) are *artificial* corporate entities, and more particularly where there also arise claim(s) relying upon State law and cognizable to the State judicial power, forum selection preference shall be, in conformity to federalism in general and 9th & 10th Amendments in particular, assigned to such Plaintiff for all purposes."

## *(EXPANSIVE) FEDERAL PRE-EMPTION AS DENIAL OF JUDICIAL PROCESS*

It is bad enough that cases like Plaintiff's can be *summarily* removed from a State Court of common law general jurisdiction into a federal tribunal of *special* and *limited* jurisdiction possessing arcane rules of pleading and evidence that place even an experienced attorney, let alone a pro per plaintiff, at an *insurmountable* disadvantage, most especially where Defendants have the ability to make *three* moves (removal, answer, dismissal) *before* Plaintiff has ever had an opportunity been heard in State Court.

Further, Defendant asserts that this court must dismiss the claims as pre-empted by the *National Labor Relations Act* and its *administrative* remedies, the access to which, assuming arguendo their applicability, was lost by the *clear and unambiguous* failure of Defendant HERE Local # 2 to perform its duty of fair representation.

Thus in one fell swoop, Defendant(s) argue that *ALL* of Plaintiff's claims are *not cognizable in any court*. The meaning of this is all too clear: that employers can do *ANYTHING* and get away with *ANYTHING* with *no*

redress of grievance for any injured party, most particularly where, as here,
strong, if not compelling, public policy concerns also arise which underscore
the utter futility of the labor laws as presently constituted.

And these positions are shared by Defendant HERE Local # 2, where
one might easily conclude that they, as an ostensibly labor friendly
organization, of whatever origin would have a *vested interest* in advancing
the rights of their constituent members, are strikingly odd emanations and
should not be construed as consistent with either the agenda of the labor
movement as understood by the rank and file members of the Union or the
right to trial by jury secured by State & Federal Constitutions.

Such procedures perforce must assume the existence of *none* of the
Several States as known and understood by the Framers of the Constitution
and *not without good reasons*.

For example, the demise of the Several States was begun by the
"enactment" of the 14th "amendment", most especially if one considers its
interpretation by the supreme Court (albeit with a conspicuous absence of
any proper cases involving the issue of status and standing of the Court's
"*Ashwander Doctrine*".(see *Ashwander v TVA 297 US 288,341*).

With the purported effect of the 14th "amendment" ostensibly not only
*reversing* the relationship between its newly created "citizens" -- see Section
4 of the 14th "amendment" as to the transfer of carte blanche power to the *de
facto national* government -- and by making 'state' citizens out of *artificial*

Plaintiff's answer to Motion to Dismiss  Page 8 of  17

*corporate* entities as mentioned in Plaintiff's Motion to Remand, a whole new citizenry was thus created that took federal jurisdiction with it wherever it sojourned, the net effect of which was to expand exponentially Congress' powers pursuant to ***Article I, Section 8, Clause 17*** and/or ***Article IV, Section 3*** of the ***Constitution***.

Thus the *de facto national* government effectively destroyed the lawful de jure State Citizenry of which the Several States had theretofore been comprised, and without a sovereign body politic which could seek enforcement of the State Constitutions and laws through the judicial department of government, as attempted in the instant case, there is no more sovereignty that once existed in any of the Several States to defy encroachments by the *de facto national* government.

And there have been inroads made upon the designation and control of State borders in many States, to the point of there being no direct reference to these borders in the State Constitutions and with this critical matter left thus unprotected in the hands of unencumbered legislative discretion..

Then there was the coup de gras, the 17th "amendment", which removed the States from any participation in the *de facto national* government, thus removing several essential checks and balances in the Republican system of *limited* government ordained and established by the Framers of the Constitution and converting, sub silentio, the Nation from a republican form of government, with defined and limited powers,  to a democratic one of straight-forward, unadorned majority rule, with the

Plaintiff's answer to Motion to Dismiss  Page 9 of  17

"majority" having the sort of *unlimited* powers espoused by the Bush administration over *every "person" in the world  (Al-Odah v US 06-1696) !*

Typical of the sort of cases reaching the Court while *not* being in full compliance with *Ashwander*, Plaintiff cites *Carmichael v Southern Coal & Coke 301 US 495*, one of the first test cases of the Social Security law where, after addressing and denying the challenge by the company to the new scheme of taxation on "employers", the court said:

> "Appellees extend their attack on the statute from  the tax imposed on them as employers to the tax imposed on employees {social security -- ed}. *But they cannot object to a tax they are not asked to pay*, at least if  it is separable, ... from the tax they must pay."

That Defendant's motion could be made on such sweeping grounds of federal pre-emption is bad enough, but when further purported limitations on the right of an injured party, who is attempting to redress injuries involving rights of time and labor, in addition to the right to contract, each of these in direct support of the right to life, can be limited to administrative proceedings *without recourse* to the judicial department of government, grave questions about the validity of any such statutory schemes arise as being *Bills of Attainder* prohibited by *Article I, Sections 9 & 10* of the *Constitution of the united States {1787-1791}* -- see *Cummings v Missouri 4 Wall. 277* and denials of the right to trial by jury (*7th Amendment*, among others).

## *ERRORS IN DEFENDANT'S LIMITATIONS ANALYSIS*

Defendant asserts that the controlling statute of limitations, of which Plaintiff is allegedly in violation, is *29 USC 160(b).* Assuming arguendo that this provision might have some application to the instant case, the relevant issue would be the determination of *when the causes of action accrued.*

Plaintiff asserts that neither causes of action would have accrued, and an intriguing and more confusing issue would be the *separate* accrual of such causes of action, until the ruling of the arbitrator. As Defendant HMS Host "unilaterally" cancelled the scheduled arbitration on February 25th, 2008, Plaintiff would have had six months *from that date at least* to have filed in federal court (State court still likely being a separate matter).

*This* condition comports nicely with the ends of justice and the interests of all parties and is also consistent with the ruling of the supreme Court in the case of *Chandler, supra* where, addressing the limitations period in *Section 717 of Title VII of the Civil Rights Act of 1964,* which provides that "within a specified period *after* notice of *final* administrative action" on an employee's claim, the employee may file suit in court for violations of the act, the Court approved this provision, one which could and should easily apply in labor cases as well and for the same due process reasons.

Directly on point on the limitations issue is ***Galindo v Stoody Co. 793 Fed 2nd 1502*** wherein the court stated, first with regard to ***DelCostello v Teamsters 462 US 151*** that:

> "Although the Court in ***DelCostello*** indicated that section 10(b) requires filing of a duty of fair representation claim within six months of the action's accrual, ***it did not provide guidance in determining when a duty of fair representation claim accrues.***"

The Court went on to say that:

> "The next inquiry is whether the availability of grievance procedures and arbitration proceedings should toll the limitations period. In ***Adkins v Elec. Workers 769 Fed 2nd 330***, the 6th Circuit recently considered this issue. It noted:

> "The district court held here that, once the employees knew or should have known that a breach had occurred, their action accrued and the limitations period began to run, even if the possibility of some non judicial enforcement remained. *** although, as the jury found, here any attempt to use the grievance procedure was in fact futile, ***there was no accrual of the claim for the purposes of the limitation period so long as Plaintiffs were making a valid, timely, and non frivolous attempt to pursue their contractual remedies in reasonable good faith.***"

> "For similar reasons, the 7th Circuit recently held that the six month limitation period on a duty of fair representation claim ***is tolled*** while an employee pursues intra-union grievance procedures, ***even if those procedures are ultimately futile.*** See ***Fransden v Brotherhood of Railway Clerks 782 Fed 2nd 682.***"

> "In sum, a fair representation claim based on how a grievance is presented to an arbitrator ***accrues when the employee learns of the arbitrator's decision.***"

In the instant case, as conveniently omitted from any reference in Defendant's pleadings, ***HMS Host was the one that ran from the arbitration***, doubtless realizing that they were facing an imminent adverse ruling that might well serve as a rebuttable, if not ***conclusive***, evidentiary presumption of their guilt as charged in each and every aspect as set for by Plaintiff in the complaint.

Plaintiff also believed that she should act in the *good faith* no doubt
envisioned by the framers of applicable labor law(s), and give Defendant
HERE Local #2 a *full and fair opportunity* to discharge its duty of fair
representation and, in the bargain, exhaust administrative remedies which,
sure enough, Defendant HERE Local #2 is now asserting, elsewhere, that
Plaintiff failed to do, and without either identifying the unexhausted remedies
or accounting for the fact that Plaintiff has *NEVER* at any time had the
opportunity to be heard in her own defense, with the penultimate indignity of
having the scheduled arbitration pulled out from under her by Defendant
HMS Host's "unilateral" actions, these almost certainly with the tacit
agreement of Defendant HERE Local # 2, if not its collusive cooperation.

And this court can be sure that if Plaintiff had filed "timely" within the
purported meaning of *29 USC 160(b)*, Defendants, and each of them, would
be arguing that such filing was "premature" as Plaintiff had *NOT* exhausted
remedies and thus the cause(s) of action stated in the complaint *had not
accrued* !

Continuing, even if Plaintiff, *unrepresented* by counsel despite due
diligence in attempting to secure such representation, and being met with
what can only be described as 'systemic indifference' on the part of most
counsel contacted, or outrageous and confiscatory demands for retainers and
fees by any attorney who would take the case (and of these few, it can be said
without fear of contradiction that they would *NOT* have presented many of
the claims herein stated for fear of reprisal by the system and/or an all out
assault on their precious license to practice law -- see *Daly v US 756 Fed 2nd*

*1076, In Re Daly 169 NW 2nd xxx, Turner v American Bar Association 407 Fed. Supp. 450 (1975)*) had known about *29 USC 160(b*), she would have been unable to prepare pleadings in a timely manner, most especially in the *federal* court to which this case has been removed.

And for good reason. Even the supreme Court itself has had its share of difficulties and divisions in the area of statutes of limitations in this area -- see e.g. *Chandler*, and *Del Costello,* supra. How, then, is a lay person untrained in law, let alone the *arcane* law in use in federal court, and unable to afford, or even locate, counsel, supposed to know the law in such a complex and confusing situation ??

In addition, Defendants, most especially Defendant HMS Host have engaged in dilatory and, frankly, bad faith tactics throughout the entirety of the time of Plaintiff's wrongful termination, acts that might well have qualified for judicial sanction in another setting (see e.g. *Section 128.7 of the California Code of Civil Procedure*).

Such delays, even if for good cause shown -- and to the best of Plaintiff's knowledge no such cause was shown, demonstrate that the agreement to continuances of mediation and/or arbitration, are but examples of the collusive activities of Defendants and the sycophantic submissiveness of Defendant HERE Local # 2 to Defendant Host.

Plaintiff's answer to Motion to Dismiss  Page 14  of  17

Accordingly, and with Defendants, and each of them, being fully represented by licensed, trained counsel, any and all such delays by Defendants (see Declaration of Plaintiff), even if for a good cause *which has yet to appear*, should be treated as extensions of the statute of limitations, most particularly if *29 USC 160(b)* is held to be applicable in the instant case, for the purposes of *equitable tolling*, a strong public policy in favor of litigation on the merits of a case (most especially where, as here, there are issues affecting the rights of *virtually every employee* and the protections supposedly afforded them by law and the circumstances under which these protections can or could be *unilaterally extinguished* by wrongful terminations of the sort at issue), absence of any prejudice to *artificial*, corporate defendants, and consistent with the principles of justice established by the framers of the *Constitution for the united States {1787·1791}* -- see e.g. *Cohens v Virginia 6 Wheat 264, Martin v Hunter 1 Wheat 304.*

### *PLAINTIFF FILED TIMELY PURSUANT TO STATE LAW*

Plaintiff, acting with an abundance of caution, filed the instant case (No. *CGC-07-469683*) in the San Francisco Superior Court on December 4th, 2007, *less than one year* from the nominal date of her wrongful termination, yet while "active" administrative proceedings were still pending.

This was done after considerable study of the legal situation, and Plaintiff's concerns that despite not having "exhausted her administrative remedies" that any applicable statute of limitations would *NOT* be tolled, and the reasonably applicable State statute in this case was *Section 335.1 of the*

*California Code of Civil Procedure* pursuant to "personal injury" claims and its *two year* limitation, but with real concerns that a statute with a significantly lesser time would be ruled to be applicable (Plaintiff can't help but note sardonically here the *significantly longer* statutes of limitations afforded *artificial* corporate entities in the areas of enforcement of written contracts, at least *four years*, and the seemingly unlimited time afforded the *de facto* taxing authorities to go after erring "taxpayers", nominally *seven years*, but who really knows ?).

Plaintiff opines that it was just these types of matters that prompted *Justices Blackmun, Brennan*, and *Douglas*, dissenting in *Blue Chip Stamps v Manor Drug Stores 421 US 723*, to express their concerns over the ever creeping encroachment of favoritism to *artificial* corporate entities, o they of the *omnipresent powerful lobbies* in the halls of Congress and elsewhere, when they said:

> "Today the Court (en)graves into stone *Birnbaum's arbitrary* principle of standing. For this task, the Court, unfortunately, chooses to utilize three blunt chisels: (1) reliance upon the legislative history of the 1933 and Securities Acts, conceded as inconclusive in this particular context; (2) acceptance as precedent of two decades old lower court decisions following a doctrine never before examined here ***. In so doing, the Court exhibits a *preternatural solicitousness for corporate well being* and a seeming callousness toward the investing public and quite out of keeping, it seems to me, with our own traditions and the intent of the securities laws."

## *PLAINTIFF HAS ASSERTED VALID CLAIMS*

Contrary to the positions of Defendants, Plaintiff has asserted valid claims against each of them. Certain of these virtually state a prima facie case for relief QED: wrongful termination, denial of due process; some will be supported by direct testimony of witnesses having relevant supporting information, such as disparate treatment, retaliatory discharge, and anti-whistle blowing and some of these, will, of necessity, need supplementing via the discovery process, but to dismiss any of these without such opportunities, and in the teeth of the powerful policy concerns arising herein is to further sanction the lawless, irresponsible, intimidating, and unjust behavior, most especially of a powerful corporate employer fully exploiting their superior position in a contract of adhesion. Against those pernicious doctrines, this court should resolutely set it's face.

Linda Rovai-Pickett
Plaintiff/In Propria Persona