Linda Rovai-Pickett
17 Queen Anne Court
Millbrae, California, 94030
650-873-2188

Plaintiff In Propria Persona/Sui Juris

*FILED*

APR 23 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Linda Rovai-Pickett,** | ) |
| | ) |
| | ) **CASE No.  C 08 01625** |
| Plaintiff | ) |
| | ) ***Motion to Remand*** |
| | )    28 USC 1447 |
| vs. | ) |
| | ) (Case No. ***CGC 07-469683*** |
| HMS Host Inc. | ) |
| | )   in the San Francisco |
| HERE Local #2, | ) |
| | )   Superior Court) |
| | ) |
| Does  1 thru 50 | )  Date: _JUNE 6th 2008_ |
| | ) |
| | )  Time: __9:00 AM__ |
| Respondents | ) |
| | )  Hon. Maxine Chesney |
| | ) |
| | ) |

COMES NOW Plaintiff Linda Rovai-Pickett, a lawful de jure jus sanguinis and jus soli Citizen of California , appearing *specially* and not generally herein, to move the court to remand the instant case back to the San Francisco Superior Court due to various jurisdictional, and other, factors as hereinafter set forth.

## *Table of Contents*

Failure to establish Federal Jurisdiction ……………………… 3

Federalism & Concurrent Jurisdiction ……………………. 5

Issues arising pursuant to 'federal question' jurisdiction …….. 11

Prejudice to Plaintiff in Federal Court ……………………… 13

Unconstitutionality of 28 USC 1441 ………………………. 18

Right to Assistance of Counsel ……………………………… 21

## *Table of Authorities*
### *Cases*

| | | |
|---|---|---|
| *Al-Odah v US* | *06-1696* | *19* |
| *American Ins. v Canter* | *1 Peters 511* | *15* |
| *Ashwander v TVA* | *297 US 288* | *13* |
| *Balzac v Porto Rico* | *258 US 298* | *15* |
| *Bank of Augusta v Earle* | *13 Peters 519* | *4* |
| *Bank of Columbia v Okely* | *4 Wheat 235* | *12* |
| *Bank of US v Deveaux* | *5 Cranch 61* | *4* |
| *Buck v Bell* | *274 US 200* | *13* |
| *Cary v Curtis* | *3 Howard 236* | *15* |
| *Colgate v Harvey* | *296 US 404* | *18* |
| *DeLima v Bidwell* | *182 US 1* | *15* |
| *Douglas v California* | *372 US 353* | *20* |
| *E.C. Knight v US* | *156 US 1* | *9* |

*Elliott v Swartout*                    *10 Peters 137 ................... 16*
*Erie RR v Tompkins*                    *304 US 64 ...................... 13,16*
*Flemming v Nestor*                     *363 US 603 ................... 13*
*Friedman-Marks v US*                   *301 US 63   .................... 11*
*Garcia v San Antonio*                  *469 US 528 ..................... 9*
*Glidden v Zdanok*                      *370 US 530 ................... 13*
*Griswold v Connecticut*               *381 US 479 ................... 18*
*Grossman, Ex Parte*                    *267 US 87 .................... 13,14*
*Hale v Henkel*                         *201 US 43 ................... 16*
*Hayburn's Case*                        *2 Dallas 409 ................. 15*
*Hepburn v Ellzey*                      *2 Cranch 445 ................ 15*
*Lingle v Norge*                        *486 US 399 ................... 5*
*Louisville, C&C RR v Letson*           *2 Howard 497 ................ 7*
*McCardle, Ex Parte*                    *7 Wall. 506 ................... 16*
*Martin v Hunters Lessee*               *1 Wheat 504 ................. 15*
*Mattox v US*                           *156 US 237 ................... 13,14*
*Meador, In Re*                         *16 Fed. Cases 1292 ......... 12,16*
*Natl. Mutual Ins. v Tidewater*         *337 US 582 ................... 13,18*
*N. J. Steam v Merchant's Bank*         *6 Howard 344 ................ 10*
*NLRB v Jones & Laughlin*               *301 US 1 ..................... 9,19*
*Northern Pipe. v Marathon Oil*         *458 US 50 ..................... 13*
*Palmore v US*                          *411 US 389 ................... 6,15*
*Rescue Army v Muni. Court*             *331 US 549 ................... 18*
*Scott v Sandford*                      *19 Howard 393 ................. 4*
*Sheldon v Sill*                        *8 Howard 441 ................ 15*
*Steward Machine v Davis*               *301 US 548 ................... 11*
*Strickland v Washington*               *466 US 668 ................... 21*
*Swift v Tyson*                         *16 Peters 1 ................... 16*
*Thompson v Utah*                       *170 US 343 ................... 14*
*Turner v ABA*                          *407 Fed. Supp 450 .......... 21*
*US v Cruikshank*                       *92 US 542 ................... 18*
*US v Darby*                            *312 US 100 ................. 9*
*US v Hudson*                           *7 Cranch 32 ................. 16*
*US v Lopez*                            *514 US 549: ................. 9*
*Vaca v Sipes*                          *356 US 171 ................... 5*
*West Coast Hotel v Parrish*            *300 US 379 ................... 9,11*
*Wickard v Filburn*                     *317 US 111 ................... 9,13*
*Williams v Florida*                    *399 US 78 ................... 14*
*Yick Wo v Hopkins*                     *118 US 356 ................. 15*

## *FAILURE TO ESTABLISH FEDERAL JURISDICTION*

Plaintiff notes at the outset that Defendants, and each of them, complained that she had not served the 'proper' Defendant, "*Bay Area Restaurant Group*" (BARG) an entity of whom Plaintiff was allegedly an "employee", albeit unbeknownst to her for a *quarter of a century*, and requests more info about BARG

Thus Plaintiff does not know what sort of entity Bay Area Restaurant Group purports to be, from what authority its existence emanates, or what its alleged nexus to the instant case is. This lack of pleading violates the first principles for invoking the power of a court of *limited and special* jurisdiction in that each and every fact essential to the court's jurisdiction must *affirmatively* appear on the record to give the court jurisdiction. Likewise, Plaintiff is puzzled by Local 2's assertion that it is a "labor organization under federal law", which bare description does not seem to qualify Local 2 to invoke the jurisdiction of this court (see e.g. *Scott v Sandford 19 Howard 393, Bank of Augusta v Earle 13 Peters 519, Bank of the United States v Deveaux 5 Cranch 61*), and this does not even consider whether the *de facto national* government could create *artificial* corporate entities, most especially with the view in mind of enabling them to oust the State Courts, and the judicial power thereof, and thus remove these protections from the Citizens of the Several States, who just also happen to comprise "We the People", "*Our* posterity", and the sovereign body politic of this Nation & Republic.

## *FEDERALISM & CONCURRENT JURISDICTION*

Plaintiff specifically cited *__Section 11__* of the *__Judiciary Act of 1789__* in her complaint in support of at least the concurrent jurisdiction of the State Court over the subject matter of the instant case. Further, the case-in-chief in the area of management-labor relations, *__Vaca v Sipes 356 US 171__*, cited by Defendants in their pleadings, in addition to being a sort of latter day *Marbury v Madison*, is an opinion by Justice Byron White, one of the 'Nine Old Men' who was not only *not* known for being reversed, or even modified, but one who authored many opinions in labor law cases, arose directly from a Missouri *State court* wherein proceedings were held without apparent objection from any of the parties; indeed, this issue was not even raised in *Vaca* for decision.

Likewise, *__Lingle v Norge 486 US 399__*, a unanimous decision by the supreme Court, does *not* provide the comfort or support sought by Defendants, as it specifically held that the state law tort raised in that case, and as a general rule also, was *not* preempted by federal law, most particularly where no interpretation of the CBA was necessary to the case.

Plaintiff has raised several claims of the type *not* dependent upon any such interpretation of the CBA (wrongful termination, negligent infliction of emotional distress, defamation of character, failure to perform duty of fair representation, denial of due process) and stands fully prepared to file an amended complaint stating other such claims as well.

In addition, there is no prophylactic rule formulated in any of the Court's decisions which would *require* a case such as this to be heard in federal court. Indeed, the language of *28 USC 1441(c)* confirms that a case can be remanded to State Court.

And the supreme Court itself has recognized the long history of concurrent jurisdiction, notably in its decision in ***Palmore v US 411 US 389***, where Justice White, speaking for the Court said:

> "That body (Congress --ed) was *not* constitutionally required to create inferior *Article III* courts to hear and decide cases within the judicial power of the United States, including those *criminal* cases arising under the laws of the United States. Nor, if inferior courts were created, was it required to invest them with *all* the jurisdiction it was authorized to bestow under *Article III*. \*\*\* Congress plainly understood this, for until 1875 (*after* the 'enactment' of the 14[th] "amendment" -- ed) Congress refrained from providing the lower federal courts with general federal question jurisdiction. Until that time, the *state courts* provided the *only forum* for vindicating many important federal claims. Even then, with exceptions, the *state courts remained the sole forum* for the trial of federal cases not involving the required jurisdictional amount, and for the most part *retained concurrent jurisdiction* of federal claims properly within the jurisdiction of the lower federal courts."

Accordingly, the *norm* for the hearing and decision of federal questions was in the State courts. Only in recent times did Congress begin to enact legislation giving subject matter jurisdiction to the lower courts in cases arguably of the type here under discussion, and then not *exclusive* jurisdiction.

As to Defendant's assertions pursuant to the "supplemental jurisdiction" of this court that "considerations of convenience, judicial economy, and *fairness to the (corporate --??) litigants* (!)" favor this court exercising jurisdiction over the entirety of the complaint, the *same argument* can be made, compellingly and *consistently* with the Constitution, for the *State* court to exercise jurisdiction in just such a fashion !

Further, this sort of expropriation of the judicial department of State government is consistent with the recent historical trend to favor corporations as against the sovereign body politic of this Nation and Republic, typified by corporations claiming, unsuccessfully, in earlier times and different circumstances, that they could not be sued in *Federal* Court pursuant to the 'diversity clause' of *Article III* (*Louisville, Cincinnati & Charleston RR v Letson 2 Howard 497*) and then seeking the protection of the national government from State "interference" by the expedient of the enactment of the 14th "amendment". In support of this assertion, the following excerpt is offered:

> "Greater centralization was intended to serve another purpose. Complaints of businesses, particularly railroads, against regulations and restraints imposed upon them by state legislatures, were beginning to pour into Washington. The new industrialists wanted protection for the future in the *special privilege* and *enormous profits that they could secure only in disregard of the interests and welfare of a public that could not always be ignored while it controlled state legislatures*. Though this was *not* generally discussed (! -- ed), some of the framers and supporters of the 14th amendment undoubtedly hoped to make it, as it later became, a *national* bulwark of business against state regulation.
>
> In arguing the case of *Santa Clara County v SP Railroad* in 1882, Roscoe Conkling (*Tammany Hall* stooge and noted 'radical republican' -- ed), *** claimed that the amendment was intended to provide corporations with

"congressional and administrative protection against invidious and discriminating state and local taxes ... and oppressive and ruinous rules ... applied under state laws". *** In short, corporations were to be protected by Congress against regulation or interference by states. *Open avowal of this motive would have defeated the amendment*.

"*The Critical Year* (1866)" page 218
By Howard K. Beale
Harcourt, Brace (1930)

And Defendants fears of federal law not being enforced in State court are without merit, most especially where they are fully represented by licensed, trained counsel who could readily pounce upon any alleged error by the State judge and seek immediate interlocutory remedies for any such perceived impropriety.

Defendants have cited several other cases in support of their assertion of federal jurisdiction and removal to federal court that do tend to suggest that Section 301 of the LMRA has a considerable, if not *absolute*, preemptive authority over state common law actions. While none of these decisions has ruled against the exercise of the concurrent jurisdiction of the State Court, questions fairly arise about the extent of Congress' Interstate Commerce Clause powers to achieve the effect of completely *destroying* the common law jurisdiction of the State Courts as specifically enumerated, in the instant case, in *Article VI* of the *California Constitution (1849)*.

Duly noted is that this sweep of Congressional Interstate Commerce power was only achieved, via judicial activism, nay *amendment*, with the supreme Court under the *extreme duress* of the onslaught of New Deal fascist forces and the threat of FDR's infamous court packing plan, to extend the scope of the Commerce Clause, theretofore correctly decided in *E.C. Knight v US 156 US 1*, in decisions such as *NLRB v Jones & Laughlin Steel 301 US 1, West Coast Hotel v Parrish 300 US 379, US v Darby 312 US 100, Wickard v Filburn 317 US 111* and on and on to the point that, as stated by Justice Thomas in his concurrence in *US v Lopez 514 US 549*:

> We have said that Congress may regulate not only Commerce ... among the Several States, but also *anything* that has a "substantial effect" on such commerce. This test, if taken to its logical extreme, would give Congress a "police power" over *all aspects* of American life. ***" (and see the prescient dissent of the Four Horsemen in *Jones & Laughlin*, infra that foreshadowed exactly this situation ! -- ed)

And in the case of *Garcia v San Antonio 469 US 528*, we find further concern on the part of the supreme Court regarding federalism and State's rights:

> "In contrast, the Court today propounds a view of federalism that pays only lip service to the role of the States. Although it says that the States "unquestionably do `retain a significant measure of sovereign authority,'" ante at 549 (quoting EEOC v. Wyoming, supra, at 269 (POWELL, J., dissenting)), it fails to recognize the broad, yet specific areas of sovereignty that the Framers intended the States to retain. Indeed, the Court *barely acknowledges that the Tenth Amendment exists*. That Amendment states explicitly that "the powers not delegated to the United States . . . are reserved to the States."

> The Court recasts this language to say that the States retain their sovereign powers only to the extent that the Constitution has not *divested* them of their original powers and *transferred* those powers to the (*de facto* -- ed) Federal (*National* -- ed)) Government.

This rephrasing is not a distinction without a difference; rather, it reflects the Court's *unprecedented view that Congress is free under the Commerce Clause to assume a State's traditional sovereign power, and to do so without judicial review of its action*. Indeed, the Court's view of federalism appears to relegate the States to precisely the *trivial* role that opponents of the Constitution feared they would occupy."

"Although the Court's opinion purports to recognize that the States retain some sovereign power, it does not identify even a *single* aspect of state authority (or *individual freedom* -- ed) that would remain when the Commerce Clause is invoked to justify federal regulation. In *Maryland v. Wirtz, 392 U.S. 183 (1968)*, overruled by National League of Cities and today reaffirmed, the Court sustained an extension of the FLSA to certain hospitals, institutions, and schools. Although the Court's opinion in Wirtz was comparatively narrow, Justice Douglas, in dissent, wrote presciently that *the Court's reading of the Commerce Clause would enable the National Government [to] devour the essentials of state sovereignty*, though that sovereignty is attested by the Tenth Amendment.

Today's decision makes Justice Douglas' fear once again a realistic one." (me, too !! -- ed).

*Justices O'Connor, Powell, Rehnquist, and CJ Burger dissenting*
(even the proverbial 'donut' understood this argument !)

How such a mega expansion of congress' commerce clause powers (remembering that these commerce powers are "closely associated with *Admiralty & Maritime* jurisdiction" -- *New Jersey Steam v Merchant's Bank 6 Howard 344*, -- a "jurisdiction foreign to our Constitution and unacknowledged by our laws" (*Declaration of Independence (1776)*) could accrue *without* the invocation of the *Article V* amending process is a question that should be of great interest to all Americans and one in need of review and decision.

## *ISSUES ARISING PURSUANT TO DEFENDANTS ASSERTION OF "FEDERAL QUESTION" JURISDICTION*

Plaintiff, having filed in State court had neither need nor requirement to cite any such "federal question" jurisdiction as invoked by Defendants in their summary removal of the case.

For the record here, let it be said that Plaintiff *denies that her job was involved in any way with, or has any effect upon, interstate commerc*e, most especially as Congress' Commerce Clause powers were delineated by the supreme Court in cases such as *Knight,* supra.

Defendants, on the other hand, must be held, pursuant to their *burden of proof as the moving party*, to have asserted such a nexus as an *essential* element in support of federal (*national* ??) jurisdiction.

In this regard, Defendants are relying, perforce, on decisions of the supreme Court such as *NLRB,* supra, *Steward Machine v Davis 301 US 548, Friedman-Harry Marks Clothiers v US 301 US 73, Wickard,* supra and *West Coast Hotel,* supra, with all of these cases except *Wickard* being 5-4 decisions which totally reformulated and *exponentially expanded* Congress' Interstate Commerce powers as much, if not more, than the enactment of an amendment, in accordance with *Article V* of the *Constitution*, would have done, with the latter at least being the pro forma method by which such a change could have been effected.

And this Constitutional deficiency, along with issues of federalism pursuant to the *10th Article of Amendment*, the reservation of rights to the people pursuant to the *9th Article of Amendment,* and issues arising pursuant to *Article I, Sections 9* and *10* pursuant to Bills of Attainder and *Article III* questions of jurisdiction and venue, serve to distinguish, on Constitutional grounds, the instant case from each and every decision cited by Defendants in their moving papers, which decisions rely, in whole or in substantive part, on due process claims, usually those of the 5th Amendment as *purviewed* through Section 1 of the 14th "amendment", a constitutional provision whose pedigree is of highly dubious constitutional imprimatur.

This is fully in accordance with the "***Ashwander Doctrine***" of the supreme Court of the united States as promulgated in ***Ashwander v TVA 297 US 288,341***), most particularly 'Rules' 2 and 3 which state, in seriatim, that:

2.    "The Court will not anticipate a question of Constitutional law *in the advance of the necessity of deciding it*. It is not the habit of the Court to decide questions of a Constitutional nature *unless absolutely necessary to a decision of the case*."

3.    "The Court will not formulate a rule of Constitutional law *broader than is required by the precise facts to which it is to be applied*.

Plaintiff notes particularly that all of the above cases except, again, *Wickard*, involved *artificial* corporate entities petitioning the Court for relief, which entities *lacked* status & standing to assert many of the protections afforded State Citizens by not the ***Constitution for the united States {1787-1791}***, but their individual State Constitutions as well, most especially here in California, ***Article I, Section 12*** of the ***Constitution of 1849*** dealing with the *subservience of the military power to the civil power*.

In a further note on *Wickard*, supra, it seems that Respondent Roscoe Filburn brought himself "voluntarily" within the scope of regulation of the Secretary of Agriculture by accepting federal subsidies pursuant to his farm land and farm operation and thus "subjected himself to compulsion" (***Bank of Columbia v Okely 4 Wheat. 235, In Re Meador 16 Fed. Cases 1292***).

In addition, Plaintiff relies upon the clear and compelling dissent of the *'Four Horseman'* in each of the above cases, sans ***Wickard***, most particularly those in ***NLRB*** and ***Steward Machine***, supra, incorporated by reference herein, which are sound expositions of the Constitutional principles ordained and established by the framers of that august Instrument.

Continuing on the issues of jurisdiction & venue, and the determination of rights, and the nature thereof, pursuant to statutory schemes enacted by the legislative department of government, Plaintiff asserts that any test regarding the 'remedies' available to vindicate rights secured by the Constitution and further protected by legislative action, should bear fully in mind the *original intent*, most particularly regarding *judicial process*, of the framers of the Constitution - see e.g. ***Ex Parte Grossman 267 US 87,*** ***Mattox v U.S. 156 US 237***.

## *PREJUDICE TO PLAINTIFF IN FEDERAL COURT*

Plaintiff, appearing in propria persona is at enough of a disadvantage as against *fully armed and represented* adversaries, most particularly where, as here, it seems that Union and Company have united against her interests, without the additional burden of being hailed into federal court and a jurisdiction that is likely to be far more friendly to *artificial corporate entities* and difficult for Plaintiff to prosecute her case.

Even 'getting up to speed', so to speak, in the area of State judicial practices is quite an undertaking. Having to repeat the exercise in the area of federal jurisprudence, with it's many twists, turns, and arcane areas of law (***Erie RR v Tompkins 304 US 64***, ***Natl. Mutual Insurance v Tidewater Transfer 337 US 582, Northern Pipeline v Marathon Oil 458 US 50, Flemming v Nestor 363 US 603, Wickard v Filburn 317 US 111, Glidden v Zdanok 370 US 530, Buck v Bell 274 US 200*** and the like, not to mention the study of federal civil procedure and rules, and especially with the ***short time frame within which these areas, and others, have to be digested and mastered***, places Plaintiff in a ***manifestly untenable*** position and would, in all probability, bring about a situation where the ***clearest*** violations of Plaintiff's rights, not to mention the public policy of California and, by extension, the united States, would have been violated in so egregious a manner that Defendants, and each of them, could thus ***routinely*** flout State and Federal laws in the area of management-labor relations ostensibly enacted to protect the rights of workers in a variety of situations without fear of consequences, and thereby utterly defeat the intent of the lawmakers, thus relegating workers to non-entities without any remedies '***having no rights that the employer need respect***'.

And just a few obvious differences, based on a scan of the Federal Rules of Civil Procedure (FRCP), that would be ***severely, if not irreparably*** prejudicial to Plaintiff interests and rights and provide unwarranted advantages to Defendants, and are set forth, to wit (***NOT*** an exhaustive list):

1.  FRCP 48: That barring a highly unlikely stipulation, Plaintiff to prevail in her civil case, would be compelled to achieve a ***unanimous*** jury verdict from, in all likelihood, twelve jurors (although there are provisions in Rule 48 for less than twelve which would raise issues of the first impression about the jurisdiction and venue of the federal court (see e.g. ***Thompson v Utah 170 US 343*** , ***Williams v Florida 399 US 78*** and Plaintiff's right to a common law remedy (see e.g. ***Grossman and Mattox,*** supra)).

    By comparison, in State court, Plaintiff would need only a verdict of 9-3, a much more manageable task and one consistent with the common law upon which the Nation, Republic, and State of California were founded (see e.g. ***Report on the Civil & Common Law 1 Cal. 589***).

2.  FRCP 47: That a 'class' of jurors can be excused by the trial judge if they are "disruptive", with this term being ***undefined*** in Rule 47, or anywhere else to Plaintiff's knowledge, thus leaving in the hands of the judge *total* and, apparently, ***unreviewable*** power to excuse jurors who might be construed, subjectively, to be "disruptive" in that they might actually be inclined to enforce the common law against Defendants and bring in a verdict for Plaintiff;

    Is this the sort of situation envisioned by the supreme Court of the united States in ***Yick Wo v Hopkins 118 US 356*** when they said that:

    "For the very idea that ***one man may be compelled to hold his life***, or the means of living, or any material right essential to the enjoyment of life, ***at the mere will of another*** seems intolerable in any country where freedom prevails, ***as being the essence of slavery itself.***"

3.  ***28 USC 1861*** et seq.: Qualifications of jurors limited to those who are United States citizens, this in ostensible pursuance of 8 USC 1401(a) and/or Section 1 of the 14th "amendment", which citizens do ***not*** have to be (and in Plaintiff's view are not) State Citizens, those having common background, experiences, and like status and standing of Plaintiff and who would thus comprise the peers of Plaintiff from whom the jury pool should be drawn.

Motion to Remand Page 15 of 22

4.    Questions about the conferring of and/or maintaining of, *Article III* jurisdiction of the District Court. With Plaintiff entitled, as a State Citizen, to invoke the judicial power of California and/or the united States, there exists good reason to question whether the District Court has such jurisdiction or is even capable of receiving or maintaining it.

If in fact the district court is but an *Article I* legislative tribunal carrying out non-judicial functions, an open question in view of the decisions of the supreme Court (see e.g. *American Insurance v Canter 1 Peters 511, Hepburn v Ellzey 2 Cranch 445, Hayburn's Case 2 Dallas 409, DeLima v Bidwell 182 US 1, Balzac v Porto Rico 258 US 298, Tidewater*, supra) it cannot receive the judicial power of the united States at all.

And even assuming arguendo that the district Court is an *Article III* Court, there is nothing to suggest that it would have to be invested with, or be able to retain, the judicial power of the united States and/or subject matter jurisdiction over a given class or classes of suits (see *Cary v Curtis 3 Howard 236, Sheldon v Sill 8 Howard 441, Palmore v US 411 US 389;* but see contra, *Martin v Hunter's Lessee 1 Wheat 304, Elliott v Swartout 10 Peters 137* and the cogent dissent of Justice Story in *Cary*, supra).

And for a striking example of congressional chicanery in divesting the judicial department of jurisdiction, one has to look no farther than *Ex Parte McCardle 7 Wall. 506*, a case well known and highly regarded, if not by FDR himself, then by his minions, as worthy of emulation for doing the same sort of thing with regard to their New Deal machinations to break the "deadlock" with the supreme Court and the *Four Horsemen*. See also *26 USC 6305, 26 USC 7421, Real ID Act of 2005 Section 102.*

5.    That there is, evidently, *no federal general common law* in either civil or criminal cases (*Erie*, supra, *U.S. v Hudson 7 Cranch 32*) which would seem to emphasize the *extraordinary* nature of federal jurisdiction and its *unsuitability* for cases involving rights of State

Citizens, most especially as against the claims of ***privileges*** of ***artificial*** government created entities who have ***no rights*** secured by the Constitution (see e.g. ***Hale v Henkel 201 US 43***).

While viewing ***Erie*** as a highly questionable decision, especially given the circumstances surrounding that case, until such time as it is modified or reversed it would appear to be controlling law in this area, despite the better analysis in ***Swift v Tyson 16 Peters 1*** in Justice Story's majority opinion.

Accordingly, with these facts firmly in mind and with further concern that the alleged federal causes of action could be defeated by a jurisdictional challenge emanating from either side testing the constitutionality of the *Wagner Act*, the *Federal Labor Relations Act*, and their statutory progeny, Plaintiff opted to file, as was and is her right, in the State Court ***wherein she could reach the judicial power*** and rely on State causes of action in any such event, for otherwise with the failure of the federal causes of action, the "supplemental" juris-diction of the federal court would be dissolved and, not having filed a complaint in the State Court and with ***the running of the statute of limitations***, Plaintiff would be left ***without a remedy*** for the egregious wrongs committed against her by Defendants.

As a State Citizen, and with the concurrent jurisdiction of the State court, fully consistent with ***Section 11*** of the ***Judiciary Act of 1789*** and decisions of the supreme Court of the united States (see e.g. ***Vaca***, supra), forum selection should be construed in favor of Plaintiff, most especially with ***no known prejudice*** occurring to Defendants (and if such alleged prejudice should occur, Defendants have the benefit of representation of counsel to redress the same in a timely fashion).

In addition in the instant case, Plaintiff will be *irreparably* prejudiced by permitting the removal to federal court as William Henshall, her knowledgeable friend and counsel who has supported her from day one of her wrongful termination, who has carefully researched the law, prepared documents and pleadings, met with agents of Defendant HERE along with Plaintiff to discuss issues and matters of law arising in this case, *cannot gain entry into the federal court for any purpose*, including testifying as a witness, offering assistance, or even simply observing the proceedings, due to a perceived lack of "qualifying ID" which would permit his entry into the federal building, let alone this court (see Supplementary Declaration of William Henshall for issues and authorities on this subject).

## *UNCONSTITUTIONALITY OF 28 USC 1441*

In addition to what has already been said about removing the instant case to federal court, *28 USC 1441*, the statute, ostensibly permitting such *summary, ex parte* action, not only deprives Plaintiff of notice and opportunity to have her issues heard in State Court, it also ousts the State court of all jurisdiction to decide its own jurisdiction, most especially in a case wherein Plaintiff has relied, in whole or in part, on her *State* Citizenship to assert claims against Defendants.

Such a denial may well be also an abrogation of the rights of one of the Several States that is preserved and protected by the 10th Article of Amendment and could further be a denial of rights reserved to the people pursuant to the 9th Article of Amendment as well (and this would seemingly present a much more cogent case than a mere "zone of privacy" contention such as was decided in ***Griswold v Connecticut 381 US 479***).

The supreme Court recognizes that rights may be of a different type and origin depending upon whether one is a United States citizen or a State Citizen (see e.g. ***Colgate v Harvey 296 US 404***, ***U.S. v Cruikshank 92 US 542)*** and that a court has the power to determine its own jurisdiction, albeit in a 14th "amendment" context (see e.g. ***Rescue Army v Municipal Court 331 US 549***) which Plaintiff believes applies, a fortiori, in the instant case with the sovereignty of the State in general, and its judicial branch in particular, being under attack by the ***de facto national*** government and ***having no way*** to exercise either its rights secured by the ***10th Article of Amendment*** or Plaintiff's rights secured by a host of Constitutional provisions.

These are just the sort of constitutional deficiencies cited by President Andrew Johnson in his heroic and forthright vetoes of, among other legislative legerdemain of the runaway, radical 39th Congress, the Civil Rights Act of 1866 (***Messages & Papers of the Presidents Vol. 5 pages 3603-11***) and the Reconstruction Act of 1867 (***Messages & Papers of the Presidents Vol. 5 pages 3696 et seq.***) both incorporated herein by reference,

which acts have had the cumulative effect, over time, of not only *reversing* the relationship between the Citizen and government, but spawning the never ending states of "emergency" essential to the *perpetual* exercise of *federal regional martial law* (see e.g. ***Essays on Emergency Powers, Congressional Record Senate Vol 119 Part 129*** ***93rd Congress 1st Session Nov. 19, 1973,*** and the claims of the Bush administration in the pending case of ***Al Odah v US 06-1696*** in the supreme Court of the united States if any doubt remains as to whether the *de facto national* government thinks that there are any Constitutional limits on its powers).

Equally to the point, this sort of result is *exactly* what was envisioned by the Four Horsemen in their dissent in ***NLRB v Jones & Laughlin Steel*** supra, wherein they said, without benefit of a crystal ball, that:

"It is gravely stated that experience teaches us that if an employer discourages membership in any organization of the kind in which employees can participate, and which exists for the purposes in whole or in part of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work, discharge may follow and this in turn may lead to a strike, and as the outcome of a strike there may be a block in the stream of interstate commerce. Therefore, Congress may inhibit the discharge ! Whatever effect any cause of discontent might ultimately have upon commerce is *too far indirect to justify congressional regulation. Almost anything − marriage-birth-death − may in some fashion affect commerce"*

and to sanction this 'indirect effects on interstate commerce' test as the "standard" for the constitutionality of congressional enactments would be to bring *everything* within the scope of the commerce clause, a result that could not possibly have been contemplated by the Framers of the Constitution or consistent with the *original intent* of that august document.

# *RIGHT TO ASSISTANCE OF COUNSEL*

1
2
3
4       In addition, if Plaintiff is compelled to 'go it alone' against *artificial*
corporate defendants in this court, other questions of the first impression
might well arise as to entitlement to representation of counsel, somewhat
5       along the lines set forth by the supreme Court of the united States in *Douglas*
6       *v California 372 US 353*, albeit in a different context, about the distinctions
7       between the manifestly unjust results of litigation involving  rich and poor
8       litigants wherein Justice Douglas, speaking for the majority said:
9

10          In California, however, once the court has 'gone through' the record and denied
11      counsel, the indigent has no recourse but to prosecute his appeal on his own, as best he
can, no matter how meritorious his case may turn out to be. The present case, where
12      counsel was denied petitioners on appeal, shows that the discrimination is not between
13      "possibly good and obviously bad cases", but between cases *where the rich man can
require the court to listen to argument of counsel before deciding on the merits, but a
14      poor man cannot*. There is lacking that equality demanded by the 14th amendment where
15      the rich man, who appeals of right, enjoys the benefit of counsel's examination into the
record, research of the law, and marshalling of arguments on his behalf, while the
16      indigent, already burdened by a preliminary  determination that his case is without merit,
17      is forced to shift for himself. The indigent, where the record is unclear or the errors are
hidden, has only the right to a *meaningless* (trial -- ed) appeal, while the rich man has a
18      *meaningful* (trial --ed) appeal."
19

20
21          And any such assertions of the right to counsel should be construed to
22      mean *effective* assistance of counsel (*Strickland v Washington 466 US 668*
23      and would also necessarily incorporate arguments about the granting of a
24      *monopoly* by the government as to the "practice of law" and corresponding
25
26      obligations of those accepting a government license to provide services to the
27      public, including those in need, regardless of their circumstances and/or, as
28      an ancillary matter the impairment of obligations of contract by a State
attempting to enforce its monopoly on those contracting for services not

otherwise obtainable by one unable to afford the *extortionate* prices set by *monopoly* Bar member licensed counsel (and no such arguments as were raised in **_Turner v ABA 407 Fed Supp 450_** will be forthcoming in the instant case).

Linda Rovai-Pickett/Plaintiff
In Propria Persona/Sui Juris