Linda Rovai-Pickett
17 Queen Anne Court
Millbrae, California, USA
650-873-2188
Plaintiff In Propria Persona

FILED
08 MAY 29 PM 2:45
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **Linda Rovai-Pickett,** Plaintiff | **CASE No.** ***C08 01625*** |
| vs. | Supplementary Points and Authorities in support of Plaintiff's opposition to Defendant's Motion to Dismiss |
| HMS Host Inc., HERE Local #2 Does 1 thru 50 Defendants | Hon. Maxine Chesney June 27th, 2008 9:00 AM |

COMES NOW Plaintiff Linda Rovai-Pickett in her own proper person to assert additional points & authorities in support of her opposition to Defendant's Motion to Dismiss, to wit:

## *Table of Contents*

*Public policy considerations as basis for jury trial* ................ 4

## *Table of Authorities*

### *Provisions of Law*

***Constitution of the united States {1787-1791}***

*Article I, Sections 9 & 10* ................................ 4

*Article III, Section 2* ................................ 4

*5th Amendment* ................................ 8

*7th Amendment* ................................ 4

*9th Amendment* ................................ 4

*Declaration of Rights (1774)*

*Resolve 5* ................................ 4

*Magna Carta Articles 24,34,38* ................................ 4

*California Constitution*

*Article I, Section 3* ................................ 4

*Essays on Emergency Powers* ................................ 6

*Federal Arbitration Act 9 USC 2* ................................ 8-12

## *Table of Cases*

*Allied-Bruce Terminix Companies v Dobson 513 US 265* ........ 8-12

*Bernhardt v Polygraphic Co. 350 US 198* ........................ 11

*Boyd v U.S. 116 US 616* .......................... 8

*Brailsford v Georgia 2 Dallas 402* .......................... 4

*Cummings v Missouri 4 Wall. 277* .......................... 8

*Flemming v Nestor 363 US 603* .......................... 6

*Gregory v Ashcroft 501 US 452* .......................... 12

*Hale v Henkel 201 US 43* .......................... 7

*NLRB v Jones & Laughlin 301 US 1* .......................... 10

*Norman v B&O RR 294 US 240* .......................... 5

*Pollock v Farmers Loan & Trust 158 US 601* .................... 6

*Southland Corp. v Keating 465 US 1* .......................... 9

*Steward Machine Co. v Davis 301 US 548* ..................... 10

*US v Darby 312 US 100* .......................... 10

*Wolf v Colorado 338 US 25* .......................... 8

*Youngstown Steel v Sawyer 343 US 479* .......................... 6

## *Miscellaneous Authorities*

***Clinton Roosevelt's Communist Manifesto*** -- Josephson .......... 8

***Essay on Trial by Jury -- Spooner*** .......................... 4

***Ordeal of Edward Bushell*** -- Lehman .......................... 4

***Origins of the Federal Reserve System*** -- Livingston ................ 8

***Philip Dru Administrator*** -- House .......................... 8

***Wall Street and FDR*** -- Sutton .......................... 8

## *PUBLIC POLICY CONSIDERATIONS FORM BASIS FOR RIGHT TO TRIAL BY JURY*

That strong public policy considerations, such as the right to a trial by jury at common law stated explicitly in ***Resolve 5 of the Declaration of Rights (1774), Articles 24,34, and 38 of the Magna Carta (1215***), a document familiar to the Framers of the Constitution as the foundation document of all English liberty, provisions of the ***Constitution of the united States {1787-1791}*** such as the ***7th and 9th Amendments, Article III, Section 2, Article I, Sections 9 & 10***, and like provisions in all the Constitutions of the Several States (***Article I, Section 3 of the California Constitution (1849)***), make it abundantly clear that any legislative enactments, most especially those touching upon one's right to the fruits of one's time and labor, would have to be enacted ***consistently*** with the right to a trial by jury in order that "We the People" would in fact retain ultimate control over the government ordained and established for the benefit of "ourselves and our posterity" (see e.g. ***Brailsford v Georgia 2 Dallas 402, Essay on Trial by Jury*** by Lysander Spooner (1840), ***The Ordeal of Edward Bushell*** by Godfrey Lehman (1986)).

So far as Plaintiff has been able to discover, there has been no alteration or amendment to the Preamble to the Constitution which would make it susceptible of reading "We the Corporations", thus all the protections secured by the founding documents are, and should be, available as part and parcel of any statutory scheme enacted to secure Creator endowed rights as against usurpation by ***artificial*** corporate creatures of the (*de facto*) state.

This is most especially true in the ***de facto*** economic system in place today that has come to include, among other things, the Federal Reserve Act and it's system of Central Banking and (an all too) elastic currency, the Federal Trade Commission, and the replacement the de jure bi-metallic monetary standard with this worthless fiat currency (***Norman v B&O RR 294 US 240***, ***HJR 192***) which "elastic" currency and privatized control of the Nation's monetary system essentially were the principal causes of the Depression of the 1920s and 1930s, and this ***artificially*** induced depression was used as a vehicle to create the first of a series of ongoing and perpetual "emergencies", to exponentially expand the breadth and scope of Congress' interstate commerce powers as elsewhere set forth.

And this, combined with the overzealous and sycophantic proclivity of Congress to delegate authority to the Executive branch of government in some highly questionable practices pursuant to the doctrine of separation of powers (see e.g. ***Youngstown Steel v Sawyer 343 US 479, Essays on Emergency Powers Congressional Record Senate Vol 119 Part 129 93rd Congress 1st Session Nov. 19, 1973***) so as to permit the ***maximum possible absorption*** of powers into the ***de facto national*** government (and Executive department thereof) has had the cumulative effect of reducing, if not eliminating, the middle class and those of an entrepreneurial nature, thus ***forcing*** greater and greater numbers of Americans into the work force as workers, not entrepreneurs or owners.

Accordingly, as a mere worker, a lawful de jure State Citizen could be effectively stripped of his right to the fruits of his time and labor (***Pollock v Farmers Loan & Trust 158 US 601***) by the use of ***fictions of law*** that hold, among other things, that an ""employee" has a ***ZERO INTEREST*** in his time and labor" (House Subcommittee on Banking & Finance) thus producing the same result as in ***Flemming v Nestor 363 US 603*** wherein the supreme Court held that a recipient of social (in)security benefits did *NOT* have any right cognizable by the Constitution.

And of course without a property right, there could hardly be a right to a trial by jury or, perhaps, even to administrative process, either, with neither of these wholesale deprivations such as would offend either due process or equal protection clause of the 14*th* "amendment".

But all of this ignores the reality that the greater part of the sovereign body politic has been effectively dispossessed of it's right to own its own business, set its own hours, and do business in it's own way that once was prevalent in America (see e.g. ***Hale v Henkel 201 US 43***) by reason of the growth of corporations and their seemingly ongoing expansion and amalgamation into even larger behemoths, with but a few of the elite controlling 85+ percent of American business (see e.g. any of the works of Antony C. Sutton such as "***Wall Street and FDR***").

It is clear then, that as part and parcel of being allowed not only ***limited*** liability and ***unlimited*** life, if the additional privileges of being able, as is attempted in the instant case, to evade judicial accountability for violating the first legal principles of American jurisprudence by the simple expedient of asserting "federal preemption" to divest even the federal, let alone State, courts of jurisdiction of the plainest violations of even the lame 14th

"amendment" due process (***Wolf v Colorado 338 US 25***), not to mention the de jure due process of the 5th amendment (***Boyd v US 116 US 616***) and the even more substantive strictures of ***judicial*** process (***Cummings v Missouri 4 Wall. 277***), would be to abandon the Nation & Republic ordained and established by the Framers of the Constitution and convert it into, at best, a mere democracy with the sovereign body politic effectively removed from participation in ***all respects whatsoever***, or worse, if that's possible, into the corporate state so fervently desired by FDR and the elitist Wall Street banking cabal from the times of Alexander Hamilton Nicholas Biddle, and Clinton Roosevelt on forward (see e.g. ***Philip Dru, Administrator*** by Edward Mandell House -- New York 1912, ***Origins of the Federal Reserve System: Money, Class, and Corporate Capitalism***" by James Livingston - Cornell Press 1986, ***Clinton Roosevelt's Communist Manifesto*** by Emanuel Josephson - Chedney Press 1952).

The Supreme Court understands this all too well. In cases like ***Allied-Bruce Terminix Companies v Dobson 513 US 265***, where once again Plaintiff points out that one of the very first statements made by the court about this case was that:

"the parties ***do not contest*** that the transaction in this case, in fact, involved interstate commerce"

in contradistinction to the assertion of just the opposite by Plaintiff herein, who is contending for jurisdiction in the State court from which this case was improvidently removed.

Another troublesome decision of the Court, ***Southland Corporation v Keating 465 US 1***, was discussed at length in both sides of the ***Allied*** decision, as this decision seems to have provided the impetus for the train of thought that the Federal Arbitration Act 9 USC 2 (FAA), and especially Section 2 thereof which provides enforcement of arbitration provisions in which " a contract evidencing a transaction involving interstate commerce" is involved, was a valid act of Congress which had the clear and unambiguous result of divesting the State courts of a wide swath of jurisdiction by the use of the phrase "affecting commerce" to be construed as "normally signaling a congressional intent to exercise its commerce clause powers ***to the full***".

The opinion goes on to say that "further, this Court has previously described the Act's reach ***expansively*** (!!- ed) as coinciding with that of the Commerce Clause" and, in another revealing statement, that:

"We recognize arguments to the contrary. The pre-New Deal (!! -- ed_ Congress that passed the Act in 1925 (***long antecedent*** to the Court's judicial gymnastics in cases such as ***NLRB v Jones & Laughlin Steel 301 US 1, US v Darby 312 US 100***, and ***Steward Machine v Davis 301 US 548*** -- ed) might well have thought the Commerce Clause did not stretch as far as has turned out to be so (and what might be decided with an ***accurate*** examination of the intent of the framers of the original act, and how was the commerce clause power so greatly expanded ?? -- ed).

Continuing, the Court went on to distinguish the decision in ***Allied*** by citing its 'reasoning' in ***Bernhardt v Polygraphic Co. 350 US 198*** and to assert its denial of Respondent's position against the application of the Federal Arbitration Act by saying that in Bernhardt the FAA did not apply because there was:

"no showing that petitioner while performing his duties under the employment contract was working in commerce, was producing goods for commerce, or was engaging in activity that affected commerce, within the meaning of our decisions."

To be sure, there has been no such showing in the instant case of such a connection to interstate commerce, and Plaintiff continues to deny any such nexus.

In her concurrence, Justice ***O'Connor*** was not untroubled, as is Plaintiff in the instant case, by the failure to distinguish the application of the FAA to restricting the jurisdiction of federal courts from doing the same thing in the courts of the Several States, stating that:

"I have long adhered to the view, discussed below, that Congress designed the FAA to apply ***only*** in federal courts."

and that:

"I continue to believe that Congress never intended the FAA to apply in State courts, and that this Court has ***strayed far afield*** in giving the Act so broad a compass."

Plaintiff thus urges this court to bear in mind Justice ***O'Connor***'s view that:

"indeed we have held that "where the field which Congress is said to have preempted includes areas that have been traditionally occupied by the States, congressional intent to supersede the laws must be ***'clear and manifest***'".

The dissenters, Justices ***Thomas*** and ***Scalia***, were even more forceful about this type of, in effect, ***strict judicial scrutiny***:

"To the extent that federal statutes are ambiguous, we do not read them to displace State law. Rather, we must be "***absolutely certain***" that Congress intended such displacement before we give preemptive effect to a federal statute."

And Plaintiff wholeheartedly concurs with ***O'Connor*** when she concludes, as no doubt did ***Thomas*** and ***Scalia*** that:

"Today's decision caps this Court's effort to expand the FAA. Although each decision has built logically upon the decisions preceding it, the initial building block in ***Southland*** laid a ***faulty*** (!! --

ed) foundation. I acquiesce in today\s judgment because there is no "special circumstance" (claim by a lawful de jure State Citizen -- ?? -- ed) to overrule ***Southland***."

Coming to the dissent of Justice ***Scalia***, Plaintiff cites his statement that:

> "I shall not in the future dissent from the judgment that rests on ***Southland***. I will, however, stand ready to join four other Justices in overruling it, since ***Southland*** will not become more correct over time."

It is this chance that Plaintiff wishes to present to the Court and with the hope that this opportunity will be far more fruitful than that of the opponents of the death penalty (but for strikingly different reasons !) who have never yet had their way.

Plaintiff cites as further authority against the concept of federal preemption, and as evidence that the supreme Court well understands the doctrine of federalism and dual sovereignty upon which this nation & Republic was founded, the entirety of the majority opinion of the Court by Justice O'Connor in ***Gregory v Ashcroft 501 US 452***, a 14th 'amendment" case, it should be duly noted, and one in which Plaintiff believes that an even more cogent decision could have been reached on other and better grounds.

Need hardly it be said that, most particularly in view of the foregoing, that the public policy inherent in enacting provisions of law such as the Wagner Act, the Federal Labor Relations Act, and the like of providing protections for workers against ***artificial*** employers, and the added significance and importance to the individual in his job/career now, arguably, the most important economic asset he has, lend further support to the idea that such property rights should receive the maximum possible protection.

All the more so in the instant case, where each and every one of that administrative "protections" has utterly failed to be of any avail to Plaintiff, who was ***wrongfully*** terminated anyway and who now seeks judicial redress for the injuries she has suffered and to call Defendants to account in such a manner as to assure, to the maximum practicable extent, that such egregious acts will not be repeated by Defendants and that a precedent will be set, the deterrent value of which will estop other like minded entities from doing the same, thus for Plaintiff to do her part in seeing to it that the ***public policies behind the labor laws*** are in fact vindicated, and ***by other members of the public so affected***.

Date: ______________, 2008

Linda Rovai-Pickett/Plaintiff
In Propria Persona

Linda Rovai-Pickett
17 Queen Anne Court
Millbrae, California, USA
650-873-2188
Plaintiff In Propria Persona

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **Linda Rovai-Pickett,** | |
| Plaintiff | **CASE No.** ***C08 01625*** |
| vs. | |
| HMS Host Inc., | ***Proof of Service*** |
| HERE Local #2 | |
| Does 1 thru 50 | |
| Defendants | |

# *Proof of Service*

I an domiciled in San Mateo County, California. I am over the age of 18 and not a party to the within action. My address is: First Judicial District, P. O. Box 281676 San Francisco, California, USA. On April 24th, I served the following documents in ***Case No. 08-01625***:

Plaintiff's Supplementary Points & Authorities in Oposition to Defendant's Motion to Dismiss

on the following parties via first class mail postage prepaid at the Post Office in San Francisco, California:

Matthew Ross
@ Leonard Carder LLP
1330 Broadway Suite 1450
Oakland, California 94612
Attorney for Defendant HERE Local #2

Robert Sheeder
1445 Ross Avenue Suite 3800
Dallas, Texas 75202
Attorney for Defendant BARG and/or HMS Host Inc.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at Millbrae, California on May 28th, 2008.

William Henshall/Declarant

Francisco, California, USA




Clerk of Court
Federal District Court
450 Golden Gate Avenue
San Francisco, California 94102

RECEIVED
MAY 2 9 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA