Linda Rovai-Pickett
17 Queen Anne Court
Millbrae, California, USA
650-873-2188
Plaintiff In Propria Persona

*FILED*

*JUN 3 0 2008*

*RICHARD W. WIEKING*
*CLERK, U.S. DISTRICT COURT*
*NORTHERN DISTRICT OF CALIFORNIA*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Linda Rovai-Pickett, | ) |
| | ) |
| | ) CASE No. *C08 01625* MMC |
| Plaintiff | ) |
| | ) |
| | ) |
| vs. | ) Supplementary Points and |
| | ) |
| HMS Host Inc., | ) Authorities in support of |
| | ) |
| HERE Local #2 | ) Plaintiff's Motion to |
| | ) |
| | ) Remand |
| Does 1 thru 50 | ) |
| | ) |
| Defendants | ) |
| | ) |
| | ) |
| | ) |

*Supplementary Points & Authorities in Support of Remand Page 1 of 11*

COMES NOW Plaintiff Linda Rovai-Pickett to provide the Court, pursuant to its order of June 19th, 2008, with supplemental points and authorities in support of her Motion to Remand.

## *Table of Cases*

*Carter v Carter Coal  298 US 238* ……….……..……….…….    *4,5,6*
*Garcia v San Antonio Transit   469 US 528* ……..………….    *7*
*Natl. Mutual Ins. v Tidewater Transfer 337 US 582* ………..    *3,4*
*Shoshone Mining Co. v Rutter  177 US 505* ……..…………    *3*
*Southland Corp. v Keating 465 US 1*        ……..…………..    *9*
*US v Rhodes 27 Fed. Cases 785; Case No. 16151* ……..……..    *10*

## *Role of State Courts in Federalist System*

In addition to other ***unrebutted*** authorities supporting Plaintiff's contention for ***at least*** the concurrent jurisdiction of the State court in the instant case, the following excerpts from decisions of the supreme Court in accordance with remand to State court are offered:

> "It has never heretofore been doubted that the constitutional grant of power is broader the general federal question jurisdiction which Congress has from time to time thought to confer on the district courts by statute. In one of the landmark cases relied upon by Mr. Justice Jackson's opinion, this Court had occasion to make this distinction clear:

"By the Constitution (*Art. 3, Sec. 2*) the judicial power extends to all cases in law and equity arising under this Constitution, the laws of the United States and to controversies between citizens of different states. By *Art. IV, Sec. 3, cl. 2*, Congress is given power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States. Under these clauses, Congress might doubtless provide that any controversy of a judicial nature arising in or growing out of the disposal of the public lands should be litigated only in the courts of the United States. The question, therefore, is not one of the power of Congress, but of its intent. It has so constructed the judicial system of the United States that the ***great bulk of litigation*** respecting the rights of property, although those rights may be in their inception go back to some law of the United States, ***is in fact carried on in the courts of the several States. Shoshone Mining Co. v Rutter 177 US 505.***"

## *Natl. Mutual Insurance v Tidewater Transfer 337 US 582*

Justices Rutledge & Murphy concurring

also:

"On the other hand, some members of the convention favored a wider federal jurisdiction than was ultimately authorized. The Connecticut delegation, led by Roger Sherman, proposed that 'the legislature of the United States shall be authorized to create one supreme judicial tribunals and other tribunals as they may judge necessary for the purpose aforesaid and ascertain their respective powers and jurisdictions'. This proposal, which is not substantially different in its effect from the interpretation now urged upon us, was ***NOT*** adopted by the convention. When it became established that inferior federal courts were to be authorized by the Constitution, the limits of their jurisdiction became an issue of ***paramount*** importance. The outline of federal jurisdiction was established only after much give and take, proposal and counterproposal, and -- in the end, compromise.

The judicial power was thus *jealously guarded by the States and unwillingly granted to the national judiciary*. Only when it could be demonstrated that a particular head of jurisdiction was *acutely needed* for the purposes of uniformity and national harmony was it granted. In every State convention for ratification of the Constitution, advocates and opponents of ratification considered in detail the kinds of cases and controversies to which the national judicial power was to extend. *Each had to be justified*. Far from assuming that the judicial power could be, by any means short of constitutional amendment, extended to those cases beyond *Article III*, that Article *was subjected to severe attacks* on the ground that those powers specifically given *would destroy the State courts*."

## *Natl. Mutual Insurance v Tidewater Transfer 337 US 582*

Chief Justice Vinson & Justice Douglas dissenting

And in the *Carter Coal* decision, right at the crux of the time when the Supreme Court deviated into its unorthodox and unsupported usurpation of States Rights, at the behest of FDR and his nationalistic New Dealers, points the way toward the *sound* construction of the commerce clause, to wit:

"The power to regulate interstate commerce embraces the power to protect that commerce from injury, whatever may be the sources of the dangers that threaten it, and to adopt the appropriate means to that end. Congress thus has adequate authority to maintain the orderly conduct of interstate commerce and to provide for the peaceful settlement of disputes which threaten it. But Congress may not use this protective authority as a *pretext* for the exertion of power to regulate activities and relations within the States which affect interstate commerce only indirectly. Otherwise, in the view the multitude of indirect effects, Congress in its discretion *could assume control of virtually all of the activities of the people to the subversion of the*

*fundamental principles of the Constitution.* If the people desire to give Congress the power to regulate industries within the State, and the relations of employers and employees in those industries, they are at liberty to declare their will in the appropriate manner, *but it is not for the Court to amend the Constitution by judicial decision (exactly what happened less than a year later in the NLRB test case —ed).*"

### *Carter v Carter Coal 298 US 238*

and:

"The general rule with regard to the respective powers of the national and of the State governments under the Constitution, is not in doubt. The States were *before* the Constitution; and, consequently, their legislative powers antedated the Constitution. Those who framed and those who adopted that instrument meant to carve from the general mass of legislative powers, then possessed by the States, only such portions as it was thought wise to confer upon the federal government; and in order that there should be no uncertainty in respect of what was taken and what was left, the national powers of legislation were not aggregated but enumerated -- with the result that *what was not embraced* by the enumeration remain vested in the States *without change or impairment.*"

### *Carter v Carter Coal 298 US 238*

and:

"Every journey to a *forbidden* end begins with the first step; and the danger of such a step by the federal government in the direction of taking over the powers of the states is that the end of the journey may find the states so despoiled of their powers, or -- what may amount to the same thing -- so relieved of the responsibilities which the

*Supplementary Points & Authorities in Support of Remand Page 5 of 11*

possession of the powers necessarily enjoins, *as to reduce them to little more than geographical subdivisions* of the *national* domain. It is safe to say that if, when the Constitution was under consideration, it has been thought that any such danger lurked behind its plain words, *it would never have been ratified*."

## *Carter v Carter Coal 298 US 238*

"Much stress is put upon the evils which come from the struggle between employers and employees over the matter of wages, working conditions, right of collective bargaining, etc., and the resulting strikes, curtailment, and irregularity of production and effect on prices; and it is insisted that interstate commerce is greatly affected thereby. But in addition to what has just been said, the *conclusive* answer is that the evils are all *local* evils over which the *federal government has no legislative control. The relation of employer and employee is a local relation. At common law*, *it is one of domestic relations*. The wages are paid for the doing of local work. Working conditions are *obviously* local conditions. The employees are *not engaged in or about commerce*, but exclusively engaged in producing a commodity. And the controversies and evils, which it is the object of the act to regulate and minimize, are local controversies and evils affecting local work undertaken to accomplish that local result. Such effect as they may have upon interstate commerce, however extensive it may be, is secondary and indirect. An increase in the greatness of the effect adds to its importance. *It does not alter its character*."

## *Carter v Carter Coal 298 US 238*

Of a more recent vintage and upon the same subject:

"To leave no doubt about its intention, the Court renounces its decision in *National League of Cities* because it:

inevitably invites an unelected federal judiciary to make decisions about which state policies its favors and which ones it dislikes.

In other words, the extent to which the States may exercise their authority, when Congress purports to act under the Commerce Clause, henceforth is to be determined from time to time by political decisions made by members of the Federal Government, decisions the Court says will *not be subject to judicial review*. I note that it does not seem to have occurred to the Court that it -- an *unelected* majority of five Justices -- *today rejects almost 200 years* of the understanding of the *constitutional status of federalism*. In doing so, there is only a single passing reference to the Tenth Amendment. Nor is so much as a dictum of any court cited in support of the view that the role of the States in the federal system may *depend upon the grace of elected federal officials, rather than on the Constitution as interpreted by this Court*."

### *Garcia v San Antonio Transit District 469 US 528*

Justices Powell, Rehnquist, O'Connor & Burger dissenting

Plaintiff most emphatically agrees with the dissenters in *Garcia* when they opined:

More troubling than the logical infirmities in the Court's reasoning is the result of its holding, i.e., that federal political officials, invoking the Commerce Clause, are the *sole judges of the limits of their own power. This result is inconsistent with the*

*Supplementary Points & Authorities in Support of Remand Page 7 of 11*

*fundamental principles of our constitutional system*. See, e.g., The Federalist No. 78 (Hamilton).  At least since *Marbury v. Madison, 1 Cranch 137, 177* (1803), it has been the settled province of the federal judiciary "to say what the law is" with respect to the constitutionality of Acts of Congress.  In rejecting the role of the judiciary in protecting the States from federal overreaching, the Court's opinion offers *no explanation* for ignoring the teaching of the most famous case in our history.

and

In our federal system, the States have a major role that *cannot be preempted by the National Government*.  As contemporaneous writings and the debates at the ratifying conventions make clear, the States' ratification of the Constitution *was predicated on this understanding of federalism*.  Indeed, the Tenth Amendment was adopted specifically to ensure that the important role promised the States by the proponents of the Constitution was realized.

Much of the initial opposition to the Constitution was rooted in the fear that the National Government would be too powerful, and *eventually would eliminate the States as viable political entities*.  This concern was voiced repeatedly until proponents of the Constitution made assurances that a Bill of Rights, including a provision *explicitly reserving powers in the States*, would be among the first business of the new Congress. Samuel Adams argued, for example, that, if the several States were to be joined in:

one entire Nation, under one Legislature, the Powers of which shall extend to every Subject of Legislation, and its Laws be supreme & control the whole, the *idea of Sovereignty in these States must be lost*.

In further support of Plaintiff's position that State court is the appropriate forum in which the instant case should be heard and decided, hardly a novel concept in the supreme Court, the following citation is offered:

> "This Court has previously *rejected* the view that state courts can adequately protect federal rights only if "such courts in enforcing the Federal right are to be treated as Federal courts and subjected pro hac vice to federal limitations" … *Minneapolis & St. Louis RR v Bombolis 241 US 221*. As explained by Professor Hart:

> "The general rule, *bottomed deeply in belief in the importance of state control of state judicial procedure*, is that federal law takes the state courts as it finds them … Some differences in remedy and procedure are inescapable if the different governments *are to retain a measure of independence in deciding how justice should be administered*."

## *Southland Corporation v Keating 465 US 1*\*

O'Connor and Rehnquist JJ Dissenting

## *Jurisdiction & Venue: Article III or Article I ??*

In addition to earlier arguments made upon this subject, Plaintiff notes here that if the court is proceeding, in whole or in part, on the basis of the *fiction* of law that Plaintiff is a "United States citizen", and the essential accompanying *fiction* that such 'citizenship' is derived from Section 1 of the 14th "amendment",

then the *contemporaneous* exposition of the 13th 'amendment' by the court in the case of <u>*US v Rhodes 27 Fed. Cases 785; Case No. 16151*</u> is *directly* in point here:

> "The second section of the 13th amendment was added out of abundant (!? --ed) caution. It authorizes Congress to select, from time to time, the means that might be deemed appropriate to the end. It employs a phrase which had been enlightened by well considered judicial application. *<u>Any exercise of legislative power within its limits involves a legislative, and not a judicial question</u>*."

If this is so for the 13th 'amendment', then it necessarily applies to the 14th "amendment" with the *identical* language found in Section 5 thereof. From this it follows that Congress, in enacting legislation pursuant to these provisions of law and, very probably the interstate commerce clause as well, is at liberty to ignore the provisions of the *Constitution of the united States {1787/ 1791}* mandating a trial by jury (*Article III, Section 2, 7th Amendment*) and/or *judicial* process (*Article I, Section 9*) as a key element in any such enactment.

And there might be nothing amiss about this, as Congress would possess such powers over either *artificial* entities of government creation or those making a *knowing* and *voluntary* entry into a regulated enterprise, such as an import-export business,

*Supplementary Points & Authorities in Support of Remand Page 10 of 11*

a *clear* and *unambiguous* matter of exclusive federal cognizance (see e.g. ***Murray's Lessee v Hoboken Land & Title 18 How. 272***).

And we should not lose sight of the fact that if Congress can enact such laws and preempt State action thereby, that it could thus take what would be a question capable of reaching the *judicial* power of the State and, on appropriate occasions, the federal judiciary, and replace such remedy with a *purely legislative* one, with the necessary result of not only denying the right to a trial by jury, but bypassing *any judicial process* whatsoever. And, even if judicial review of a statute be obtained, an 'unfavorable' result could be overturned by Congress (see e.g. ***Ward's Cove v Atonio 490 US 642***) Upon what basis could Congress proceed to achieve such results ??


_Linda Rovai-Pickett_
Linda Rovai-Pickett/Plaintiff

*      majority opinion by Burger, Chief "Justice" which has been routinely assailed ever since and which seems a prime target for modification or reversal (see e.g. ***Olmstead v US 277 US 438, Minersville School Dist. v Gobitis 310 US 586*** (both, alas, 14th "amendment" decisions))

*Supplementary Points & Authorities in Support of Remand Page 11 of 11*

# *Proof of Service*

I an domiciled in San Mateo County, California. I am over the age of 18 and not a party to the within action. My address is: First Judicial District, P. O. Box 281676 San Francisco, California, USA. On June 29th 2008, I served the following document in *Case No. 08-01625*:

## *Plaintiff's Supplementary Points & Authorities in Support of Motion to Remand*

on the following parties via first class mail postage prepaid *at the Post Office* in San Francisco, California:

Matthew Ross                          Nancy O'Connor
Lenoard Carder LLP                    Bracewell & Guiliani LLP
1300 Broadway Suite 1450              2000 'K' Street NW  Suite 500
Oakland, California 94612             Washington DC 500  20006
Attorney for HERE Local #2            Attorney for Defendant BARG
                                      and/or HMS Host Inc.

I declare, *under penalty of perjury*, under the laws of the State of California that the foregoing is true and correct. Executed at Millbrae, California on June 29th, 2008.


_____
William Henshall/Declarant